assaultive, and violative physical contact, including contact of a sexual nature.

141. Defendant Tweed's conduct included, but was not limited to, violating policies and

procedures for pat-down searches that required prisoners to remove items from their own pockets

prior to pat-down, and instead removing items from Jeffrey's pockets himself, for the purpose of

groping Jeffrey's sexual organs and otherwise assaulting and harassing Jeffrey.

142. Upon information and belief, defendant engaged in this conduct openly and notoriously, as

a matter of routine pattern and practice, and with the knowledge and express or tacit approval of

his colleagues and supervisors.

### The Real Killer Is Identified and Jeffrey Is Exonerated

143. Jeffrey Deskovic continued his tireless efforts to obtain DNA retesting and comparison,

until 2006 when newly elected Westchester County District Attorney Janet DiFiore consented to

conduct STR DNA testing on the semen found on the vaginal swab taken from A.C., and to run

the results of that testing against the available DNA databases for convicted offenders.

144. In September 2006 the DNA profile obtained from the semen found on the vaginal swab

was matched to Steven Cunningham, who was already incarcerated in New York for the 1993

murder of a Peekskill school teacher. In March 2007 Mr. Cunningham pleaded guilty to the rape

and murder of A.C., and on May 2, 2007 he was sentenced to an additional twenty years in

prison for the crime.

145. Jeffrey Deskovic did not know Steven Cunningham, and had never met or seen him prior to

attending court proceeding in 2007.

146. On September 20, 2006 Jeffrey Deskovic's conviction was vacated and he was released

from prison based upon a joint CPL § 440.10 motion by the Westchester County District

Attorney's Office and counsel for Mr. Deskovic.

147. On November 2, 2006, on motion by the Westchester County District Attorney, the

indictment against Mr. Deskovic was dismissed on the ground of actual innocence.

### Policies and Customs of the PPD, the Westchester County District Attorney's Office, and the Westchester County Medical Examiner's Office

148. Prior to and at the time of the unlawful investigation, prosecution, and conviction of Jeffrey

Deskovic, the City of Peekskill and the PPD, by and through their final policymakers,

maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning

improper, illegal, and unconstitutional investigative techniques, including but not limited to the

following: (a) disregarding the Fifth Amendment rights of criminal suspects and defendants; (b)

fabricating evidence; (c) failing to document and disclose material, exculpatory and

impeachment evidence to prosecutors; and (d) failing to investigate known exculpatory evidence

and otherwise failing to conduct constitutionally adequate investigations.

149. Prior to and at the time of the unlawful investigation, prosecution, and conviction of Jeffrey

Deskovic, the City of Peekskill and the PPD, by and through their final policymakers,

maintained a policy, custom, or pattern and practice of failing to adequately train and supervise

PPD investigators in connection with fundamental investigative tasks implicating the

constitutional rights of witnesses and suspects, including but not limited to conducting custodial

interrogations and witness interviews, and documenting and disclosing exculpatory and

impeachment evidence to prosecutors.

150. The PPD's policy, custom, or pattern and practice of investigative misconduct and failure to

train and supervise PPD investigators were reflected by the multiple acts of misconduct and

illegality committed by multiple PPD detectives and supervisors in relation to multiple suspects

and witnesses in the A.C. investigation, as described above.

151. The PPD's policy, custom, or pattern and practice of investigative misconduct and failure to

supervise and train were also reflected in numerous prior cases and investigations which, upon

information and belief, were known to the PPD defendants and policymakers prior to the A.C.

investigation. The misconduct committed in those cases by PPD investigators, including but not

limited to defendant Tumolo and other investigators involved in Mr. Deskovic's case, was

actually or constructively known to PPD supervisors and policymakers prior to the A.C.

investigation - including by means of their direct participation in the investigations, and/or by

published judicial decisions exposing the investigative misconduct - and, upon information and

belief, PPD supervisors and policymakers failed to train, supervise, discipline, or otherwise

remediate PPD investigators in response to such notice.

152. Prior to and at the time of the investigation, prosecution, and conviction of Jeffrey

Deskovic, and continuing to at least 2006, the Westchester County District Attorney's Office, by

and through final policymakers and their delegees, maintained a policy, custom, or pattern and

practice of failing to adequately supervise, train and discipline assistant district attorneys in

connection with fundamental and recurring constitutional duties, including but not limited to (a)

the disclosure of exculpatory and impeachment evidence to the defense; (b) investigating and

acting upon exculpatory evidence that vitiates probable cause; and (c) constitutional prohibitions

on fabricating evidence and suborning perjury.

153. Pursuant to this policy, custom, or pattern and practice, policymakers for the District

Attorney's Office abdicated and effectively delegated to senior assistant district attorneys and

42

supervisors, including but not limited to Bolen, the authority and discretion to conduct and supervise investigations and prosecutions with deliberate and reckless disregard for their constitutional and ethical duties. As a result, assistant district attorneys and supervisors, including but not limited to Bolen, routinely and knowingly engaged in prosecutorial misconduct, and condoned and facilitated the misconduct of subordinates, in a climate of impunity.

154. In particular, as a direct result of policymakers' and supervisors' abdication of authority for supervising, training, and disciplining prosecutors, assistant district attorney Bolen routinely, notoriously, and as a matter of policy, custom, and pattern or practice violated constitutional and ethical norms by concealing material, exculpatory and impeachment evidence from the defense in order to permit him to argue evidentiary inferences to juries that he knew, or in the absence of his deliberate indifference should have known, were unsupported or contradicted by known facts. In furtherance of this policy, custom, and pattern or practice Bolen routinely failed to disclose material, exculpatory and impeachment evidence to the defense; deliberately and recklessly failed to investigate known exculpatory evidence, and in particular forensic evidence; deliberately and recklessly relied upon forensic experts, including Deputy Medical Examiner Roh, to provide fabricated, baseless, and/or misleading scientific inculpatory evidence; and engaged in additional acts of prosecutorial misconduct aimed at securing convictions at all costs.

155. The District Attorney's Office's failure to supervise, train, and discipline assistant district attorneys was reflected by the multiple acts of misconduct and illegality committed by multiple members of and supervisors in the Westchester County District Attorney's Office in the course of the investigation and prosecution of Jeffrey Deskovic, as described above. The District

43

Attorney's Office's failure to supervise, train, and discipline assistant district attorneys was also reflected by multiple high priority and highly publicized prosecutions and post-conviction proceedings prior and subsequent to the prosecution of Jeffrey Deskovic, in which senior district attorneys and supervisors, including but not limited to Bolen, engaged in, condoned, and facilitated prosecutorial misconduct.

156. The District Attorney's Office's failure to supervise, train, and discipline assistant district attorneys was known, or in the absence of their deliberate and reckless indifference should have been known, to policymakers for the District Attorney's Office, at and prior to the time of Jeffrey Deskovic's prosecution. Policymakers were on actual and constructive notice of the misconduct of Bolen and other assistant district attorneys through, among other mechanisms, their direct involvement in Jeffrey Deskovic's prosecution, Bolen's widely known reputation for engaging in and condoning prosecutorial misconduct, and misconduct perpetrated in multiple high priority and highly publicized prosecutions and post-conviction proceedings prior to Mr. Deskovic's conviction.

157. Prior to, at, and subsequent to the time of the investigation, prosecution, and conviction of Jeffrey Deskovic, the Westchester County Medical Examiner's Office, by and through its final policymakers and their delegees, maintained a policy, custom, or pattern and practice of providing false and scientifically unsupported scientific conclusions to Westchester County prosecutors in order to aid their prosecutions and with deliberate indifference to the risk that such conclusions would violate criminal suspects' right to a fair trial. In particular, defendant and Deputy Medical Examiner Roh routinely, notoriously, and as a matter of policy, custom, and pattern or practice fabricated evidence, gave perjured testimony, and/or engaged in deliberate

44

and reckless overreaching with respect to allegedly inculpatory scientific conclusions.

158. Additionally, prior to and at the time of the investigation, prosecution, and conviction of Jeffrey Deskovic, the Westchester County Medical Examiner's Office, by and through final policymakers and their delegees, maintained a policy, custom, or pattern and practice of failing to supervise, train and discipline deputy medical examiners. The absence of supervision, training, and discipline as a matter of policy, custom, or pattern and practice established a climate of impunity in which the misconduct of defendant Roh and others was condoned and facilitated, and created a known and obvious risk that the constitutional rights of criminal suspects would be violated.

159. Policymakers for the Westchester County Medical Examiner's Office were on actual and constructive notice of the misconduct of Roh and other deputy medical examiners through, among other mechanisms, their direct involvement in and knowledge of Jeffrey Deskovic's prosecution, Roh's widely known reputation for fabricating engaging in and condoning prosecutorial misconduct, and specific publicity and notoriety generated from Roh's conduct in highly publicized criminal proceedings prior to Mr. Deskovic's conviction.

## DAMAGES

160. The actions of the defendants deprived plaintiff Jeffrey Deskovic of his civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the laws of New York.

161. The unlawful, intentional, wilful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the defendants caused Jeffrey Deskovic to be wrongly seized, maliciously prosecuted, unfairly tried, wrongfully convicted, subjected to illegal searches and cruel and

unusual punishment during the course of his incarceration, and forced to serve nearly sixteen years in prison for a crime he did not commit.

162. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent, and/or bad-faith acts and omissions of the defendants caused Jeffrey Deskovic the following injuries and damages, which continue to date and will continue into the future: multiple physical assaults and batteries, including assaults of a sexual nature, and other physical injuries; pain and suffering; severe mental anguish; multiple suicide attempts; emotional distress; loss of family relationships; severe psychological damage; loss of educational opportunity; loss of professional opportunity; loss of income; out-of-pocket legal expenses for appellate representation; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled monetary relief.

163. All the acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages

**COUNT I**

**42 U.S.C. § 1983 Claim Violation of Mr. Deskovic's
Right Against Self-Incrimination and to a Fair Trial
Against Defendants Levine, McIntyre, Tumolo, and Stephens**

164. Mr. Deskovic  hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows.

165. Defendants Levine, McIntyre, Tumolo, and Stephens, acting individually and in concert, deliberately and recklessly coerced and compelled allegedly inculpatory statements from Jeffrey Deskovic and caused those statements to be introduced against him in connection with his indictment and prosecution, in violation of Jeffrey's Fifth and Fourteenth Amendment rights not to be compelled to be a witness against himself, not to be deprived of liberty without due process of law, and to a fair criminal trial.

166. Specifically, on and prior to January 25, 1990, defendants Levine, McIntyre, Tumolo, and Stephens deliberately and recklessly exploited Jeffrey Deskovic's youth, inexperience with law enforcement, emotional and psychological vulnerabilities, and lack of advice and assistance of legal or parental counsel to convince Jeffrey, through physical threats, trickery, deceptive promises, and other means to make false inculpatory statements that were not voluntarily and freely given. Furthermore, Jeffrey's waivers, on and prior to January 25, 1990, of his right not to submit to questioning by the police without the presence or assistance of legal counsel were not freely and voluntarily made, as a result of the defendants' deliberate and reckless actions to deceive Jeffrey concerning the status and legal significance of his representation and the defendants' questioning.

167. Additionally, defendants Levine, McIntyre, Tumolo, and Stephens, individually and in concert, deliberately and recklessly provided Jeffrey Deskovic with non-public facts known to the PPD in connection with the A.C. investigation, and through coercion, deception, and trickery compelled Jeffrey to adopt those facts as his own by incorporating them into allegedly inculpatory statements concerning his knowledge of and involvement in the crime.

47

168.  Because of the PPD defendants' coercion and trickery Jeffrey's will was overborne such that the confession was not the product of his free will and rational intellect.

169.  At the time that Jeffrey Deskovic allegedly confessed to the rape and murder of A.C., a reasonable person in Jeffrey's position would have perceived his freedom to be significantly restricted and would not have understood himself to be free to leave, and hence Jeffrey was in the defendants' custody.  Among the circumstances that rendered Jeffrey's alleged confession custodial were factors that were not documented and were affirmatively concealed from prosecutors and the court by the defendants, including but not limited to the defendants' direct and indirect threats on January 25 that Jeffrey would be physically harmed if he did not confess, and the defendants' deceptive and coercive promises concerning the consequences of Jeffrey's January 25 confession.

170.  The false and involuntary confession obtained from Jeffrey Deskovic on January 25, 1990 was introduced against him in pretrial proceedings and at his criminal trial.

171.  Defendants' actions to compel Mr. Deskovic to be a witness against himself were in violation of clearly established constitutional law, and no reasonable police officer in 1989 and 1990 would have believed that the defendants' actions were lawful.

172.  As a direct and proximate result of the defendants' actions Mr. Deskovic was wrongly convicted and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT II

**42 U.S.C. § 1983 Claim for Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material, Exculpatory and Impeachment Evidence, and Failing to Investigate in Violation of the Fourteenth Amendment**

48

**Against Defendants Levine, McIntyre, Brovarski, Tumolo, and Roh**

173. Mr. Deskovic hereby incorporates and references all of the foregoing paragraphs and further alleges as follows.

174. Defendants Levine, McIntyre, Brovarski, Tumolo, and Roh, acting individually and in concert, fabricated evidence, concealed material, exculpatory and impeachment evidence, and deliberately and recklessly failed to conduct a constitutionally adequate criminal investigation, thereby depriving Mr. Deskovic of his Fourteenth Amendment right not to be deprived of liberty without due process of law and to a fair criminal trial.

175. Specifically, defendants Levine, McIntyre, Brovarski, Tumolo, and Stephens, deliberately and recklessly coerced inculpatory statements from Mr. Deskovic which were not the product of Mr. Deskovic's free will and rational intellect, supplied Mr. Deskovic with specific details of the crime which Mr. Deskovic subsequently incorporated and repeated in allegedly inculpatory statements, and/or knew that details known to Mr. Deskovic were readily obtainable through public sources. The defendants falsely represented to prosecutors in police reports, in the course of charging and indicting Mr. Deskovic, and at trial, that Mr. Deskovic's statements were in fact freely and voluntarily given, and that Mr. Deskovic had independent knowledge of non-public details of the crime that actually had been provided to him by the defendants and/or were available from public sources. The false evidence which the defendants thereby fabricated was introduced against Mr. Deskovic at trial, was a basis for the jury's verdict against him, and thus deprived him of a fair criminal trial.

176. Additionally, defendants Levine, McIntyre, Brovarski, and Tumolo deliberately and recklessly coerced and/or fabricated allegedly inculpatory statements from witnesses including

but not limited to Freddy Claxton, Martin Burrett, and Martin Burrett's parents, and concealed additional material, exculpatory and impeachment evidence concerning witness interviews conducted by them in the case, including but not limited to coercive tactics utilized in witness interviews, evidence that A.C. and Freddy Claxton had no romantic or sexual relationship, evidence that A.C. had not had consensual sex prior to her rape and murder, and other evidence from witnesses that Jeffrey played no role in and had no independent knowledge of A.C.'s rape and murder.

177. Furthermore, defendants Levine, McIntyre, Brovarski, and Tumolo deliberately and recklessly failed to investigate leads pointing toward other suspects and corroborating Mr. Deskovic's innocence, including but not limited to the following:  intentionally failing to interview witnesses whose knowledge tended to disprove Mr. Deskovic's guilt; failing to investigate known exculpatory and potentially exculpatory information provided by witnesses; failing to investigate exculpatory and potentially exculpatory forensic evidence, including but not limited to serology, hair, fingerprint, and DNA evidence; and failing to pursue evidence and leads concerning other suspects after their theory of Mr. Deskovic's guilt had been fatally undermined by known exculpatory evidence.  The defendants' deliberate and reckless failure to investigate exculpatory evidence that was known to them, or that in the absence of their deliberate and reckless indifference should have been known to them, caused Mr. Deskovic to be deprived of a fair criminal trial.

178. Defendant Roh deliberately and recklessly fabricated allegedly inculpatory evidence concerning A.C.'s prior sexual history, and concealed material, exculpatory and impeachment evidence concerning those fabrications.  In the course of pretrial investigations and

50

conversations with Bolen, Roh falsely, deliberately, and with reckless disregard for the truth represented (a) that there was a scientific basis for concluding that A.C. had been sexually active on multiple occasions prior to her rape and death, and (b) that he had observed scarring of A.C.'s hymen during his autopsy. These false and fabricated pre-trial statements were repeated by Bolen to the court in pretrial conferences discussing the DNA testing and Mr. Deskovic's continued prosecution, and were elicited from Roh at trial.

179. In fact Roh knew, or in the absence of his deliberate and reckless indifference should have known, that he had no scientific basis for concluding that A.C. had been sexually active on multiple occasions, and that he had not seen the scarring of A.C.'s hymen that he described to Bolen. Upon information and belief, Roh concealed the material, exculpatory and impeachment evidence of his fabrications from prosecutor Bolen.

180. This false and fabricated evidence concerning A.C.'s prior sexual history was introduced against Mr. Deskovic at trial and relied upon by Bolen in his opening and closing statements, was a basis for the jury's verdict, and thus deprived him of a fair criminal trial.

181. The truth of the defendants' fabrications and the other material, exculpatory and impeachment evidence that was concealed by them could not have been discovered by the Mr. Deskovic or his attorney through the exercise of due diligence.

182. Had the defendants' fabrications and material, exculpatory and impeachment evidence known to them been documented and/or disclosed they would have tended to prove Mr. Deskovic's innocence, cast doubt on the entire police investigation and prosecution, and impeached the critical trial testimony of defendants Levine, McIntyre, Stephens, Roh, and other witnesses. The exculpatory and impeachment evidence withheld by the defendants, considered

individually and collectively, undermines confidence in the verdict against Mr. Deskovic, and

the concealment of this evidence deprived Mr. Deskovic of a fair criminal trial.

183. The defendants' conduct violated Mr. Deskovic's clearly established constitutional rights to

a fair trial and not to be deprived of liberty without due process of law, as guaranteed by the

Fourteenth Amendment.  No reasonable police officer or medical examiner in 1989 and 1990

would have believed that the actions taken by the defendants in fabricating evidence, failing to

document and disclose material, exculpatory evidence, and failing to investigate exculpatory

evidence were lawful.

184. As a direct and proximate result of the defendants' actions Mr. Deskovic was wrongly

convicted and imprisoned for sixteen years, and suffered the other grievous and continuing

injuries and damages as set forth above.

### COUNT III

**42 U.S.C. § 1983 Claim for Malicious Prosecution**
**in Violation of the Fourth and Fourteenth Amendments**
**Against Defendants Levine, McIntyre, Tumolo, Stephens, and Roh**

185. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows.

186.  Defendants Levine, McIntyre, Tumolo, Stephens, and Roh, despite knowing that probable

cause did not exist to arrest and prosecute Mr. Deskovic for the rape and murder of A.C., and

despite the fact that the grand jury's probable cause determination was vitiated by the

defendants' undisclosed misconduct and by other concealed, material, exculpatory and

impeachment evidence, acted individually and in concert to cause Mr. Deskovic to be arrested

and prosecuted for those crimes.  The defendants' conduct violated Mr. Deskovic's right

pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free

of unreasonable searches and seizures, and proximately caused his wrongful conviction.

187. Specifically, defendants Levine, McIntyre, Tumolo, and Stephens knew or in the absence of

their deliberate and reckless indifference to the truth should have known of information that

probable cause did not exist to arrest and prosecute Mr. Deskovic, including but not limited to

the facts that Mr. Deskovic's waiver of his right to counsel prior to January 10, 1990 was not

knowing and voluntary, that Mr. Deskovic's allegedly inculpatory statements on and prior to

January 25, 1990 were not the product of his free will and rational intellect, that allegedly

inculpatory evidence had been fabricated by the defendants, and that those factors as well as

additional material, exculpatory and impeachment evidence which was not disclosed to the grand

jury or prosecutors undermined the evidence presented in support of a probable cause finding

against Mr. Deskovic.

188. Following Mr. Deskovic's indictment, defendants Levine, McIntyre, and Tumolo

intentionally and with deliberate and reckless disregard for the truth, caused Mr. Deskovic's

prosecution to continue despite knowing that probable cause had been vitiated. Specifically,

after DNA testing results exonerated Mr. Deskovic, the defendants continued to conceal their

pre-indictment misconduct, and committed additional misconduct in the course of post-

indictment investigation, including but not limited to concealing from prosecutors additional

material, exculpatory evidence that undermined probable cause.

189. Additionally, prior and subsequent to Mr. Deskovic's indictment and being notified of

exonerative DNA testing results, defendants Levine, McIntyre, and Tumolo deliberately and

recklessly failed to investigate evidence that they knew, or in the absence of their deliberate and

reckless indifference should have known, vitiated probable cause for Mr. Deskovic's

prosecution.  The deliberate and reckless investigative failures of the defendants included but

were not limited to failing to investigate known exculpatory and potentially exculpatory

information provided by witnesses, failing to investigate exculpatory and potentially exculpatory

forensic evidence, including but not limited to serology, hair, fingerprint, and DNA evidence,

and failing to pursue evidence and leads concerning other suspects.

190. Defendant Roh caused Mr. Deskovic to be maliciously prosecuted in violation of the Fourth

Amendment by deliberately and recklessly fabricating allegedly inculpatory evidence concerning

A.C.'s prior sexual history, which was critical to the continued prosecution of Mr. Deskovic

following the exculpatory DNA test results, and which Roh knew or in the absence of his

deliberate and reckless indifference should have known would cause Mr. Deskovic's prosecution

to continue.

191. Specifically, just weeks after learning that DNA testing proved Mr. Deskovic not to be the

source of the semen found inside A.C., Roh provided assistant district attorney Bolen with a

fabricated explanation for the source of the semen by falsely stating (a) that there was a scientific

basis for concluding that A.C. had been sexually active on multiple occasions prior to her rape

and death, and (b) that he had observed scarring of A.C.'s hymen during his autopsy.  These

false and fabricated pre-trial statements were repeated by Bolen to the court in pretrial

conferences discussing the DNA testing and Mr. Deskovic's continued prosecution, and were

elicited from Roh at trial.

192. In fact Roh knew, or in the absence of his deliberate and reckless indifference should have

known, that he had no scientific basis for concluding that A.C. had been sexually active on

54

multiple occasions, and that he had not seen the scarring of A.C.'s hymen that he described to Bolen. Upon information and belief, Roh concealed the material, exculpatory and impeachment evidence of his fabrications from prosecutor Bolen.

193. The defendants performed the above-described acts deliberately, with reckless disregard for the truth, and with malice.

194. In fact, Mr. Deskovic was innocent of the rape and murder of A.C. On November 2, 2006, the prosecution terminated in Mr. Deskovic's favor when charges against him were dismissed on motion of the Westchester County District Attorney, following the vacatur of his conviction and his release from prison on September 20, 2006, after sixteen years of wrongful incarceration.

195. Defendants' actions to deprive Mr. Deskovic of his liberty without probable cause were in violation of clearly established constitutional law, and no reasonable police officer in 1989 and 1990 would have believed that the defendants' actions were lawful.

196. As a direct and proximate result of the defendants' actions Mr. Deskovic was wrongly prosecuted, convicted, and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

**COUNT IV**

**42 U.S.C. § 1983 Claim for Engaging in Conduct that Shocks the Conscience
in Violation of the Fourteenth Amendment
Against Defendants Levine, McIntyre, Brovarski, and Tumolo**

197. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

198. In their drive to secure Mr. Deskovic's wrongful conviction, defendants Levine, McIntyre, Brovarski, and Tumolo deliberately engaged in arbitrary and conscious-shocking conduct that

55

contravened fundamental canons of decency and fairness and violated Jeffrey Deskovic's substantive due process right under the Fourteenth Amendment.

199. Specifically, the defendants deliberately exploited Jeffrey Deskovic's vulnerabilities, tricked, and threatened Jeffrey to coerce his confession; provided investigative facts to Jeffrey that fabricated a false confession and concealed the defendants' coercion and other misconduct; fabricated additional allegedly inculpatory evidence from witnesses and other sources to corroborate Jeffrey's guilt prior to his indictment; deliberately concealed from prosecutors their pre-indictment misconduct, as well as additional exculpatory and impeachment evidence provided to them by witnesses; deliberately concealed, after DNA evidence conclusively exposed the falsity of his confession, additional exculpatory and impeachment evidence that undermined any basis for Jeffrey's guilt and continued prosecution; deliberately and recklessly failed to investigate leads pointing toward other suspects and corroborating Mr. Deskovic's innocence; and engaged in additional, conscience-shocking misconduct that led to the conviction and wrongful imprisonment of an innocent man.

200. The defendants' conduct violated Mr. Deskovic's clearly established constitutional right to substantive due process, as guaranteed by the Fourteenth Amendment. No reasonable police officer in 1989 and 1990 would have believed that the actions taken by the defendants in deliberately failing to conduct a constitutionally adequate investigation were lawful.

201. As a direct and proximate result of the defendants' actions Mr. Deskovic was wrongly convicted and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

**COUNT V**

56

**42 U.S.C. § 1983 Claim for Supervisory Liability Against PPD Supervisors**

202. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further states as follows.

203. Defendants Tumolo and John and Jane Doe Supervisors knew or in the absence of their deliberate indifference, recklessness, and gross negligence should have known, that their subordinate officers had deprived Mr. Deskovic of his clearly established constitutional rights through misconduct that included but was not limited to coercing and compelling allegedly inculpatory statements from Mr. Deskovic, providing Mr. Deskovic with non-public details concerning A.C.'s rape and murder and the PPD investigation, fabricating witness statements and other evidence, concealing material, exculpatory and impeachment evidence, and failing to conduct a constitutionally adequate investigation of Mr. Deskovic. Defendants Tumolo and John and Jane Doe Supervisors, by deliberately, recklessly, and grossly negligently failing to supervise their subordinate police officers, and by their active and direct participation in and facilitation of their subordinates' misconduct, caused their subordinates to deprive Mr. Deskovic of his clearly established constitutional rights, including but not limited to his rights not to be compelled to be a witness against himself, to be free from unreasonable searches and seizures, not to be deprived of liberty without due process of law, and to a fair trial.

204. Moreover, defendants Levine, McIntyre, Brovarski, Tumolo, and other PPD detectives acted with impunity in an environment in which they were not trained, supervised, or disciplined by defendants Tumolo and John and Jane Doe Supervisors, and in which they knew that their violations of Mr. Deskovic's constitutional rights would be facilitated, approved, and/or condoned by the defendant supervisors.

205. The deliberately indifferent, reckless, and/or grossly negligent conduct of defendants

Tumolo and John and Jane Doe Supervisors violated their clearly established duty, in 1989 and

1990, to supervise subordinate detectives including defendants Levine, McIntyre, and Brovarski,

and no reasonable police supervisor in 1989 and 1990 would have believed that deliberately

indifferent, reckless, and/or grossly negligent supervision in the face of actual or constructive

notice of misconduct by their subordinate officers was lawful.

206. Defendants Tumolo and John and Jane Doe Supervisors' actions and omissions proximately

and directly caused Mr. Deskovic to be wrongly prosecuted, convicted, and imprisoned for

sixteen years, and to suffer the other grievous and continuing injuries and damages as set forth

above.

### COUNT VI

**42 U.S.C. § 1983 Claim for Supervisory Liability Against Chief Medical Examiner Hyland**

207. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further

states as follows.

208. Defendant Hyland acted with deliberate indifference, recklessness, and/or gross negligence

to the constitutional rights of citizens by failing to provide adequate training, supervision, and

discipline of his subordinate, Deputy Medical Examiner Roh, and thereby caused Roh to deprive

Mr. Deskovic of his rights not to be convicted on the basis of fabricated evidence, to be free

from unreasonable search and seizure, not to be deprived of liberty without due process of law,

and to a fair criminal trial, as guaranteed by the Fourth and Fourteenth Amendments.

209. Specifically, defendant Hyland  knew or should have known - based on, among other facts,

Roh's reputation for and open and notorious practice of fabricating scientific conclusions and

providing perjured testimony, his widely reported and criticized false and baseless scientific

testimony high priority and highly publicized cases prior to Mr. Deskovic's conviction, and,

upon information and belief, his actual knowledge and/or approval of the reports prepared and

testimony given in Jeffrey Deskovic's case - of a high degree of risk that defendant Roh would

perform his duties as Deputy Medical Examiner in a manner that violated the constitutional

rights of citizens.

210. The deliberately indifferent, reckless, and/or grossly negligent conduct of defendant Hyland

violated his clearly established duty, in 1989 and 1990, to supervise subordinate medical

examiners, and no reasonable medical examiner in 1989 and 1990 would have believed that

deliberately indifferent, reckless, and/or grossly negligent supervision in the face of actual or

constructive notice of misconduct by their subordinate officers was lawful.

211. Defendant Hyland's actions and omissions proximately and directly caused Mr. Deskovic to

be wrongly prosecuted, convicted, and imprisoned for sixteen years, and to suffer the other

grievous and continuing injuries and damages as set forth above.

### COUNT VII

**42 U.S.C. § 1983 Claim for Failure to Intercede**
**Against Defendants Levine, McIntyre, Brovarski, Tumolo,**
**and John and Jane Doe Supervisors**

212. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows.

213. By their conduct and under color of state law, defendants Levine, McIntyre, Brovarski,

Tumolo, and John and Jane Doe Supervisors had opportunities to intercede on behalf of Mr.

Deskovic to prevent his coerced confession, malicious prosecution, and deprivation of liberty

without due process of law, but, due to their intentional conduct and/or deliberate or reckless indifference, declined or refused to do so.

214. The defendants' failures to intercede violated Mr. Deskovic's clearly established constitutional rights not to be compelled to be a witness against himself, to be free from unreasonable search and seizure, not to be deprived of liberty without due process of law, and to a fair trial as guaranteed by the Fourth and Fourteenth Amendments. No reasonable police officer or police supervisor in 1989 and 1990 would have believed that failing to intercede to prevent the defendants from coercing suspect statements, fabricating evidence, failing to document and disclose material, exculpatory and impeachment evidence, deliberately failing to conduct a constitutionally adequate investigation, and causing Mr. Deskovic to be arrested and prosecuted without probable cause were lawful.

215. As a direct and proximate result of the defendants' failures to intercede Mr. Deskovic was wrongly prosecuted, convicted, and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

### COUNT VIII

**42 U.S.C. § 1983 Civil Rights Conspiracy Claim**
**Against Defendants Levine, McIntyre, Brovarski, Tumolo, and Stephens**

216. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

217. Defendants Levine, McIntyre, Brovarski, Tumolo, Stephens, and others yet unknown agreed among themselves and with other individuals to act in concert in order to deprive Mr. Deskovic of his clearly established Fourth, Fifth, and Fourteenth Amendment rights not to be compelled to be a witness against himself, to be free from unreasonable searches and seizures,

not to be deprived of his liberty without due process of law, and to a fair criminal trial.

218. In furtherance of the conspiracy the defendants engaged in and facilitated numerous overt

acts, including, without limitation, the following:

a) Defendants Levine, McIntyre, Tumolo, Stephens, and others planned to obtain Jeffrey's confession through physical threats, trickery, deceptive promises, and other means deliberately designed to exploit Jeffrey's known age and intellectual, emotional, and psychological vulnerabilities;

b) Defendants Levine, McIntyre, Tumolo, and others provided Jeffrey Deskovic with non-public facts known to the PPD in connection with the A.C. investigation, and through coercion, deception, and trickery compelled Jeffrey to adopt those facts as his own by incorporating them into allegedly inculpatory statements concerning his knowledge of and involvement in the crime;

c) Defendant Levine and others deceived Jeffrey concerning the status and legal significance of his representation by Lou Ecker in relation to the defendants' questioning of him, and defendants Levine, McIntyre, Stephens, and others subsequently caused Jeffrey to waive his <u>Miranda</u> rights under circumstances that were not knowing and voluntary;

d) Defendants Levine, McIntyre, Brovarski, Tumolo, and Stephens deliberately and recklessly created false police reports, reported false facts to prosecutors, and otherwise fabricated evidence that falsely inculpated Mr. Deskovic and concealed the defendants' investigative misconduct, including but not limited to police reports and other documents falsely representing that Mr. Deskovic had independent knowledge of non-public facts

concerning A.C.'s rape and murder; <u>Miranda</u> waiver forms falsely representing that Mr.
Deskovic's waivers were knowing and voluntary; and allegedly inculpatory witness
statements.

e)  Defendants Levine, McIntyre, Brovarski, Tumolo, Stephens, and others deliberately
concealed additional material, exculpatory and impeachment evidence from prosecutors,
including but not limited to facts concerning the coercive and intimidating tactics used by
them to interview witnesses and interrogate Jeffrey Deskovic; evidence that Freddy
Claxton and A.C. had not been in a romantic or sexual relationship; evidence that A.C.
had not been sexually active prior to her rape and murder; and other evidence tending to
establish Jeffrey Deskovic's innocence, including material, exculpatory and impeachment
evidence discovered subsequent to Mr. Deskovic's indictment which vitiated probable
cause;

f)  Prior and subsequent to Mr. Deskovic's arrest, charging, and indictment for the crime,
defendants Levine, McIntyre, Brovarski, Tumolo, and others deliberately and recklessly
failed to investigate leads pointing to other suspects and corroborating Mr. Deskovic's
innocence, including but not limited to the following: intentionally failing to interview
witnesses whose knowledge tended to disprove Mr. Deskovic's guilt; failing to
investigate known exculpatory and potentially exculpatory information provided by
witnesses; failing to investigate exculpatory and potentially exculpatory forensic
evidence, including but not limited to serology, hair, fingerprint, and DNA evidence; and
failing to pursue evidence and leads concerning other suspects after their theory of Mr.
Deskovic's guilt had been fatally undermined by known exculpatory evidence;

g) Defendants Levine, McIntyre, Stephens, and others hid their misconduct and secured Mr. Deskovic's wrongful conviction by deliberately provided perjured testimony in the grand jury and/or in Mr. Deskovic's criminal trial.

219. As a direct and proximate result of the defendants' conspiracy and actions in furtherance of that conspiracy, Mr. Deskovic was wrongly arrested, prosecuted, convicted, and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT IX

### 42 U.S.C. § 1983 Claim Against the City of Peekskill

220. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

221. The City of Peekskill and the PPD, by and through their final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, including but not limited to the following: (a) disregarding the Fifth Amendment rights of criminal suspects and defendants, in particular juveniles; (b) fabricating evidence; (c) failing to document and disclose material, exculpatory and impeachment evidence to prosecutors; and (d) failing to investigate known exculpatory evidence and otherwise failing to conduct constitutionally adequate investigations.

222. Furthermore, the City of Peekskill and the PPD, by and through their final policymakers, maintained a policy, custom, or pattern and practice of failing to train and supervise PPD investigators in connection with fundamental investigative tasks implicating the constitutional rights of witnesses and suspects, including but not limited to conducting and documenting

63

criminal investigations, conducting custodial interrogations and witness interviews, and documenting and disclosing exculpatory and impeachment evidence to prosecutors.

223. The PPD's policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, and its policy, custom, or pattern and practice of failing to train and supervise PPD investigators, were evidenced by, among other actions, multiple constitutional violations and related acts of misconduct committed by multiple investigators and supervisors in the PPD in the course of the investigation and prosecution of Jeffrey Deskovic, and in the course of prior and subsequent cases.

224. PPD policymakers were deliberately indifferent to the known and obvious risk that the policy, custom, or pattern and practice of investigative misconduct and failure to train and supervise PPD investigators created a risk that the constitutional rights of criminal suspects like Mr. Deskovic would be violated.

225. The misconduct and constitutional violations committed by the PPD defendants in the course of the investigation and prosecution of Jeffrey Deskovic were carried out pursuant to the PPD's policy, custom, or pattern and practice of investigative misconduct, and were directly and proximately caused by the PPD's failure to train and supervise investigators.  As a direct and proximate result of the PPD's policies, customs, or patterns and practices, Jeffrey Deskovic was wrongly prosecuted, convicted and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT X

### 42 U.S.C. § 1983 Claim Against Westchester County

226. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows.

227. Prior to and at the time of the investigation, prosecution, and conviction of Jeffrey Deskovic, and continuing to at least 2006, the Westchester County District Attorney's Office, by and through final policymakers and their delegees, maintained a policy, custom, or pattern and practice of failing to supervise, train, and discipline assistant district attorneys in connection with fundamental and recurring constitutional and ethical duties.

228. This policy, custom, or pattern and practice of failing to supervise, train, and discipline assistant district attorneys was evidenced by, among other actions, multiple constitutional violations and related acts of misconduct committed by multiple members of and supervisors in the Westchester County District Attorney's Office in the course of the investigation and prosecution of Jeffrey Deskovic, and in the course of prior and subsequent investigations and prosecutions.

229. As a direct and proximate result of the Westchester County District Attorney's Office policy, custom, or pattern and practice of failing to supervise, train, and discipline assistant district attorneys, prosecutors, including but not limited to assistant district attorney Bolen, committed multiple constitutional violations and related misconduct in the course of prosecuting Jeffrey Deskovic, including but not limited to the following:

a) Assistant district attorney Bolen deliberately or recklessly obtained Mr. Deskovic's conviction by means of fabricated evidence, including but not limited to defendant Roh's deliberately and recklessly false pretrial statements and testimony that (a) there was a scientific basis for concluding that A.C. had been sexually active on multiple occasions prior to her rape and murder, and (b) Roh had observed scarring of A.C.'s hymen during his

autopsy, which caused Mr. Deskovic to be maliciously prosecuted and subjected to an unfair

criminal trial on the basis of material fabrications;

b) Bolen concealed from the defense material, exculpatory and impeachment evidence,

including but not limited to, upon information and belief, that Roh's conclusions and

findings concerning A.C.'s sexual history were fabricated;

c) Bolen deliberately or recklessly failed to investigate known exculpatory evidence,

including but not limited to deliberately and recklessly failing to obtain reference hair

samples from Roh, his assistant, and Freddy Claxton, and deliberately or recklessly failing to

obtain DNA testing from Freddy Claxton or any other potential consensual sex partner.

d) Bolen deliberately or recklessly suborned perjury and made false arguments that lacked

evidentiary foundation in order to obtain Mr. Deskovic's conviction, including but not

limited to arguing at trial that hairs found on A.C. had come from Roh, his assistant, and

Freddy Claxton.

230. Westchester County District Attorney's Office policymakers were deliberately indifferent

to the known and obvious risk that the policy, custom, or pattern and practice of failing

supervise, train, and discipline assistant district attorneys in connection with fundamental and

recurring ethical and constitutional duties created a risk that the constitutional rights of criminal

suspects like Mr. Deskovic would be violated.

231. Prior to, at, and subsequent to the time of the investigation, prosecution, and conviction of

Jeffrey Deskovic, the Westchester County Medical Examiner's Office, by and through final

policymakers and their delegees, maintained a policy, custom, or pattern and practice of

providing false and scientifically unsupported scientific conclusions to Westchester County

prosecutors in order to aid their prosecutions and with deliberate indifference to the risk that

such conclusions would violate criminal suspects' right to a fair trial.

232. Additionally, prior to and at the time of the investigation, prosecution, and conviction of

Jeffrey Deskovic, the Westchester County Medical Examiner's Office, by and through final

policymakers and their delegees, maintained a policy, custom, or pattern and practice of failing

to supervise, train and discipline deputy medical examiners.  County policymakers maintained

this policy, custom, or pattern and practice despite the fact that they knew or, in the absence of

their deliberate indifference should have known, that deputy medical examiners, including

defendant Roh, openly and notoriously fabricated scientific evidence, gave perjured testimony,

and otherwise committed misconduct in connection with their duties as deputy medical

examiners.

233. The Westchester County Medical Examiner's Office policy, custom, or pattern and practice

of providing false and scientifically unsupported scientific conclusions, and its policy, custom, or

pattern and practice of failing to supervise, train, and discipline deputy medical examiners, were

evidenced by, among other actions, multiple constitutional violations and related acts of

misconduct committed by multiple members of and supervisors in the Westchester County

Medical Examiner's Office in the course of the investigation and prosecution of Jeffrey

Deskovic, and in the course of prior and subsequent cases.

234. As a direct and proximate result of the Westchester County Medical Examiner's Office's

policy, custom, or pattern and practice of providing false and scientifically unsupported

conclusions to Westchester County prosecutors, and of failing to supervise, train, and discipline

deputy medical examiners, Deputy Medical Examiner Louis Roh committed multiple

67

constitutional violations and related misconduct in the course of prosecuting Jeffrey Deskovic, including but not limited to the following:

a) Roh deliberately and recklessly fabricated the false fact that there was a scientific basis for concluding that A.C. had been sexually active on multiple occasions prior to her rape and murder, in order to support the prosecution's theory that the semen found in A.C. had come from a consensual donor;

b) Roh deliberately and recklessly fabricated the false fact that he had observed scarring of A.C.'s hymen;

c) Roh concealed material, exculpatory and impeachment evidence from assistant district attorney Bolen, including, upon information and belief, the fact that his conclusions and findings concerning A.C.'s sexual history were false;

d) Roh perjured himself on multiple occasions during Mr. Deskovic's trial, including by deliberately and recklessly misstating and overstating his scientific conclusions.

235. Westchester County Medical Examiner's Office policymakers were deliberately indifferent to the known and obvious risk that the Office's policy, custom, or pattern and practice of providing false and scientifically unsupported evidence to prosecutors, and of failing supervise, train, and discipline deputy medical examiners created a risk that the constitutional rights of criminal suspects like Mr. Deskovic would be violated.

236. As a direct result of the policies, customs, or patterns and practices of Westchester County, Jeffrey Deskovic was wrongly prosecuted, convicted, and imprisoned for sixteen years, and suffered the other grievous and continuing injuries and damages as set forth above.

**COUNT XI**

68

**42 U.S.C. § 1983 Claim for Unreasonable Search and Unnecessary and Wanton Infliction of Pain in Violation of the Fourth, Eight, and Fourteenth Amendments Against Defendant Tweed**

237. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

238. Defendant Tweed, acting under color of law, conducted searches of Mr. Deskovic's person that were unreasonable violations of Mr. Deskovic's legitimate expectation of privacy, lacked any legitimate penalogical objective, and therefore violated Mr. Deskovic's Fourth and Fourteenth Amendment right to bodily integrity.

239. Furthermore, defendant Tweed repeatedly, maliciously, sadistically, and without any legitimate penalogical objective subjected Mr. Deskovic to invasive, assaultive, and violative physical and sexual conduct, and otherwise unnecessarily and wantonly inflicted pain upon Mr. Deskovic.  Tweed acted with deliberate disregard for Mr. Deskovic's health and safety, in violation of Mr. Deskovic's right under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.

240. Defendant Tweed's actions to deprive Mr. Deskovic of his Fourth, Eighth, and Fourteenth Amendment rights violated clearly established constitutional law, and no reasonable corrections officer in 2004 would have believed that defendant's actions were lawful.

241. Defendant Tweed's conduct directly and proximately caused Mr. Deskovic to suffer the grievous injuries enumerated above at the time of the constitutional violations and continuing to this day and into the future.

### Count XII

**State Law Claim for Malicious Prosecution Against Defendants Levine, McIntyre, Tumolo, Stephens, and Roh**

242. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

243.  Defendants Levine, McIntyre, Tumolo, Stephens, and Roh, despite knowing that probable cause did not exist to arrest and prosecute Mr. Deskovic for the rape and murder of A.C., and despite the fact that the grand jury's probable cause determination was vitiated by the defendants' undisclosed misconduct and by other concealed, material, exculpatory and impeachment evidence, acted individually and in concert to cause Mr. Deskovic to be arrested and prosecuted for those crimes.  The defendants' conduct violated Mr. Deskovic's right pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures, and proximately caused his wrongful conviction.

244. Specifically, defendants Levine, McIntyre, Tumolo, and Stephens knew or in the absence of their deliberate and reckless indifference to the truth should have known of information that probable cause did not exist to arrest and prosecute Mr. Deskovic, including but not limited to the facts that Mr. Deskovic's waiver of his right to counsel prior to January 10, 1990 was not knowing and voluntary, that Mr. Deskovic's allegedly inculpatory statements on and prior to January 25, 1990 were not the product of his free will and rational intellect, that allegedly inculpatory evidence had been fabricated by the defendants, and that those factors as well as additional material, exculpatory and impeachment evidence which was not disclosed to the grand jury or prosecutors undermined the evidence presented in support of a probable cause finding against Mr. Deskovic.

245. Following Mr. Deskovic's indictment, defendants Levine, McIntyre, and Tumolo intentionally and with deliberate and reckless disregard for the truth, caused Mr. Deskovic's

70

prosecution to continue despite knowing that probable cause had been vitiated. Specifically, after DNA testing results exonerated Mr. Deskovic, the defendants continued to conceal their pre-indictment misconduct, and committed additional misconduct in the course of post-indictment investigation, including but not limited to concealing from prosecutors additional material, exculpatory evidence that undermined probable cause.

246. Additionally, prior and subsequent to Mr. Deskovic's indictment and being notified of exonerative DNA testing results, defendants Levine, McIntyre, and Tumolo deliberately and recklessly failed to investigate evidence that they knew, or in the absence of their deliberate and reckless indifference should have known, vitiated probable cause for Mr. Deskovic's prosecution. The deliberate and reckless investigative failures of the defendants included but were not limited to failing to investigate known exculpatory and potentially exculpatory information provided by witnesses, failing to investigate exculpatory and potentially exculpatory forensic evidence, including but not limited to serology, hair, fingerprint, and DNA evidence, and failing to pursue evidence and leads concerning other suspects.

247. Defendant Roh caused Mr. Deskovic to be maliciously prosecuted in violation of the Fourth Amendment by deliberately and recklessly fabricating allegedly inculpatory evidence concerning A.C.'s prior sexual history, which was critical to the continued prosecution of Mr. Deskovic following the exculpatory DNA test results, and which Roh knew or in the absence of his deliberate and reckless indifference should have known would cause Mr. Deskovic's prosecution to continue.

248. Specifically, just weeks after learning that DNA testing proved Mr. Deskovic not to be the source of the semen found inside A.C., Roh provided assistant district attorney Bolen with a

71

fabricated explanation for the source of the semen by falsely stating (a) that there was a scientific

basis for concluding that A.C. had been sexually active on multiple occasions prior to her rape

and death, and (b) that he had observed scarring of A.C.'s hymen during his autopsy. These

false and fabricated pre-trial statements were repeated by Bolen to the court in pretrial

conferences discussing the DNA testing and Mr. Deskovic's continued prosecution, and were

elicited from Roh at trial.

249. In fact Roh knew, or in the absence of his deliberate and reckless indifference should have

known, that he had no scientific basis for concluding that A.C. had been sexually active on

multiple occasions, and that he had not seen the scarring that he described to Bolen. Upon

information and belief, Roh concealed the material, exculpatory and impeachment evidence of

his fabrications from Bolen.

250. The defendants performed the above-described acts deliberately, with reckless disregard for

the truth, and with malice.

251. In fact, Mr. Deskovic was innocent of the rape and murder of A.C. On November 2, 2006,

the prosecution terminated in Mr. Deskovic's favor when charges against him were dismissed on

motion of the Westchester County District Attorney, following the vacatur of his conviction and

his release from prison on September 20, 2006, after sixteen years of wrongful incarceration.

252. Defendants' actions to deprive Mr. Deskovic of his liberty without probable cause were in

violation of clearly established constitutional law, and no reasonable police officer in 1989 and

1990 would have believed that the defendants' actions were lawful.

253. As a direct and proximate result of the defendants' actions Mr. Deskovic was wrongly

prosecuted, convicted, and imprisoned for sixteen years, and suffered the other grievous and

continuing injuries and damages as set forth above.

## COUNT XIII

### State Law Claim for Intentional or Reckless Infliction of Emotional Distress
### Against Defendants Levine, McIntyre, Brovarski, Tumolo, Stephens, and Roh

254. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

255. The conduct of defendants Levine, McIntyre, Brovarski, Tumolo, Stephens, and Roh in deliberately causing, or recklessly disregarding the risk of causing, the wrongful arrest, prosecution, and incarceration of Jeffrey Deskovic was extreme and outrageous, and directly and proximately caused the grievous and continuing injuries and damages set forth above.

256. The conduct of defendant Tweed in deliberately subjecting Mr. Deskovic to unnecessary, invasive, assaultive, and violative physical contact, including contact of a sexual nature, was extreme and outrageous, and directly and proximately caused the grievous and continuing injuries and damages set forth above.

257. Defendants' actions intentionally to inflict emotion distress upon Mr. Deskovic were in violation of clearly established law, and no reasonable police officer in 1989 and 1990, or corrections officer in and subsequent to 1994, would have believed that the defendants' actions were lawful.

## COUNT XIV

### State Law Claim for Negligent Infliction of Emotional Distress
### Against Defendants Levine, McIntyre, Brovarski, Tumolo, Stephens, and Roh

258. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

259. Defendants Levine, McIntyre, Tumolo, Brovarski, Stephens, and Roh negligently and grossly negligently, and in breach of their duties owed to Mr. Deskovic to refrain from (a) compelling him to be a witness against himself, (b) fabricating evidence, (c) withholding material, exculpatory and impeachment evidence, (d) failing to conduct a constitutionally adequate investigation, and (e) maliciously prosecuting and causing Mr. Deskovic's false arrest and imprisonment, directly and proximately caused Mr. Deskovic, an innocent man, to be falsely arrested, malicious prosecuted, and wrongly imprisoned for sixteen years.  The defendants' actions caused Mr. Deskovic to suffer physical harm, including physical ailments resulting from the circumstances and duration of his wrongful incarceration, and to fear for his physical safety throughout the period of his pretrial and postconviction incarceration.

260. Defendant Tweed negligently and grossly negligently breached his duty to refrain from subjecting Jeffrey Deskovic to unnecessary, invasive, assaultive, and violative physical contact, including contact of a sexual nature, and thereby caused Mr. Deskovic to suffer physical harm and to fear for his physical safety throughout his incarceration.

261. Defendants' actions negligently to inflict emotion distress upon Mr. Deskovic were in violation of clearly established law, and no reasonable police officer in 1989 and 1990, or corrections officer in and subsequent to 1994, would have believed that the defendants' actions were lawful.

## COUNT XV

### Respondeat Superior Claim Against the City of Peekskill

262. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

74

263. At all times relevant to this complaint defendants Levine, McIntyre, Brovarski, and Tumolo acted as agents of, and in the scope of their employment with, defendant City of Peekskill. The conduct by which the defendants committed the torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress was undertaken while the defendants were carrying out their routine investigative functions as PPD detectives, and engaging in such conduct as would have been reasonably expected, and was in fact foreseen by, by their employer.

264. The City of Peekskill is liable for its agents' state law torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of respondeat superior.

## COUNT XVI

### Respondeat Superior Claim Against Putnam County

265. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

266. At all times relevant to this complaint defendant Stephens acted as an agent of, and in the scope of his employment with, defendant Putnam County. The conduct by which defendant Stephens committed the torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress was undertaken while Stephens was carrying out his routine investigative function as a Putnam County police officer, and was engaged in such conduct as would have been reasonably expected by, and was in fact foreseen by, his employer.

267. Putnam County is liable for Stephens's state law torts of malicious prosecution, intentional

or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of respondeat superior.

## COUNT XVII

### Respondeat Superior Claim Against Westchester County

268. Mr. Deskovic hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

269. At all times relevant to this complaint defendant Roh acted as an agent of, and in the scope of his employment with, defendant Westchester County. The conduct by which defendant Roh committed the torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress was undertaken while Roh was carrying out his routine function as a Deputy Medical Examiner, and was engaged in such conduct as would have been reasonably expected by, and was in fact foreseen by, his employer.

270. Westchester County is liable for Roh's state law torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of respondeat superior.

**WHEREFORE**, Jeffrey Deskovic prays as follows:

    A. That the Court award compensatory damages to him and against the defendants, jointly and severally, in an amount to be determined at trial;

    B. That the Court award punitive damages to him, and against all non-municipal defendants, in an amount, to be determined at trial, that will deter such conduct by defendants in the future;

    C. For a trial by jury;

D.  For pre-judgment and post-judgment interest and recovery of his costs, including

reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

E.  For any and all other relief to which he may be entitled.

Respectfully submitted,

September 18, 2007

Barry Scheck
Nick Brustin (NB0605)
Jennifer Laurin
Cochran, Neufeld & Scheck LLP
99 Hudson Street, 8th Floor
New York, New York 10013
Tel:  (212) 965-9081
Fax: (212) 965-9084
Attorneys for Plaintiff Jeffrey Deskovic