UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY DESKOVIC,

                         Plaintiff,

        v.

CITY OF PEEKSKILL, PUTNAM COUNTY,
WESTCHESTER COUNTY, DAVID LEVINE,
THOMAS McINTYRE, WALTER BROVARSKI,
EUGENE TUMOLO, JOHN AND JANE DOE
SUPERVISORS, DANIEL STEPHENS, LOUIS
ROH, MILLARD HYLAND, PETER INSERO,
LEGAL AID SOCIETY OF WESTCHESTER
COUNTY, and ALAN TWEED,

                         Defendants.

---

CITY OF PEEKSKILL, DAVID LEVINE, THOMAS
McINTYRE, WALTER BROVARSKI,

                         Third-Party Plaintiffs,

        v.

STEVEN ORLIKOFF, MARCIA G. SHEIN, P.C.,
MARCIA G. SHEIN, PETER INSERO, LEGAL AID
SOCIETY OF WESTCHESTER COUNTY,

                         Third-Party Defendants.

---

Case No. 07-CV-8150 (KMK)

OPINION AND ORDER

Appearances:

Barry C. Scheck, Esq.
Deborah L. Cornwall, Esq.
Nick J. Brustin, Esq.
Sarah A. Crowley, Esq.
Neufeld Scheck & Brustin LLP
New York, New York
*Counsel for Plaintiff Jeffrey Deskovic*

John Eric Knudsen, Esq.
New York State Department of Law
Albany, New York
*Counsel for Defendant Alan Tweed*

KENNETH M. KARAS, District Judge:

In this civil rights action, Plaintiff Jeffrey Deskovic ("Plaintiff") brings claims against,

*inter alia*, Defendants City of Peekskill, County of Westchester, and a number of police officers

and other officials, in connection with the arrest, conviction, and incarceration of Plaintiff for a

rape and murder that he did not commit.  Plaintiff filed his Amended Complaint on June 13,

2008 and his Second Amended Complaint on May 13, 2009, alleging claims under 42 U.S.C.

§ 1983 ("Section 1983") for numerous violations of his constitutional rights and under state law

for, *inter alia*, malicious prosecution and intentional infliction of emotional distress.  Of

particular relevance to the instant motion before the Court, Plaintiff alleges claims against

Defendant Alan Tweed ("Tweed"), a corrections officer for the New York Department of

Correctional Services ("DOCS"), in his individual capacity under Section 1983 for alleged

violations of Plaintiff's right to be free from unreasonable searches and wanton infliction of pain

pursuant to the Fourth, Eighth, and Fourteenth Amendments.

Tweed moves for severance of Plaintiff's claims as to him, contending that the claims

against him are improperly joined with Plaintiff's claims against the other Defendants.[1]  Tweed

also argues that if the Court severs Plaintiff's claims against him, Plaintiff's action as to him

---

[1] Tweed's motion was filed prior to Plaintiff's submission of his Second Amended Complaint.  However, because the allegations as to Tweed in Plaintiff's Second Amended Complaint are identical to those allegations contained in the Amended Complaint, the Court considers Tweed's motion as addressing the Second Amended Complaint.  *See Jones v. Astrue*, 526 F. Supp. 2d 455, 458 n.1 (S.D.N.Y. 2007) (considering motion to dismiss as addressing amended complaint where it was identical to the original complaint).

should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

For the reasons discussed below, Tweed's motion is granted in part and denied in part.

## I.  Background

### A.  Plaintiff's Arrest, Prosecution, and Incarceration

The following facts, taken from Plaintiff's Second Amended Complaint, are assumed to be true for purposes of this motion.  On November 17, 1989, the body of a fifteen-year old girl (hereinafter "A.C." or the "victim"), was found in a heavily wooded area of Hillcrest Park, a park located in Peekskill, New York.  (Second Am. Compl. ("SAC") ¶ 37.)  A.C. had been raped and murdered.  (*Id.*)  In the early stages of the investigation into A.C.'s rape and murder, certain officers of the Peekskill Police Department ("PPD Defendants") turned their suspicions on Plaintiff, who was then a sixteen-year-old classmate of A.C.'s at Peekskill High School.  (*Id.* ¶¶ 60-66.)  Over the course of numerous interviews and interrogations of Plaintiff between November 1989 and January 1990, PPD Defendants manipulated and fabricated evidence to implicate Plaintiff in A.C.'s rape and murder.  (*Id.* ¶¶ 65-94.)  On January 25, 1990, PPD Defendants, together with Defendant Daniel Stephens of the Putnam County Sheriff's Department, allegedly subjected Plaintiff to harsh interrogation tactics to obtain Plaintiff's confession.  (*Id.* ¶¶ 95-119.)  Over the course of the eight-hour interrogation, these Defendants allegedly denied Plaintiff food, threatened him with physical injury, and told him that he could go home if he confessed.  (*Id.* ¶¶ 100-14.)  In the course of the interrogation, Plaintiff "provided information that drew upon details concerning the crime that had been provided to him by PPD [D]efendants – many of which were inaccurate."  (*Id.* ¶ 113.)  Plaintiff was then placed under

arrest.  (*Id*. ¶ 115.)  He was indicted on February 27, 1990 for murder in the second degree, rape in the first degree, and possession of a deadly weapon in the fourth degree.  (*Id*. ¶ 125.)

Days after Plaintiff's indictment, DNA tests run on semen found in the victim's body excluded Plaintiff as the source of the semen.  (*Id*. ¶ 127.)  Analysis of hairs found on the victim's body also showed that at least one hair found on the victim was consistent with a "negroid-type" hair, typically shed by an African American individual.  (*Id*. ¶ 128.)

Plaintiff was tried before a Westchester County Jury by George Bolen ("Bolen"), a prosecutor with the Westchester County District Attorney's Office and a named Defendant in this case.[2]  (*Id*. ¶ 137.)  At trial, Bolen allegedly offered the false testimony of Defendant Louis Roh ("Roh"), the Deputy Medical Examiner, to support the prosecution's theory that the victim had engaged in consensual sex before her death with a high school student named Freddy Claxton ("Claxton"), and that the semen came from Claxton.  (*Id*. ¶¶ 137-43.)  Bolen also argued that the "negroid-type" hair found on the victim's body "had been shed by Roh, his African American assistant, and[/or] . . . Claxton."  (*Id*. ¶ 140.)  Bolen offered at trial evidence that PPD Defendants had manipulated and fabricated, including Plaintiff's false confession.  (*Id*. ¶ 143.)  PPD Defendants allegedly concealed from prosecutors and from the jury material, exculpatory, and impeachment evidence that supported Plaintiff's innocence.  (*Id*. ¶ 144.)

On December 7, 1990, Plaintiff was convicted by a Westchester County jury of murder, rape, and possession of a weapon.  (*Id*. ¶ 157.)  He was sentenced to fifteen years to life

---

[2] In an Opinion and Order dated August 13, 2009, the Court granted Bolen's motion to dismiss on the basis that he was absolutely immune for his alleged misconduct.  *See Deskovic v. City of Peekskill*, Nos. 07-CV-8150 & 07-CV-9488, 2009 WL 2475001, at *15 (S.D.N.Y. Aug. 13, 2009).

imprisonment.  (*Id.*)  For the next sixteen years, Plaintiff fought to vindicate his innocence

through the state and federal habeas processes, to no avail.  (*Id.* ¶¶ 157-60.)

### B.  Alleged Physical and Sexual Assault by Defendant Tweed

Plaintiff served all or part of his incarceration at Elmira Correctional Facility ("Elmira"),

located in Chemung County, New York.[3]  (*Id.* ¶ 161.)  On multiple occasions on or subsequent to

September 18, 2004, Tweed, "in the course of conducting routine searches of [Plaintiff's] person

outside the confines of his prison cell, [is alleged to have] repeatedly, routinely, and deliberately

conducted pat-down searches of [Plaintiff] in a manner that was contrary to prison policy for the

purpose of subjecting [Plaintiff] to unnecessary, invasive, assaultive, and violative physical

contact, including contact of a sexual nature."  (*Id.*)  Specifically, Tweed allegedly would

"violat[e] policies and procedures for pat-down searches that required prisoners to remove items

from their own pockets prior to pat-down, and instead remov[e] items from [Plaintiff's] pockets

himself, for the purpose of groping [Plaintiff's] sexual organs and otherwise assaulting and

harassing [Plaintiff]."  (*Id.* ¶ 162.)

### C.  Plaintiff's Exoneration

In 2006, the Westchester County District Attorney consented to conduct DNA tests on the

semen found in the victim's body and to compare the results of those tests against the available

DNA databases of convicted offenders.  (*Id.* ¶ 164.)  In September 2006, the DNA obtained from

the semen was matched to Steven Cunningham ("Cunningham"), who was then incarcerated in

New York for the 1993 murder of a Peekskill school teacher.  (*Id.*)  In March 2007, Cunningham

---

[3] Chemung County is in the Western District of New York.  *See* 28 U.S.C. § 112(d).

pled guilty to the rape and murder of A.C., and on May 2, 2007, he was sentenced to an additional twenty years in prison for the crime.  (*Id*.)

On September 20, 2006, Deskovic's conviction was vacated, and he was released from prison upon a motion pursuant to New York Criminal Procedure Law § 440.10, submitted jointly by the Westchester County District Attorney's Office and Deskovic's counsel.  (*Id*. ¶ 167.) Thereafter, on November 2, 2006, on a motion by the Westchester County District Attorney, the indictment against Deskovic was dismissed on the ground of actual innocence.  (*Id*. ¶ 168.)

## II.  Discussion

### A.  Severance

Tweed argues that Plaintiff's claims against him were improperly joined with the remaining claims in this action in violation of Federal Rule of Civil Procedure 20 ("Rule 20"), and moves for severance of the claims against him under Federal Rule of Civil Procedure 21 ("Rule 21").  (Def. Tweed's Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") 3.)  Rule 20(a)(2) permits the joinder of multiple defendants in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences; *and*
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added); *see also Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) ("Rule 20(a) provides that '[a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same

6

transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.'" (quoting Fed. R. Civ. P. 20(a)(2))).  As is clear from the plain language of Rule 20(a)(2), both criteria must be met for joinder to be proper. *See McNaughton v. Merck & Co.*, No. 04-CV-8297, 2004 WL 5180726, at *2 (S.D.N.Y. Dec. 17, 2004) (holding that joinder of defendants was improper where only one of the two preconditions of Rule 20(a)(2) was met); *Cline v. 1-888-Plumbing Group, Inc.*, No. 99-CV-1401, 2000 WL 342689, at *1 (S.D.N.Y. Mar. 30, 2000) ("Pursuant to the express language of Rule 20(a), there are two prerequisites to permissive joinder."); Moore's Federal Practice § 21.02[1] (3d ed. 2009) ("Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties"). "'The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits.'"  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (quoting *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989)).

In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true.  *See Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) ("[W]he[n] there has not been a trial and no facts developed during the pretrial discovery phase of the litigation have been presented to the Court for analysis . . ., the Court is required to accept the [factual] allegations made by the plaintiffs in their complaint and assume that all the matters alleged by them in the complaint are true and provable."); *Baergas v. City of New York*, No. 04-CV-2944, 2005 WL 2105550, at *4 (S.D.N.Y. Sept. 1, 2005) ("In considering defendants' motion [for severance], I must assume the truth of the

allegations in the complaint."). The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20. *See Kehr*, 596 F. Supp. 2d at 827.

If a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action. *See* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."); *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision whether to grant a severance motion is committed to the sound discretion of the trial court."); *Laureano v. Goord*, No. 06-CV-7845, 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007) (same). Courts have cautioned, however, that "'severance [i]s a procedural device to be employed only in exceptional circumstances.'" *Laureano*, 2007 WL 2826649, at *8 (quoting *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, No. 99-CV-682, 2001 WL 963943, at *1 (S.D.N.Y. Aug. 23, 2001)) (internal quotation marks omitted); *see also Kehr*, 596 F. Supp. 2d at 826. Indeed, "[t]he requirements of [Rule 20] are to be interpreted liberally to enable . . . court[s] to promote judicial economy." *Viada*, 235 F.R.D. at 61 (internal quotation marks omitted); *accord United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966) (explaining that "joinder of claims, parties and remedies is strongly encouraged[,]" and "the impulse [should be] toward entertaining the broadest possible scope of action consistent with fairness to the parties").

Applying these principles to the instant case, the Court concludes that severance of Plaintiff's claims against Tweed is appropriate because Plaintiff's claims against Tweed do not meet either of the two threshold requirements for joinder listed in Rule 20(a)(2). Plaintiff does not assert a right to relief "against [D]efendants jointly [and] severally" "with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences," as

required by Rule 20(a)(2)(A), and his claims against Tweed do not share questions of law or fact in common with his claims against the remaining Defendants, as required by Rule 20(a)(2)(B).

### 1.  The Requirement of Rule 20(a)(2)(A) Is Not Met

Plaintiff's allegations do not meet the requirement of Rule 20(a)(2)(A) because he does not assert a right to relief "against [D]efendants jointly [and] severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences." Fed. R. Civ. P. 20(a)(2)(A).  Plaintiff contends that the requirement of Rule 20(a)(2)(A) is met based on his allegation that all Defendants "are jointly and severally liable" for Tweed's alleged misconduct.  (Pl.'s Mem. in Opp'n to Def. Tweed's Mot. to Dismiss ("Pl.'s Opp'n") 7; SAC ¶ 185.)[4]  However, whether all Defendants may be held liable for Tweed's alleged conduct is a legal conclusion that, unlike Plaintiff's factual allegations, need not be accepted as true.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see generally United States ex rel. Perler v. Papandon*, 331 F.3d 52, 55 (2d Cir. 2003) (considering joint and several liability as a matter of law).  Indeed, based on Plaintiff's factual allegations, the Court concludes that there is no legal basis for imposing liability under Section 1983 on all Defendants for Tweed's alleged violations of Plaintiff's rights.

Plaintiff does not allege that any Defendant other than Tweed was personally involved in conducting the allegedly inappropriate pat-down searches of Plaintiff, as required to establish

---

[4] The Court notes that while Plaintiff argues that all Defendants are jointly and severally liable for Tweed's alleged misconduct, he does not argue that Tweed is jointly and severally liable for the alleged conduct by all other Defendants (the bulk of which occurred more than fourteen years before Tweed is alleged to have committed any wrongdoing).

liability under Section 1983.  (SAC ¶¶ 161-63.)  *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) ("[I]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." (internal quotation marks omitted)); *Hidalgo v. Kikendall*, No. 08-CV-7536, 2009 WL 2176334, at *3 (S.D.N.Y. July 22, 2009) ("An individual defendant is not liable under § 1983 absent personal involvement.").  Rather, Plaintiff contends that those Defendants who allegedly violated Plaintiff's constitutional rights by causing his wrongful conviction and subsequent imprisonment are jointly and severally liable for Tweed's conduct under "well-established principles of causation."  (Pl.'s Opp'n 7.)  In Plaintiff's words, "the [D]efendants who caused [Plaintiff's] imprisonment are liable for the full measure of damages he suffered during his sixteen[-]year[] [imprisonment] – including harm inflicted by Tweed."  (*Id.*)

To begin, it is common ground that in any Section 1983 case, a "plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."  *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998); *see also Williams v. Smith*, No. 02-CV-4558, 2009 WL 2431948, at *6 (S.D.N.Y. Aug. 10, 2009) ("A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights.").  Moreover, it is accepted that "'tort defendants, including those sued under [Section] 1983, are responsible for the natural consequences of [their] actions.'"  *Kerman v. City of New York*, 374 F.3d 93, 126 (2d Cir. 2004) (quoting *Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1071 (2d Cir. 1997) (internal quotation marks omitted) (alternation in *Kerman*); *see also Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (explaining, in context of a *Bivens* action, that tort defendants are responsible "for the 'natural consequences' of their actions").  "Thus, 'an

actor may be held liable for those consequences attributable to reasonably foreseeable intervening

forces, including the acts of third parties.'" *Kerman*, 374 F.3d at 126 (quoting *Warner*, 115 F.3d

at 1071); *see also Higazy*, 505 F.3d at 177 ("Defendants in *Bivens* actions may be liable for

consequences caused by reasonably foreseeable intervening forces . . . ."). Nevertheless, the

Supreme Court has made clear that "not every injury in which a state official has played some

part is actionable under [Section 1983]." *Martinez v. California*, 444 U.S. 277, 285 (1980).

Even if a Section 1983 defendant's "'initial act is the "but for" cause of some ultimate harm (i.e.,

the harm would not have happened but for the initial act)[, he] is not legally liable for the harm if

an intervening act is a "superseding cause" that breaks the legal chain of proximate cause.'"

*Higazy*, 505 F.3d at 181 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 351 n.7 (2d Cir. 2000) (citing

Restatement (Second) of Torts § 440 (1965))). Therefore, for instance, "an intervening exercise

of independent judgment breaks the chain of causation." *Hernandez v. Wells*, No. 01-CV-4376,

2003 WL 22771982, at *10 (S.D.N.Y. Nov. 24, 2003) (citing *Townes v. City of New York*, 176

F.3d 138, 147 (2d Cir. 1999)).

   "Generally, an intervening intentional or criminal act" is a type of superseding cause that

"severs the liability of the original tort-feasor." *In re Sept. 11 Litig.*, 280 F. Supp. 2d 279, 302

(S.D.N.Y. 2003) (citing *Kush v. City of Buffalo*, 449 N.E.2d 725, 729 (N.Y. 1983)). For

example, in *Martinez v. California*, the Supreme Court held that a state parole board did not

violate Section 1983 by releasing a prisoner who committed a murder five months later because

the murder was "too remote a consequence of the parole officers' action to hold them

responsible" under Section 1983. *Martinez*, 444 U.S. at 285. Of course, "'where the initial

wrongdoer can reasonably foresee that his misconduct will contribute to an "independent"

11

decision that results in [harm to the victim],'" *Hernandez*, 2003 WL 22771982, at *10 (quoting

*Zahrey*, 221 F.3d at 351), including an intentional or criminal act by a third party, *see Bonsignore*

*v. City of New York*, 683 F.2d 635, 637-38 (2d Cir. 1982) (applying New York tort law), "the

chain of causation [will] not be considered broken," *Hernandez*, 2003 WL 22771982, at *10; *see*

*also Higazy*, 505 F.3d at 177.[5]

Here, taking Plaintiff's factual claims as true, fourteen years after the non-Tweed

Defendants allegedly caused Plaintiff's wrongful conviction and subsequent imprisonment,

Tweed allegedly engaged in intentional and tortious misconduct by touching Plaintiff

inappropriately during pat-down searches.  Even if the non-Tweed Defendants set in motion

events that led to Plaintiff's imprisonment, without which Tweed allegedly could not have

assaulted Plaintiff, more than mere "but for" causation is required to impose Section 1983

liability on the non-Tweed Defendants for Tweed's misconduct.  *See Higazy*, 505 F.3d at 181

(noting that but-for causation is insufficient to establish liability where an unforeseen,

intervening act breaks the chain of causation (citing *Zahrey*, 221 F.3d at 351 n.7)); *accord West*

*v. Waymire*, 114 F.3d 646, 650 (7th Cir. 1997) ("Although [the allegations] would make

[Defendant] . . . a 'but for' cause of the [injury], 'but for' causation is not enough for legal

liability.").  More to the point, unless Tweed's intentional misconduct was a reasonably

---

[5] Normally, the question of proximate cause is one for the jury to decide.  *See Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004) ("The issue of proximate cause is generally a question of fact for the jury . . . ."); *Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996) ("Issues of proximate cause are normally questions of fact for the jury to decide").  However, a court may decide the issue if it can be determined as a matter of law that the defendant's actions were not the proximate cause of the plaintiff's injury.  *See Townes*, 176 F.3d at 147 (dismissing Section 1983 claim pursuant to Rule 12(b)(6) where plaintiff's allegations did not adequately allege that defendants proximately caused plaintiff's injury).

foreseeable consequence of the other Defendants' actions, such intentional misconduct will sever the chain of causation, thereby preventing the non-Tweed Defendants from sharing in liability for Tweed's alleged misconduct.  *See Martinez*, 444 U.S. at 285 (holding that intentional criminal conduct was "too remote a consequence of the [defendants] action to hold them responsible" under Section 1983); *In re Sept. 11 Litig*., 280 F. Supp. 2d at 302 (noting that "an intervening intentional or criminal act [normally] severs the liability of the original tort-feasor" (citing *Kush*, 449 N.E.2d at 729)).

In *Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir. 1985), the Seventh Circuit addressed a Section 1983 claim based on facts similar to those alleged in the instant action.  The plaintiff in *Hibma* brought suit under Section 1983 against three deputy sheriffs (the "deputies").  *Id*. at 1149-50.  The deputies, after themselves committing a series of burglaries, "frame[d plaintiff] for their crimes."  *Id*. at 1150.  As part of this scheme, the deputies coercively interrogated the plaintiff and falsified evidence against him, ultimately leading to the issuance of a criminal complaint that falsely accused the plaintiff of the burglaries.  *See id*.  The plaintiff entered a plea bargain, whereby he pled guilty to a lesser charge and the burglary charges were dropped.  *See id*. at 1151.  During the time that the plaintiff served his two-year sentence, he was sexually assaulted by two fellow inmates.  *See id*.  The plaintiff filed his Section 1983 suit after his release from prison, and he was awarded damages after a jury trial.  *See id*.  The plaintiff was not awarded damages based on the sexual assault that occurred while he was imprisoned, however, because the district court barred him from introducing evidence related to that assault at trial.  *See id*. at 1154-55.  Based on the exclusion of the sexual assault evidence, the plaintiff filed a post-trial motion for a new trial on damages, which was denied.  *See id*.

13

On appeal, the Seventh Circuit affirmed the district court's denial of the plaintiff's

motion for a new trial on damages, *see id*. at 1156, holding that "the trial court correctly held that

the sexual assault evidence was irrelevant for the purpose of assessing [the plaintiff's] damages

because [as a matter of law] . . . the deputies' actions were not a legal cause of the assault upon

[the plaintiff]." *Id*. 1156-57.  While the Seventh Circuit acknowledged that a tortfeasor in the

defendants' position could "'be liable for damages which are not anticipated, apprehended, or

foreseen, so long as they are natural and probable or direct consequences of the intentional tort,'"

*id*. at 1155 (quoting *Johnson v. Greer*, 477 F.2d 101, 105 (5th Cir. 1973)), the Court also noted

that an intentional tortfeasor does "not become an insurer of the safety of those whom he has

wronged," *id*. (quoting *Johnson*, 477 F.2d at 106).  Thus, the Court held that proximate cause

was lacking because the sexual assault was not a reasonably foreseeable or natural consequence

of defendants' conduct, *see id*. at 1156, and the plaintiff's additional damages were the result of

the intervening acts of others.  In the Seventh Circuit's words:

> [The county] transferred custody of [the plaintiff] from the deputies
> to the Wisconsin Prison System.  During [the plaintiff's]
> incarceration . . . . the duty to protect [the plaintiff] shifted from the
> deputies to the Wisconsin Prison System. . . .  Though the
> deputies' actions set in motion the events which led to [the
> plaintiff's] confinement . . . , the duty of protection assumed by the
> Wisconsin Prison System and the criminal acts of the other inmates
> formed superseding causes which prevent the deputies' actions
> from being a legal cause in bringing about the sexual assault.

*Id*.

Here, as in *Hibma*, Plaintiff cannot recover damages from the non-Tweed Defendants for

Tweed's misconduct because, as a matter of law, the non-Tweed Defendants could not

reasonably have foreseen that fourteen years after their misconduct, a corrections officer would

"subject[] [Plaintiff] to unnecessary, invasive, assaultive, and violative physical contact, including contact of a sexual nature" (Pl.'s Opp'n 1).  As the Seventh Circuit emphasized in *Hibma*, when Plaintiff was incarcerated, DOCS assumed the duty to protect him from harm.  *See Sanchez v. State*, 784 N.E.2d 675, 678 (N.Y. 2002) ("[T]he State owes a duty of care to safeguard inmates . . . . [from] risks of harm that are reasonably foreseeable." (internal citations omitted)); *Di Donato v. State*, 807 N.Y.S.2d 456, 457 (App. Div. 2006) (same).  DOCS's assumption of that duty fractured the causal link between the non-Tweed Defendants' alleged misconduct and the harm Plaintiff sustained from Tweed's allegedly inappropriate pat-down frisks.  *See Hibma*, 769 F.2d at 1156.

Moreover, based on the allegations in the Second Amended Complaint, the non-Tweed Defendants could not reasonably have foreseen that Plaintiff would be subjected to intentional sexual assault by a corrections officer while he was imprisoned.  In particular, Plaintiff has not alleged that there was anything about Plaintiff, "as distinguished from the [prison population] at large," that the non-Tweed Defendants should have known placed Plaintiff at special risk of sexual assault by a corrections officer.[6]  *Martinez*, 444 U.S. at 285 (finding victim's "death . . . too remote a consequence of the parole officers' act[]" of releasing prisoner to support Section

---

[6] The Court recognizes that the Second Amended Complaint alleges that Tweed, "like those who caused [Plaintiff's] wrongful conviction, preyed upon [Plaintiff's] obvious weakness." (SAC ¶ 10.)  The Second Amended Complaint does not identify the nature of Plaintiff's alleged "weakness."  However, even assuming that this term refers to Plaintiff's alleged emotional and psychological difficulties (*id.* ¶¶ 60-63), the Second Amended Complaint does not allege that the non-Tweed Defendants' awareness of Plaintiff's alleged emotional and psychological difficulties put them on notice that Plaintiff was at particular risk of sexual assault by a corrections officer.  Nor does the Second Amended Complaint more generally allege that an individual who suffers from Plaintiff's alleged emotional and psychological difficulties is at special risk of sexual assault.

1983 liability where "the parole board was not aware that [the victim], as distinguished from the public at large, faced any special danger" from the prisoner's release); *see also Smith v. Chief Executive Officer*, No. 00-CV-2521, 2001 WL 1035136, at \*6 (S.D.N.Y. Sept. 7, 2001) (holding that an attack on plaintiff by another inmate was not reasonably foreseeable as a matter of law because there were no allegations of, *inter alia*, prior physical altercations between plaintiff and the attacker); *Pritchett v. Artuz*, No. 99-CV-3957, 2000 WL 4157, at \*4 (S.D.N.Y. Jan. 3, 2000) (dismissing Section 1983 claim and holding, as a matter of law, that plaintiff's attack by other inmates was not reasonably foreseeable to defendants, who were prison officials, where there were no allegations that defendants knew or should have known that plaintiff was at particular risk of attack).

Finally, the alleged assault at issue in this action was even less foreseeable to the non-Tweed Defendants than the sexual assault at issue in *Hibma* because the alleged perpetrator of the assault against Plaintiff was a corrections officer acting entirely outside his prescribed role. *Cf. Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (explaining that "sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose"); *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 238-39 (S.D.N.Y. 2005) ("A corrections officer who sexually assaults a prison inmate does not mistakenly judge how he should carry out his duties; instead, such conduct blatantly disregards a New York State criminal statute and Second Circuit case law."). Nor does the Second Amended Complaint allege any other basis for the non-Tweed Defendants to have reasonably foreseen that Tweed, or any corrections officer, would subject Plaintiff to intentional sexual assault. For example, there are no allegations that non-Tweed Defendants knew or should have known that Tweed or other corrections officers at Elmira were

prone to committing sexual assault against inmates, or, more generally, that DOCS officials

tolerated or permitted illegal sexual assault against inmates. *Cf. Safadi v. Almanzar*, No. 98-CV-

7995, 2000 WL 1738403, at *3-6 (S.D.N.Y. Nov. 22, 2000) (granting summary judgment where

Plaintiff brought Section 1983 claims against supervisors of corrections officer who sexually

assaulted the plaintiff, explaining that corrections officer's conduct was not reasonably

foreseeable in the absence of evidence that he was "a threat to female inmates" or that the DOCS

had fostered a policy and custom of "encouraging, tolerating [or] permitting a pattern of illegal

sexual assaults"). Therefore, the intentional sexual assault allegedly committed by Tweed is a

superseding and unforeseeable act that prevents a finding of proximate causation as a matter of

law as to the non-Tweed Defendants.[7]

---

[7] In so concluding, the Court has considered the caselaw submitted by Plaintiff to support his argument that Tweed's misconduct was reasonably foreseeable to the non-Tweed Defendants. For the following reasons, stated briefly, the cases cited by Plaintiff do not undermine the Court's conclusion that Tweed's misconduct was not reasonably foreseeable.

At oral argument, Plaintiff relied principally on *Webb v. Amato*, 210 F. Supp. 2d 1015 (N.D. Ill. 2002), to support his argument that he was entitled to recover from all Defendants for Tweed's alleged misconduct. However, the holding of *Webb* does not sweep as broadly as Plaintiff suggests. In *Webb*, the plaintiff filed a Section 1983 claim against police officer defendants who allegedly caused plaintiff's wrongful imprisonment, seeking, *inter alia*, damages for negligent medical treatment of his heart condition while he was imprisoned. *See Webb*, 210 F. Supp. 2d at 1016-17. The defendants in *Webb* were not personally involved in providing the negligent medical care to plaintiff during his imprisonment, but the defendants were alleged to have been aware that the plaintiff suffered from a heart condition controlled by two daily doses of medication. *See id.* at 1015-16. The court allowed the plaintiff to pursue damages from the defendants for the negligent medical care, concluding that a jury could find that it was reasonably foreseeable that the defendants' act of wrongfully imprisoning someone "with a heart condition would result in that person receiving negligent medical treatment." *Id.* at 1017. Rather than supporting the broad proposition that a defendant who causes a plaintiff to be wrongfully imprisoned is liable for, in Plaintiff's words, "the full measure of damages he suffer[s] during his . . . [imprisonment]" (Pl.'s Opp'n 7), *Webb* unremarkably holds only that a defendant is liable for harms that are reasonably foreseeable. *See id.* at 1017. Here, in contrast, Plaintiff has not alleged that the non-Tweed Defendants were or should have been aware of any fact that made Plaintiff particularly susceptible to sexual assault by a corrections officer. Therefore, *Webb* is

As in *Hibma*, Plaintiff cannot recover damages from the Defendants who caused his wrongful imprisonment based on the intentional assault allegedly committed against him during his imprisonment.  Thus, Defendants are not jointly and severally liable for Tweed's alleged misconduct; only Tweed may face liability for his alleged misconduct.

Plaintiff does not otherwise assert a right to relief against all Defendants "with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences," as

---

distinguishable from the instant case.
        Similarly, the other cases cited by Plaintiff do not support the broad proposition he asserts.  To the contrary, those cases emphasize reasonable foreseeability as the hallmark of liability under Section 1983.  *See Zahrey*, 221 F.3d at 352 (holding, in the context of a Section 1983 claim alleging deprivation of liberty, that the "chain of causation" is not "broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty"); *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997) (explaining that "for purposes of § 1983 liability the requisite causal chain can occur through the 'setting in motion [of] a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury'" and holding that a jury could find that it was reasonably foreseeable to defendants, who were U.S. Marshals, that by falsely claiming that plaintiff had started a standoff with law enforcement by firing shots at them and other U.S. Marshals, they would set in motion a chain of events that led an FBI sniper to shoot plaintiff, escalating into an eight-day standoff during which plaintiff was trapped in a friend's home, and ultimately, culminating in plaintiff's arrest, jailing, and trial (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978))); *Northington v. Marin*, 102 F.3d 1564, 1567-69 (10th Cir. 1996) (concluding that concurrent tortfeasors could be held jointly and severally liable for plaintiff's assault in prison by fellow inmates, where defendant, a corrections officer, was one of several tortfeasors who spread the rumor that plaintiff was a prison informant despite "kn[o]w[ing] the probable result would be that [plaintiff] would be beaten"); *Weeks v. Chaboudy*, 984 F.2d 185, 187, 189 (6th Cir. 1993) (affirming imposition of joint and several liability on a concurrent tortfeasor, where the district court held that defendant proximately caused plaintiff's Eighth Amendment rights to be violated by denying plaintiff, who was a paralyzed inmate, access to "the only area of the prison equipped to cater to [paralyzed inmates'] needs").  None of these cases affects the Court's conclusion that Plaintiff has not sufficiently alleged that Tweed's allegedly inappropriate acts were a reasonably foreseeable result of the non-Tweed Defendants' alleged misconduct.  Indeed, Plaintiff has not cited a single case establishing Section 1983 liability based on a claim that it was reasonably foreseeable to law enforcement officials that a corrections officer would assault a particular inmate after being wrongly imprisoned and/or wrongly convicted.

18

required by Rule 20(a)(2)(A).  "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr*, 596 F. Supp. 2d at 826.  "The interpretation of the terms 'transactions or occurrences' as applied to the context of Rule 13(a) counterclaims offers guidance to the application of those terms under Rule 20."  *Id.* (quoting *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989)).  "As the Second Circuit has observed in the Rule 13 context, to determine whether a counterclaim arises out of the same transaction as the original claim, the court must assess the logical relationship between the claims and determine whether the 'essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"  *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).  In applying this standard, courts are to "take[] a broad view, not requiring an absolute identity of factual backgrounds . . . but only a logical relationship between them."  *Aquavella*, 615 F.2d at 22 (internal quotation marks omitted).  "Applying this reasoning to the terms used in Rule 20 . . . permit[s] all logically related claims by or against different parties to be tried in a single proceeding."  *Kehr*, 596 F. Supp. 2d at 826 (internal quotation marks omitted) (quoting *Blesedell*, 708 F. Supp. at 1421); *see also Barnhart*, 252 F.R.D. at 160 ("Courts within this Circuit repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims' and have counseled that such determinations are to be made on a case-by-case basis.").

Plaintiff argues that Tweed's alleged misconduct and the misconduct of other Defendants are logically related because Tweed's acts "arose . . . from [Plaintiff's] wrongful arrest and conviction."  (Pl.'s Opp'n 5.)  As discussed above, however, the connection between Tweed's

misconduct and the remaining Defendants' misconduct is too attenuated, factually and temporally, to support a causal connection.  Indeed, it is clear from the allegations in the Second Amended Complaint that the claims against Tweed are independent and distinct from the allegations against the remaining Defendants.  Whereas the claims against Tweed allegedly occurred "[t]hroughout the . . . years [Plaintiff] was incarcerated at Elmira Correctional Facility, and on multiple occasions on or subsequent to September 18, 2004" (SAC ¶ 161), Plaintiff's claims against the other Defendants relate to conduct that occurred years earlier, in late 1989 through 1990.  This broad temporal gap substantially weakens Plaintiff's claim of a logical connection between Tweed's alleged misconduct and that of the other Defendants.  *See Corporan v. City of Binghamton*, No. 05-CV-1340, 2006 WL 2970495, at *4 (N.D.N.Y. Oct. 16, 2006) (holding that claims related to two incidents that took place at the same approximate location on the same date were properly joined, but severing claims related to two other incidents that "took place at different times over a span of five months"); *Smith v. Goord*, No. 04-CV-6432, 2006 WL 2850597, at *3 (W.D.N.Y. Sept. 22, 2006) (holding that joinder of additional defendants would be improper where "the events at issue [in the claims against defendants we]re separated by more than a year").  And Plaintiff's claims against Tweed center around Tweed's alleged acts of touching Plaintiff inappropriately during pat-down frisks while Plaintiff was incarcerated (SAC ¶¶ 161-63), while Plaintiff's claims against the other Defendants center around alleged misconduct that led to his arrest, prosecution, and conviction for a crime he did not commit.  Thus, the alleged misconduct by Tweed is of a different kind than that of the other Defendants, further undermining the connection between the two.  *Cf. Vlamakis v. Ross*, 103 F.R.D. 398, 400 (S.D.N.Y. 1984) (concluding that "factual allegations . . . [did not] arise out

20

of the same transaction, occurrence, or series of transactions or occurrences" where plaintiff

alleged false arrest claims against one defendant and claims against other defendants for alleged

"retaliation for [plaintiff's] prosecution of" his false arrest action in the form of "harassment,

mistreatment, assault, threats and improper medical treatment [of] plaintiff" during his

imprisonment for charges unrelated to the allegedly false arrest).

Put simply, there are no allegations that Tweed was personally involved in the other

Defendants' misconduct, or that the other Defendants were personally involved in Tweed's

alleged misconduct.[8]  In the absence of a connection between Defendants' alleged misconduct,

the mere allegation that Plaintiff was injured by all Defendants "is not sufficient [by itself] to join

unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."  *Pergo, Inc. v. Alloc,*

*Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (concluding that allegations that two defendants

that infringed plaintiff's patent in an identical way were insufficient to meet the "transaction or

occurrence" standard because there was nothing, such as a cooperative or collusive relationship,

connecting defendants' conduct); *see also Nassau County Ass'n of Ins. Agents, Inc.*, 497 F.2d at

1154 (holding that joinder of 164 defendants was improper because "transaction and occurrence"

standard was not met where there was "[n]o allegation of conspiracy or other concert of action

has been asserted" and "[n]o [allegation of a] connection at all between the practices engaged in

by each of the 164 defendants"); *Pettus v. Wright*, No. 04-CV-6203, 2007 WL 148755, at *3

(W.D.N.Y. Jan. 11, 2007) (holding that joinder of defendants would be improper where claims

---

[8] The unrelated nature of these claims is further highlighted by the fact that Plaintiff's mother, McGarr, did not file suit against Tweed, despite filing a Section 1983 suit against the bulk of the other Defendants for violation of her constitutional right to familial association based on Plaintiff's wrongful conviction and subsequent imprisonment.

arose from alleged mistreatment of plaintiff at two separate correctional institutions, as plaintiff

had not "demonstrated any connection between the defendants[,] . . . . [and] there does not appear

to be any relation between the factual background [underlying the claims]"); *Smith*, 2006 WL

2850597, at *3 (concluding that joinder of defendants was improper where "there [wa]s no

suggestion that the original defendants were involved in the [other defendants' conduct] taken

. . . over a year later").[9]

---

[9] Plaintiff cites two cases in arguing that his claims arise from the same transaction and occurrence: *Baergas v. City of New York*, 2005 WL 2105550, at *1 and *Lyons v. Lutheran Hospital of Indiana*, No. 104-CV-728, 2004 WL 2272203, at *5 (N.D. Ill. Sept. 15, 2004). However, both these cases are distinguishable from the instant case because, unlike Plaintiff's claims against Tweed and the non-Tweed Defendants, the claims joined in both *Baergas* and *Lyons* were logically related.

In *Baergas*, the defendants sought severance of plaintiff's retaliation and employment discrimination claims from his claims for false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, all of which were asserted against all defendants, and municipal liability under *Monell*. *See Baergas*, 2005 WL 2105550, at *1. The plaintiff's claims stemmed from an alleged incident in which his employer, a defendant in the action, acted out of retaliatory and discriminatory animus to falsely accuse plaintiff of stealing merchandise. *See id*. at *2. The employer called the police to have plaintiff arrested, and police officers, also defendants in the action, then interrogated plaintiff outside the presence of counsel and imprisoned him. *See id*. Thereafter, plaintiff was terminated from his employment, and he was twice charged with larceny (but both charges were dropped for lack of evidence). *See id*. The court denied defendants' motion for severance, holding that joinder was proper under Rule 20(a) because, in addition to sharing issues of fact in common, "plaintiff's employment and civil rights claims . . . ar[o]se from the same transaction." *Id*. at *4-5. Specifically, the court explained that the claims were logically related because the alleged retaliatory and discriminatory activity of plaintiff's employer included the false testimony that procured plaintiff's arrest and prosecution, and therefore both the employment and the civil rights claims were "grounded on the [employer's] discriminatory and retaliatory animus." *Id*. at *5. Here, by contrast, Plaintiff's claims do not stem from the same or logically related facts: his claims against non-Tweed Defendants are grounded on the misconduct that led to Plaintiff's alleged malicious prosecution and the resulting wrongful imprisonment, and his claims against Tweed are grounded on Tweed's alleged acts of intentional assault of Plaintiff, and there is no allegation that Tweed engaged in any concerted action with the other Defendants.

Nor are the facts of *Lyons* analogous to the instant case. The plaintiff in *Lyons* filed suit against defendants based on events that allegedly caused the death of his wife ("Mrs. Lyons"). *See Lyons*, 2004 WL 2272203, at *1. After undergoing surgery to replace part of a device

Thus, there is no basis for concluding that the incidents were anything other than entirely separate and distinct "transactions," without the requisite logical relationship to warrant joinder.

### 2.  Common Questions of Law and Fact

As noted, Rule 20(a)(2) also requires Plaintiff to establish that there are common questions of fact or law in his claims against Tweed and the other Defendants.  However, there is no overlap, factually or legally, between these claims.

### a.  Common Question of Fact

Plaintiff argues that his claims against all Defendants share in common the fact of his innocence.  (Pl.'s Mem. 8.)  The Court is unpersuaded, as Plaintiff does not contend that any factual overlap exists with respect to the conduct on which Tweed's liability and the non-Tweed Defendants' liability is based.  In other words, Plaintiff does not dispute that, unlike his claims against the non-Tweed Defendants, the strength of his case against Tweed would be the same even if Plaintiff had been lawfully convicted.  Rather, in support of his argument that his

---

implanted in her back (ostensibly to relieve serious back pain), Mrs. Lyons was hospitalized for complications related to the device. *See id*.  During her hospitalization, Mrs. Lyons "slipped, fell, and hit her head, resulting in her death." *Id*.  The plaintiff filed suit against both the hospital and the manufacturer of the device, alleging products liability claims against the manufacturer, and premises liability and medical malpractice claims against the hospital, all of which, the plaintiff argued, led to Mrs. Lyons's death. *See id*.  The manufacturer moved to sever the claims against it, but the court held that joinder satisfied both Rule 20(a) and Indiana Trial Rule 20(A)(2), because the plaintiff sought relief from defendants jointly and severally, the claims all allegedly arose from the same series of occurrences that caused her death, and common questions of fact existed as to all claims. *See id*. at *5.  In holding that the claims related to the same series of occurrences, the court emphasized that "[i]n evaluating misjoinder and severance, the critical fact here is that plaintiff is alleging that Mrs. Lyons' death was caused by both [the manufacturer] and the hospital." *Id*.  The instant case differs from *Lyons*, however, because, as the Court has discussed at length, the non-Tweed Defendants are not liable for Tweed's misconduct as a matter of law. *Cf. id*. at *1 ("The complaint alleges expressly that [Mrs.] Lyons' death was a proximate result of the defective [device]."); *id*. at *5 ("Plaintiff's theory of the case will raise some challenging issues of foreseeability and intervening causation.").

innocence is relevant to his claims against Tweed, Plaintiff argues that his innocence is relevant

to the calculation of his damages against Tweed.  (*Id.* ¶ 8.)  However, Plaintiff fails to point to a

single case, and the Court is aware of none, that supports the argument that the guilt or innocence

of the victim of a prison assault is relevant to the damages recoverable from the perpetrator.

While Plaintiff has, at the Court's request at oral argument, submitted case law purporting to

support this claim, none of the cases cited by Plaintiff supports his argument.

Broadly characterized, the cases cited by Plaintiff stand for the proposition that a

plaintiff's innocence is relevant to the calculation of damages against those responsible for the

plaintiff's wrongful conviction and subsequent imprisonment.  *See, e.g.*, *Limone v. United States*,

497 F. Supp. 2d 143, 243 (D. Mass. 2007) (noting the difficulty of quantifying the losses suffered

by plaintiffs, innocent men who had been wrongly prosecuted, wrongly convicted, and wrongly

incarcerated due to defendants' misconduct, and awarding damages against defendants under

Section 1983 and Massachusetts state law); *Carter v. City of Philadelphia*, No. 97-CV-4499,

2000 WL 1016653, at *2-3 (E.D. Pa. July 12, 2000) (holding that in a Section 1983 action

alleging damages for malicious prosecution and wrongful imprisonment, "the issue of whether or

not a civil plaintiff committed the underlying criminal act is central to the measure of damages,"

because it "bears on the emotional damage he may have suffered during his imprisonment"); *cf.*

*Evans v. City of Chicago*, 231 F.R.D. 302, 309-10 (N.D. Ill. 2005) (allowing defendants to obtain

discovery of documents potentially relevant to the plaintiff's guilt or innocence, where plaintiff

alleged Section 1983 claims against defendants based on their alleged conspiracy to frame the

plaintiff, which led to the plaintiff's conviction and twenty-six-year incarceration).  However,

these cases do not address the relevance of a plaintiff's guilt or innocence to claims against a

defendant in Tweed's position – a subsequent tortfeasor who was not involved in the alleged misconduct that led to the plaintiff's wrongful conviction and subsequent imprisonment.

Plaintiff also has submitted case law to support a different argument, introduced at oral argument, that Plaintiff's innocence is a common question of fact because it may be relevant to his credibility as a trial witness.  These cases, however, merely discuss the use (or non-use) of a Section 1983 plaintiff's prior criminal convictions during cross examination.  They do not stand for the proposition that a plaintiff's actual innocence can be a common question of fact under Rule 20(a)(2)(B) merely because the plaintiff's innocence might go to his or her credibility.  *See Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992) (holding that district court did not abuse its discretion in allowing counsel to question plaintiff in a civil rights about his current incarceration, but noting that "evidence of current incarceration is highly prejudicial, and . . . courts should not be quick to admit such evidence[,] . . . particularly . . . in civil rights cases . . . .[, in which] courts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her"); *Pettijohn v. Wusinich*, 705 F. Supp. 259, 260-61 (E.D. Pa. 1989) (precluding use of plaintiff's prior convictions as impeachment evidence under Federal Rule of Evidence 609(b) where plaintiff sought to testify in his civil rights action, noting that "old convictions might seriously and unjustly prejudice his credibility in the eyes of the jury, in effect depriving him of an opportunity for a fair trial").  Even if Plaintiff's innocence is relevant to his credibility as a trial witness, a common question of fact as to a matter as tangential as witness credibility does not satisfy the criteria for joinder under Rule 20(a)(2)(B).  Moreover, the fact of Plaintiff's innocence is itself separate from the fact that he was wrongly imprisoned due to the allegedly actionable misconduct of law enforcement officials (as opposed, for

example, to being wrongly convicted and imprisoned because of mistaken eyewitness testimony). By Plaintiff's logic, any factual overlap as to a plaintiff's credibility would satisfy the common question of fact requirement of Rule 20(a)(2)(B). Yet, Plaintiff has failed to cite a single case that so holds, nor is the Court aware of any such case. Particularly given the absence of factual overlap between Tweed's alleged misconduct and the other Defendants' alleged misconduct, the Court declines to read the common question of fact requirement of Rule 20(a)(2)(B) so broadly. *See German v. Fed. Home Loan Mortgage Corp.*, No. 93-CV-6941, 1998 WL 812478, at *8 (S.D.N.Y. Nov. 16, 1998) (explaining that joinder is not appropriate where it would "'alter the character of the proceedings'" and where questions of fact common to all parties relate to tangential issues that are not material to underlying liability (quoting *Caton v. Barry*, 500 F. Supp. 45, 54 (D.D.C. 1980))); *cf. Tardd v. Brookhaven Nat'l Lab.*, No. 04-CV-3262, 2007 WL 1423642, at *10 (E.D.N.Y. May 8, 2007) (holding that joinder under Rule 20(a)(1), which sets forth analogous requirements to Rule 20(a)(2), was improper where there was minimal factual overlap between the claims, as such minimal overlap did "not overcome the numerous differences in the circumstances giving rise to the . . . claims for relief").[10]

### b. Common Question of Law

There also are no questions of law common to Plaintiff's claims against Tweed and against the remaining Defendants. While Plaintiff has asserted Section 1983 claims against all Defendants, his claims against Tweed are based on violations of his rights under the Fourth,

---

[10] In any event, Plaintiff's actual innocence is not a matter that is in dispute. The indictment against Plaintiff was dismissed on grounds of actual innocence, on motion by the Westchester County District Attorney. Therefore, even if relevant to Plaintiff's credibility, Plaintiff's innocence will not be a contested fact.

Eighth, and Fourteenth Amendments to be free from unreasonable searches and wanton

inflictions of pain.  In contrast, Plaintiff's claims against the remaining Defendants are based on,

*inter alia*, violations of Plaintiff's rights to due process and a fair trial under the Fourteenth

Amendment, of his rights under the Fifth Amendment's self-incrimination clause, of his rights

under the Fourth and Fourteenth Amendments' protections against malicious prosecution and

prolonged detention, and of his right to substantive due process under the Fourteenth

Amendment.

<u>3.  Additional Factors</u>

Even if the threshold requirements of Rule 20(a)(2) are met, courts may consider

"(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would

be caused by severance; and (3) whether the claims involve different witnesses and evidence."

*Kehr*, 596 F. Supp. 2d at 826; *see also Laureano*, 2007 WL 2826649, at *8 (listing these

additional factors to be considered).  The Court finds that these factors support severance of

Plaintiff's claims against Tweed.

Allowing Plaintiff to proceed with his claims against Tweed in this action will not

facilitate judicial economy.  "[T]he question in a severance . . . motion is whether separate trials

will require *substantial* overlap of witnesses or documentary proof."  *In re Blech Sec. Litig.*, No.

94-CV-7696, 2003 WL 1610775, at *13 (S.D.N.Y. Mar. 26, 2003) (internal quotation marks

omitted) (emphasis in original).  Because of the absence of factual or legal overlap between

Plaintiff's claims against Tweed and his claims against the other Defendants, there will not be

substantial overlap in discovery and depositions.  *Cf. Kehr*, 596 F. Supp. 2d at 828 (explaining

that judicial economy would be promoted by joinder when "it is anticipated that much of the

27

discovery and depositions will be identical for both plaintiffs"); *Laureano*, 2007 WL 2826649, at *9 (stating that judicial economy counseled against severance where discovery would substantively overlap).  Likewise, there will be little to no shared testimony and documentary evidence.  *See Deajess Med. Imaging, P.C. v. Travelers Indem. Co.*, 222 F.R.D. 563, 564 (S.D.N.Y. 2004) (severing claims against thirty-three defendants where each would "require different witnesses and documentary proof[,] . . . [and] the trial would require a jury to hear evidence from the participants in thirty-three separate [incidents]").

Moreover, given the factual and legal differences between Plaintiff's claims against Tweed and the other Defendants, all Defendants could be prejudiced by a joint trial.  A joint trial "could lead to confusion of the jury" because "[t]he claims against [Tweed and against the non-Tweed Defendants will] . . . involve separate witnesses, different evidence, and different legal theories and defenses."  *Elektra Entm't Group, Inc. v. Does 1-9*, No. 04-CV-2289, 2004 WL 2095581, at *7 (S.D.N.Y. Sept. 8, 2004); *see also Tardd*, 2007 WL 1423642, at *11 (finding that joinder of plaintiffs' claims would create a risk of prejudice to defendants in the form of confusion of the jury, where evidence offered at trial would be relevant to different claims brought by different plaintiffs).  Also, given the complexity of this case, the many different defendants who are alleged to have harmed Plaintiff, and the significant differences between Plaintiff's claims against Tweed and his claims against other defendants, there is a risk that trying all of Plaintiff's claims in a single trial could lead to "guilt by association and spillover prejudice."  *In re Blech Sec. Litig.*, 2003 WL 1610775, at *14; *see also id.* ("When many defendants are tried together in a complex case and they have significantly different levels of

28

culpability, the risk of prejudice is heightened." (internal quotation marks omitted)).[11]  In

contrast, Plaintiff has not explained how he would be prejudiced by having to pursue his claims

against Tweed separately from his claims against the other Defendants.

Thus, neither the threshold requirements of Rule 20(a)(2) nor the discretionary

considerations relevant to severance are met with respect to Plaintiff's claims against Tweed.

Plaintiff's claims against Tweed are improperly joined with his claims against the other

Defendants, and therefore, Tweed's motion to sever is granted.

B.  Venue

It is undisputed that if Plaintiff's claims against Tweed are severed from his remaining

claims, the Western District of New York, and not this District, is the appropriate venue for

Plaintiff's action against Tweed.  (Pl.'s Opp'n 4, 9-10; Def.'s Mem. 5-6.)  *See Pisani v. Diener*,

No. 07-CV-5118, 2009 WL 749893, at *7 (E.D.N.Y. Mar. 17, 2009) ("'[F]or venue purposes,

public officials are deemed to reside in the district in which they perform their official duties.'"

(quoting *Melendez v. Wilson*, No. 04-CV-73, 2006 WL 2621083, at *10 (S.D.N.Y. Sept. 12,

2006))).[12]  Tweed therefore asks this Court to dismiss Plaintiff's action against him pursuant to

---

[11] In fact, based on these considerations, there would be a strong argument to order separate trials on Plaintiff's claims against Tweed even if those claims were not severed from this action.  *See In re Zyprexa Prods. Liability Litig.*, No. 04-CV-1615, 2004 WL 2812095, at *3 (E.D.N.Y. Dec. 3, 2004) ("'[W]hether [a court] should sever the claims of the plaintiffs under Rule 21 or whether it should order separate trials under [Federal] Rule [of Civil Procedure] 42 requires the same considerations.'" (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999)); *see generally* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial . . . .").

[12] Plaintiff suggests, in a footnote and without providing any authority, that if the Court determines that the transaction or occurrence requirement of Rule 20(a)(2)(A) is met, venue may be appropriate in this district under the standard set forth in 28 U.S.C. § 1391(b)(2) ("Section 1391(b)(2)").  *See* 28 U.S.C. § 1391(b)(2) ("[Venue is proper in] a judicial district in which a

Federal Rule of Civil Procedure 12(b)(3).  (Def.'s Mem. 5-6.)  Plaintiff requests that the Court

transfer rather than dismiss Plaintiff's severed action against Tweed.  (Pl.'s Opp'n 10.)

      Where venue is not proper, a district court has discretion to "dismiss, or if it be in the

interest of justice, transfer such case to any district or division in which it could have been

brought."  28 U.S.C. § 1406(a); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.

1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the

district court."); *Blum v. Salomon*, No. 06-CV-3149, 2006 WL 3851157, at *2 (S.D.N.Y. Dec.

28, 2006) ("If the chosen forum is improper, the Court has discretion to dismiss the case or to

transfer the case to a district where venue is proper.").  "Dismissal is a severe penalty that will

not ordinarily be imposed where . . . the statute of limitations has run and plaintiff's claim will be

essentially extinguished."  *Yanouskiy v. Eldorado Logistics Sys., Inc.*, No. 05-CV-2202, 2006

WL 3050871, at *7 (E.D.N.Y. Oct. 20, 2006); *see also Daniel v. Am. Bd. of Emergency Med.*,

428 F.3d 408, 435 (2d Cir. 2005) ("A compelling reason for transfer is generally acknowledged

when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."

(internal quotation marks omitted)).  Nevertheless, dismissal is appropriate under certain

circumstances, such as when "the case unquestionably lacks merit," *Yanouskiy*, 2006 WL

---

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part
of property that is the subject of the action is situated . . . .").  The Court does not address the
applicability of Section 1391(b)(2), however, because Plaintiff concedes that the transactional
venue standard is not met if the transaction or occurrence requirement of Rule 20(a)(2)(A) is not
met.  (Pl.'s Opp'n 4 n.1 ("[S]atisfaction of the Rule 20 standard necessarily dictates satisfaction
of the transactional venue standard[;] [P]laintiff does not . . . set forth a separate transactional
venue analysis . . . .").)  The Court notes, however, that from the allegations in Plaintiff's Second
Amended Complaint, Plaintiff likely could not demonstrate that "*significant* events or omissions
*material* to [his] claim [against Tweed] . . . occurred in [this] district," *Gulf Ins. Co. v.
Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005), as required to establish venue under Section
1391(b)(2).

3050871, at *7 (citing *Daniel*, 428 F.3d at 436), "was brought with knowledge that venue was improper, or would otherwise 'reward plaintiffs for their lack of diligence in choosing a proper forum,'" *id*. (quoting *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992)).

Here, if the Court dismisses this action, the applicable three-year statute of limitations, *see Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (three-year statute of limitations applies to Section 1983 claims filed in New York (citing N.Y. C.P.L.R. § 214(5))), may bar re-filing of some or all of Plaintiff's claims against Tweed.[13]  *See Pisani*, 2009 WL 749893, at *9 (explaining that if the case was dismissed for improper venue, the statute of limitations would bar re-filing in the proper venue, even though the action had been timely filed in the improper venue).  *But see L.A. Printex Indus., Inc. v. At Last Sportswear, Inc.*, No. 08-CV-8981, 2009 WL 1285923, at *2 (S.D.N.Y. May 4, 2009) (holding that statute of limitations on an action re-filed in the proper venue could be equitably tolled for the period in which the case was pending in an improper venue (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) ("When a lawsuit is

---

[13] Plaintiff's Second Amended Complaint alleges that Tweed's misconduct occurred "[t]hroughout the . . . years [Plaintiff] was incarcerated at Elmira Correctional Facility, and on multiple occasions on or subsequent to September 18, 2004." (SAC ¶ 161.)  Plaintiff was released from prison on September 20, 2006.  (*Id*. ¶ 167.)  Therefore, all of his claims against Tweed must have accrued between the time he was first incarcerated at Elmira Correctional Facility (which was, the Court can infer, by or before September 18, 2004) and September 20, 2006 (when he was released).  *See Brown v. Capoziello*, No. 03-CV-8712, 2008 WL 4201636, at *4 (S.D.N.Y. Sept. 12, 2008) (explaining that under federal law, a claim under Section 1983 "accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action'" (quoting *Pearl*, 296 F.3d at 80)); *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) ("'[A Section 1983] claim accrues when the plaintiff knows or has reason to know of the harm.'" (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994))).  If the case is dismissed and re-filed, however, the three-year statute of limitations on some or all of Plaintiff's claims against Tweed may be expired, depending upon when the last instance of Tweed's alleged misconduct occurred.  Thus, at a minimum, any claims that accrued more than three years before the date of this Opinion and Order would be time-barred.

filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply.")))  The Court finds that there is no reason to subject Plaintiff's claims against Tweed to the possibility of such a result.

Plaintiff's action against Tweed has been pending in this Court for almost two years, since Plaintiff filed his initial Complaint in September 2007.  Tweed does not contend, at least at this stage in the litigation, that Plaintiff's claims are "unquestionably lack[ing in] merit," *Yanouskiy*, 2006 WL 3050871, at *7, and the Court has no reason to believe they are.  Nor are there allegations that Plaintiff exhibited any bad faith in bringing his action against Tweed in this District.  *See Pisani*, 2009 WL 749893, at *9 (considering plaintiff's absence of bad faith in transferring, rather than dismissing, for improper venue).  Indeed, the Court finds that Plaintiff has acted in good faith in all his pleadings related to Tweed.  Thus, given the potential statute of limitations issues that may arise if the action is dismissed, the Court finds that it is in the interest of justice to transfer, rather than to dismiss, this case.

### III.  Conclusion

For the reasons discussed herein, Defendant Tweed's motion is granted in part and denied in part.  Plaintiff's claims against Defendant Tweed are hereby severed from Plaintiff's claims against the remaining Defendants.  Plaintiff's action against Defendant Tweed is hereby transferred to the United States District Court for the Western District of New York.

The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 118), and to transfer those files related to Plaintiff's claims against Defendant Tweed to the Western District of New York.

SO ORDERED.

Dated:        September 22, 2009
              White Plains, New York


KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

33

*ECF Service List*:

Barry C. Scheck, Esq.
Deborah L. Cornwall, Esq.
Nick J. Brustin, Esq.
Sarah A. Crowley, Esq.
Neufeld Scheck & Brustin LLP
99 Hudson Street
New York, NY 10013
Ph. (917) 237-0338
Fax (212) 965-9084
Email: debi@cnscivilrights.com
        nick@cnscivilrights.com
        sarah@nsbcivilrights.com

Eric Hecker, Esq.
Elora Mukherjee, Esq.
Emery Celli Brinckerhoff & Abady, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Ph. 212-763-5000
Fax 212-763-5001
Email: ehecker@ecbalaw.com
        emukherjee@ecbalaw.com

Stuart E. Kahan, Esq.
Oxman Tulis Kirkpatrick Whyatt & Geiger, LLP
120 Bloomingdale Road
White Plains, NY 10605
Ph. (914) 422-3900
Fax (914) 422-3636
Email: skahan@oxmanlaw.com

Brian S. Sokoloff, Esq.
Sokoloff Stern LLP
355 Post Avenue, Suite 201
Westbury, NY 11590
Ph. (516) 334-4500
Fax (516) 334-4501
Email: bsokoloff@sokoloffstern.com

James A. Mitchell, Esq.
Stillman, Friedman & Shechtman, P.C.
425 Park Avenue
New York, NY 10022
Ph. 212-223-0200
Fax 212-223-1942
Email: jmitchell@stillmanfriedman.com

James A. Randazzo, Esq.
Gelardi & Randazzo LLP
800 Westchester Ave., Suite S-608
Rye Brooke, NY 10573
Ph. (914) 251-0603
Fax (914) 251-0603
Email: jrandazzo@gandrlaw.com

Peter I. Livingston, Esq.
Rose & Livingston & Cholst LLP
275 Madison Ave., Suite 500
New York, NY 10016
Ph. (212) 687-7770
Fax: (212) 687-8030
Email: pil@rosenlivingston.com

John Eric Knudsen
New York State Department of Law
The Capitol
Albany, NY 12224
Ph. (212) 416-8625
Fax (212) 416-6075
Email: John.Knudsen@oag.state.ny.us

Michele E. Kahn, Esq.
Michele Kahn P.C.
708 Third Ave, 19th Floor
New York, NY 10017
Ph. (212) 687-5066
Fax (212) 687-5066
Email: mk@kahngoldberg.com

Jonathan B. Bruno, Esq.
Kaufman, Borgeest & Ryan, LLP
120 Broadway, 14th Floor
New York, NY 10271
Ph. (212) 980-9600
Fax (212) 980-9291
Email: jbruno@kbrlaw.com