UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY DESKOVIC, | Index No. 07-CV-8150 (KMK)(GAY) |

Plaintiff,

vs.

CITY OF PEEKSKILL, PUTNAM COUNTY,
WESTCHESTER COUNTY, DAVID LEVINE,
THOMAS MCINTYRE, WALTER BROVARSKI,
EUGENE TUMOLO, JOHN AND JANE DOE
SUPERVISORS, DANIEL STEPHENS, LOUIS
ROH, MILLARD HYLAND, PETER INSERO, and
LEGAL AID SOCIETY OF WESTCHESTER
COUNTY,

Defendants.

LINDA MCGARR,

Plaintiff,

vs.

CITY OF PEEKSKILL, PUTNAM COUNTY,
WESTCHESTER COUNTY, DAVID LEVINE,
THOMAS MCINTYRE, WALTER BROVARSKI,
EUGENE TUMOLO, JOHN AND JANE DOE
SUPERVISORS, DANIEL STEPHENS, LOUIS
ROH, MILLARD HYLAND, PETER INSERO, and
LEGAL AID SOCIETY OF WESTCHESTER
COUNTY,

Defendants.

CITY OF PEEKSKILL,

Third-Party Plaintiff,

vs.

WESTPORT INSURANCE CORPORATION as
successor-in-interest to NORTH RIVER
INSURANCE COMPANY, WESTPORT
INSURANCE CORPORATION as a successor-in-
interest to INTERNATIONAL INSURANCE
COMPANY, UNDERWRITERS AT LLOYD'S,
LONDON,

***Caption continued on next page***

---

Index No. 07-CV-8150 (KMK)(GAY)

Index No. 07-CV-9488 (KMK)(GAY)

**THIRD PARTY PLAINTIFF CITY OF
PEEKSKILL'S MEMORANDUM OF
LAW IN OPPOSITON TO:**

**(a) Westport Insurance Corporation's [and
American Motorists Insurance
Company's joinder to] "Motion to
Dismiss Count III of the First Amended
Third Party Complaints" in *Deskovic*
and *McGarr* Actions;**

**(b) Defendant Insurers Who Issued Policies
to the City of Peekskill Effective from
December 31, 1991 to December 31, 1999
"Motion to Dismiss Count III" of the
First Amended Third Party Complaints
in *Deskovic* and *McGarr* Actions;**

**(c) Harco National Insurance Company's
[a] Motion to Dismiss Count III – Breach
of the Implied Covenant of Good Faith
and Fair Dealing – as stated in the
Amended Third Party Complaints
Submitted by the City of Peekskill in
*Deskovic* and *McGarr* Actions, and [b]
Motion Requesting that Certain
Unauthorized Allegations be Struck.**

*Caption continued from previous page*

CX REINSURANCE COMPANY LIMITED as
successor-in-interest to CNA INTERNATIONAL
REINSURANCE COMPANY,
CX REINSURANCE COMPANY LIMITED as
successor-in-interest to CNA REINSURANCE OF
LONDON, LIMITED,

SPHERE DRAKE INSURANCE PLC,

ILLINOIS UNION INSURANCE COMPANY,

UNITED NATIONAL INSURANCE COMPANY,

TRAVELERS INDEMNITY COMPANY as
successor-in-interest to GULF INSURANCE
COMPANY,

AMERICAN MOTORISTS INSURANCE
COMPANY as successor-in-interest to
AMERICAN PROTECTION INSURANCE
COMPANY,

AMERICAN MOTORISTS INSURANCE
COMPANY as successor-in-interest to
SPECIALTY NATIONAL INSURANCE
COMPANY,

HARCO NATIONAL INSURANCE COMPANY,
and

AMERICAN ZURICH INSURANCE COMPANY.

Third-Party Defendants.

## **TABLE OF CONTENTS**

Page

STATEMENT OF FACTS ...................................................................................................1

ARGUMENT ....................................................................................................................4

I.     THE ADDITIONAL FACTS SET FORTH IN THE CITY OF PEEKSKILL'S
FIRST AMENDED THIRD PARTY COMPLAINT ARE PROPER ................................4

     A.     The Third-Party Defendants Have Not Alleged Sufficient Cause To Strike
The Additional Factual Allegations Set Forth In The First Amended
Complaint..........................................................................................................6

     B.     The City of Peekskill's First Amended Complaint complies with both Fed.
R. Civ. P. 8(a)(2) and *Ashcroft v. Iqbal* ........................................................7

II.     THE THIRD-PARTY DEFENDANTS SHOULD BE MADE TO DEFEND
ALLEGATIONS OF THEIR BAD FAITH CONDUCT TOWARD THEIR
POLICYHOLDER, THE CITY OF PEEKSKILL ...........................................................8

III.     THE LONDON GROUP'S STEALTH MOTION ON THE DUTY TO DEFEND
AND THE APPLICATION OF DEDUCTIBLES SHOULD BE REJECTED................12

     A.     The London Group's Attempt To "Back Door" – Without Receiving
Permission From The Court – Their Motions On The Duty To Defend And
The "Number Of Deductibles" Issue Should Be Rejected. ...................................12

     B.     The London Group's Position that They Have No Obligations to the City
of Peekskill Under the Policy Until the Underlying Cases are Completely
Over is Untenable ................................................................................................13

     C.     The London Group's Position that Would Aggregate the Amount of
Deductibles to be Paid BEFORE Coverage is granted – While Not Before
the Court – is Unfair ............................................................................................15

CONCLUSION................................................................................................................16

                                    

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)...........................................................................7

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
   10 N.Y.3d 187, 886 N.E.2d 127, 856 N.Y.S.2d 505 (2008)..................................8, 10

*Chaffee v. Farmers New Century Ins. Co.*,
   No. 5:04-CV-1493, 2008 WL 4426620 (N.D.N.Y. Sept. 24, 2008).........................12

*Chenensky v. New York Life Ins. Co.*,
   Nos. 07 Civ. 11504(WHP), 09 Civ. 3210(WHP), 2012 WL 234374 (S.D.N.Y. Jan. 10, 2012) ..................................................................................................................................6

*Chernish v. Mass. Mut. Life Ins. Co.*,
   No. 5:08-CV-0957, 2009 WL 385418 (N.D.N.Y. Feb. 10, 2009)..................................9, 10, 11

*Federal Ins. Co. v. Kozlowski*,
   18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005) ...........................................15, 16

*Goldmark, Inc. v. Catlin Syndicate Ltd.*,
   No. 09-CV-3876, 2011 WL 743568 (E.D.N.Y. Feb. 24, 2011) ..............................12

*Gulf Underwriters Insurance Company v. City of Council Bluffs*,
   755 F. Supp. 2d 988 (S.D. Iowa 2010) .....................................................................3

*Handy & Harman v. Am. Int'l Grp., Inc.*,
   No. 0115666/2007, 2008 WL 3999964 (N.Y. Sup. Ct. New York Cnty. Aug. 25, 2008) ..............................................................................................................................12

*MDW Enters. v. CNA Ins. Co.*,
   4 A.D.3d 338, 772 N.Y.S.2d 79 (2d Dep't 2004) .....................................................3

*National Cas. Ins. Co. v. City of Mount Vernon*,
   128 A.D.2d 332, 515 N.Y.S.2d 267 (2d Dep't 1987)............................................2, 3

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.*,
   157 A.D.2d 293, 556 N.Y.S.2d 549 (1st Dep't 1990) .................................14, 15, 16

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
   295 F.3d 232 (2d Cir. 2002)..................................................................................8, 9

*O.K. Petroleum Distribution Corp. v. Travelers Indem. Co.*,
   No. 09 Civ. 10273, 2010 WL 2813804 (S.D.N.Y. July 15, 2010) ....................11, 12

*Panasia Estates, Inc. v. Hudson Ins. Co.,*
  10 N.Y.3d 200, 886 N.E.2d 135, 856 N.Y.S.2d 513 (2008)....................................................10

*Pavia v. State Farm Mut. Auto. Co.,*
  82 N.Y.2d 445, 626 N.E.2d 24, 605 N.Y.S.2d 208 (1993)...................................................8, 9

*Quick Response Commercial Div., LLC v. Travelers Prop. Cas. Co. of Am.,*
  No. 1:09-cv-00651, 2009 WL 3334600 (N.D.N.Y. Oct. 14, 2009)....................................11, 12

*Schwartz v. Twin City Fire Ins. Co.,*
  492 F. Supp. 2d 308 (S.D.N.Y. 2007).....................................................................................8

*Smith v. General Accident Ins. Co.,*
  91 N.Y.2d 648, 697 N.E.2d 168, 674 N.Y.S.2d 267 (1998).......................................................9

*Taveras v. American Transit Ins. Co.,*
  No. 24794/10, 33 Misc. 3d 1210(A), 2011 WL 4922215 (N.Y. Sup. Ct. Kings Cnty.
  Oct. 17, 2011) .........................................................................................................................9

*Worldwide Home Products, Inc. v. Time, Inc.,*
  No. 11 Civ. 3633, 2012 WL 1428528 (S.D.N.Y. Apr. 20, 2012)...............................................6

**STATUTES**

42 U.S.C. § 1983 ............................................................................................................................1

**RULES**

Fed. R. Civ. P. 8(a)(2)...............................................................................................................7, 8

Fed. R. Civ. P. 15(a)(2)....................................................................................................................6

Third-Party Plaintiff, the City of Peekskill (the "City of Peekskill" or the "City"),

by its attorneys, submits this Memorandum of Law in Opposition to the following motions:

1. Westport Insurance Corporation's [and American Motorists Insurance Company's, as successor in interest to both American Protection Insurance Company and Specialty National Insurance Company, joinder to] "Motion to Dismiss Count III of the First Amended Third Party Complaints" in the *Deskovic* and *McGarr* Actions;

2. Defendant Insurers Who Issued Policies to the City of Peekskill Effective from December 31, 1991 to December 31, 1999 (Collectively referred to herein as the "London Group") "Motion to Dismiss Count III" of the First Amended Third Party Complaints in the *Deskovic* and *McGarr* Actions; and

3. Harco National Insurance Company's [a] Motion to Dismiss Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing – as stated in the Amended Third Party Complaints Submitted by the City of Peekskill in the *Deskovic* and *McGarr* Actions, and [b] Motion Requesting that Certain Unauthorized Allegations be Struck.

## STATEMENT OF FACTS

The City of Peekskill was sued by Jeffrey Deskovic and his mother Linda McGarr

in connection with Deskovic's 1990 trial and conviction for the murder and rape of a teenage girl

classmate. After being sentenced in January 1991 to fifteen years to life in prison, in 2006, DNA

testing on the DNA found at the scene of the crime was matched to Steven Cunningham, an

individual who was incarcerated in New York. In September 2006, Deskovic's conviction was

vacated, and he was released from prison. Cunningham ultimately pleaded guilty to the murder.

Subsequent to Deskovic's release from prison, Deskovic and his mother, Linda McGarr, sued the

City of Peekskill and other defendants for claims including, but not limited to, civil rights

violations, wrongful imprisonment, detention, malicious prosecution, and claims under 42 U.S.C.

§ 1983 (the "Underlying Action").

The City of Peekskill, during all pertinent years, purchased insurance policies

from the Third-Party Defendants, including Law Enforcement Liability coverage (or the like)

(collectively, the "Third-Party Defendants' Policies").[1] The City of Peekskill bought these insurance policies to protect the City from precisely the type of enormous potential liability that it now faces from Mr. Deskovic. Despite the fact that these insurance policies were meant to protect the City, the Third-Party Defendants (with the exception of Westport Insurance Corporation ("Westport") and Lumbermens)[2] have completely denied coverage to the City. In essence, the Third-Party Defendants that should have to respond and pay any settlement or judgment to protect the City of Peekskill have taken the position that the ONLY policy that provides indemnity coverage to the City is Westport's 1990 policy. If the position of the denying defendants were true, the City would have minimal insurance coverage in the face of two lawsuits which seek many millions from the City.

The Third-Party Defendants steadfastly refuse to acknowledge that New York courts already have specifically recognized that all of the insurance policies from the time of arrest (here, 1991) through ultimate exoneration (here, 2006) are triggered and are required to respond. *National Cas. Ins. Co. v. City of Mount Vernon*, 128 A.D.2d 332, 336-38, 515 N.Y.S.2d 267, 270-71 (2d Dep't 1987) ("*Mount Vernon*") (holding insurance company liable for defense and indemnity under a policy in effect at the end of underlying claimant's incarceration, despite the fact that the imprisonment was continued from the previous policy period and the "causative" event of his arrest pre-dated the policy). *Mount Vernon* recognized continuous (or multiple trigger) for damages in a case similar to that before this Court. *Mount Vernon*, 128 A.D.2d at 336, 515 N.Y.S.2d at 270. Under each insurance policy, which together span the

---

[1] The Third-Party Defendants' Policies are listed in Exhibit A to the Affidavit of Steven J. Pudell, Esq. ("Pudell Affidavit").

[2] Lumbermens is providing a defense under a reservation of rights pursuant to its 2003 policy that it sold to the City of Peekskill. *See* Pudell Affidavit, Exs. B, C at ¶175. Westport has granted coverage under its 1990 policy and is also providing a defense, under a reservation of rights, pursuant to its 1991 policy. Westport Brief, at pp. 1-2.

2

entire period of Mr. Deskovic's imprisonment, the underlying allegations of false imprisonment and violations of civil rights (i.e. allegations of post-conviction conduct) are covered injuries under the policies.[3] Such covered injuries and covered conduct have been alleged in the underlying complaints for each year of Mr. Deskovic's imprisonment, and therefore, each policy is triggered. The Insurance Companies are denying coverage or reserving their rights when they know or reasonably should know that under New York law, Peekskill is entitled to insurance coverage for Mr. Deskovic's claim.[4]

At the very least, however, the various Third-Party Defendants' Policies are susceptible to multiple reasonable interpretations, and thus must be construed in favor of the City. *MDW Enters. v. CNA Ins. Co.*, 4 A.D.3d 338, 340–341, 772 N.Y.S.2d 79, 82 (2d Dep't 2004), *quoting State of New York v. Home Indem. Co.*, 66 N.Y.2d 669, 671, 486 N.E.2d 827, 829, 495 N.Y.S.2d 969, 971 (1985) ("The test for ambiguity is whether the language in the insurance contract is 'susceptible of two reasonable interpretations.'"). The City's position that all of the policies are triggered, at a minimum, is one reasonable interpretation. In fact, one of the Third-Party Defendants in this case, Zurich American Insurance Company ("Zurich"), which sold an umbrella policy to the City that would be triggered upon exhaustion of the Westport 1990 policy, agrees with the City and the City's interpretation. Zurich denied coverage to the City, claiming it is "not potentially implicated until all primary insurance for all potentially implicated

---

[3] Alternatively, because various acts at separate times during the many years may have triggered some of the policies independently, such as wrongful arrest, wrongful conviction, wrongful imprisonment, continued prevention of access to the courts and other violations of Civil Rights, even if *Mount Vernon*'s continuous trigger rule is not applied in this case, multiple policies may still be called on to respond. *National Cas. Ins. Co. v. City of Mount Vernon*, 128 A.D.2d 332, 336, 515 N.Y.S.2d 267, 270 (2d Dep't 1987) ("*Mount Vernon*").

[4] The Court in *Gulf Underwriters Insurance Company v. City of Council Bluffs*, 755 F. Supp. 2d 988 (S.D. Iowa 2010), although distinguishing Mount Vernon, recognized the viability of multiple or continuous trigger in a scenario such as that presented here.

years is exhausted."  However, Zurich stated that it "agrees with the City, that, under New York law, multiple policy periods are potentially implicated by the allegations in the Underlying Action."  *See* Pudell Affidavit, Ex. D.

The Third-Party Defendants' failure and refusal (except as noted above) to honor the obligations under each of the insurance policies they sold to the City of Peekskill has left the City in just the very position the City sought to avoid by purchasing insurance in the first place. The Third-Party Defendants' reaction to "run for cover" instead of "running to coverage" is a breach of their individual duties of good faith and fair dealing.  The Third-Party Defendants believe that by placing their own interests over the City's interests and thereby placing the City in financial peril, the Third-Party Defendants have limited the City to an action for "breach of contract."  This mistaken belief minimizes the damage their actions have caused or may cause the City and equally glosses over the uniqueness of the relationship of an insurance company to its policyholder.

## ARGUMENT

I.  **THE ADDITIONAL FACTS SET FORTH IN THE CITY OF PEEKSKILL'S FIRST AMENDED THIRD PARTY COMPLAINT ARE PROPER**

The City of Peekskill's First Amended Third Party Complaint filed in the *Deskovic* and *McGarr* Actions on April 6, 2012 (collectively, the "First Amended Complaint") contained no new causes of action.  *See* Pudell Affidavit, Exs. B, C.  The First Amended Complaint deleted more than it added.  *Id.*  In fact, at the request of the Third-Party Defendants, the City actually removed allegations and prayers for relief from the original complaint.

- At Harco National Insurance Company's ("Harco") request, the City of Peekskill deleted from the insurance coverage actions the Harco policies for 2007, 2008 and 2009;

4

- At Westport's request, the City of Peekskill removed North River
  Insurance Company as a separate party to the Third Party Action;

- At the request of all of the Third-Party Defendants, the City of Peekskill
  deleted the City's demand for punitive damages; and

- The City of Peekskill dismissed its claims against Markel American
  Insurance Company and Illinois National Insurance Company.

Despite all of these concessions, the Third-Party Defendants find fault that the

City of Peekskill added "detailed and gratuitous bad faith allegations" that were "unauthorized."

*See* Harco Brief, at p. 4; London Group Brief, at p. 3; Westport Brief, at p. 5.  Conspicuously

missing from the Third-Party Defendants' briefs is the fact that the City of Peekskill filed the

original third party complaints on September 9, 2011.  Instead of answering the complaints,

most, if not all of the Third-Party Defendants, requested additional time in which to respond.

The City of Peekskill offered an extension until January 6, 2012 for all of the Third-Party

Defendants.  Instead of responding on January 6, 2012, the Third-Party Defendants sought and

were granted permission to file a Motion to Dismiss the City of Peekskill's count for bad faith

and request for punitive damages.  After this briefing is completed and the Court decides the

current motions, only then would the Third-Party Defendants need to finally answer the First

Amended Complaint.  In essence, the Third-Party Defendants will have had at least nine months

to answer.  However, the Third-Party Defendants claim that they have been prejudiced by no

more than nine additional paragraphs per insurance company setting forth conduct that took

place after the original complaints were filed.[5]  The Third-Party Defendants appear to be taking

any road to avoid paying this claim and keep the City of Peekskill at peril.[6]

---

[5]     The Insurance Company Defendants' failure to honor all of their obligations on the Insurance
Policies forced the City to bring these law suits, and has and will cause The City of Peekskill untold
additional costs.  Generally, policyholders are out-of-pocket money during an insurance coverage dispute
and often face severe cash flow problems.  Peekskill is no different.  Often, the amounts paid in pursuing
*footnote continued*

A.     **The Third-Party Defendants Have Not Alleged Sufficient Cause To Strike The Additional Factual Allegations Set Forth In The First Amended Complaint.**

During the hearing on March 27, 2012, the City of Peekskill sought leave to amend its complaint to add Zurich as a defendant and make the changes set forth above. In addition, the City of Peekskill intended to add facts that had not occurred at the time the original complaint was filed. The City of Peekskill did not understand the Court as limiting its right to amend the complaint, especially in light of the fact that the City of Peekskill did not add any new causes of action.[7]   Indeed, the City provided all third-party defendants with a "red-line" version of the First Amended Complaint to ease their review of changes. Even if the City of Peekskill did not obtain, as it thought it did, the Court's leave to add the additional factual paragraphs, the Third-Party Defendants ignore well-settled law that leave to amend a pleading before trial is "liberally granted, " *Chenensky v. New York Life Ins. Co.*, Nos. 07 Civ. 11504(WHP), 09 Civ. 3210(WHP), 2012 WL 234374, at *1 (S.D.N.Y. Jan. 10, 2012), except where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*   None of those elements are present here. In light of the fact that the Third-Party Defendants have not even answered the

---

coverage lawsuits are not recoverable. One of the very reasons policyholders buy insurance is that they are averse to litigation; yet instead of coverage, Peekskill apparently merely bought a "ticket" to sue.

[6]     Rule 15(a)(2) of the Federal Rules of Civil Procedure specifies that federal courts should "freely give" leave to amend "when justice so requires." *Worldwide Home Products, Inc. v. Time, Inc.*, No. 11 Civ. 3633, 2012 WL 1428528, at *2 (S.D.N.Y. Apr. 20, 2012).

[7]     The London Group argues that by "adding the new 'bad faith' factual allegations", the City of Peekskill "exceeded the scope of the Court's [March 27, 2012] Order." London Group Brief, at p. 2. The Court's Order states that the "Third Party Plaintiff, the City of Peekskill, shall amend its Third Party Complaint by April 6, 2012." The City of Peekskill is unaware of any other order dealing with the filing of the City of Peekskill's amended complaint.

6

First Amended Complaint – and that a motion on this exact pleading is pending – the Third-Party

Defendants cannot even allege they were prejudiced based on the additional allegations included

in the First Amended Complaint.

      **B.**      **The City of Peekskill's First Amended Complaint complies with both**
                    **Fed. R. Civ. P. 8(a)(2) and *Ashcroft v. Iqbal***

      On the one hand, the Third-Party Defendants ask that this Court strike Count III

of the City of Peekskill's First Amended Complaint because Count III contains "<u>conclusory</u>

<u>allegations</u>" that are insufficient "under New York law to state a valid bad faith claim." *See*

Westport Brief, at p. 4.  Yet, on the other hand, the Third-Party Defendants complain that by

adding "additional alleged acts of misconduct," the First Amended Complaint improperly goes

beyond the minimum pleading requirement of a "short and plain statement." *See* Westport Brief,

at p. 11; Harco Brief, at p. 5 ("Harco objects to the City's allegations describing in detail its view

of the unsuccessful efforts the parties have made to settle this matter.").[8]  The Third-Party

Defendants also argue that "there are no particularity requirements for pleading bad faith," *see*

Harco Brief, at p. 5, but then these same allegations are called "conclusory" elsewhere.

      The Third-Party Defendants allege that the increased level of detail actually

violates Fed. R. Civ. P. 8(a)(2) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

However, the *Iqbal* court stated that for a complaint to survive a motion to dismiss, it "must

contain sufficient factual matter" and facts that show "more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1950 (*quoting Bell Atlantic*

---

[8]     Harco is incorrect in stating that the allegations detail the "unsuccessful efforts the parties have made to settle this matter."  The First Amended Complaint details the "unsuccessful efforts" in having the Third-Party Defendants participate in settling the <u>underlying</u> matters.  It is the City of Peekskill's position that the City of Peekskill's insurance companies have an obligation to settle the <u>underlying</u> matters on behalf of Peekskill.  Further, the Third-Party Defendants' failure to settle the <u>underlying</u> matters have put the City at risk and demonstrates the Third-Party Defendants' putting their own interests ahead of that of their policyholder, the City of Peekskill.

*Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). The First Amended Complaint – and the limited added material – satisfies the pleading requirements, and should be allowed to stand.

## II.   THE THIRD-PARTY DEFENDANTS SHOULD BE MADE TO DEFEND ALLEGATIONS OF THEIR BAD FAITH CONDUCT TOWARD THEIR POLICYHOLDER, THE CITY OF PEEKSKILL

"As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.'" *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 194, 886 N.E.2d 127, 131, 856 N.Y.S.2d 505, 509 (2008) (citing *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318, 662 N.E.2d 763, 769, 639 N.Y.S.2d 283, 289 (1995)); *Pavia v. State Farm Mut. Auto. Co.*, 82 N.Y.2d 445, 452, 626 N.E.2d 24, 27, 605 N.Y.S.2d 208, 211 (1993) ("The duty of 'good faith' settlement is an implied obligation derived from the insurance contract.") (*quoting Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 436, 285 N.E.2d 849, 854, 334 N.Y.S.2d 601, 608 (1972)). More than a contract for money, when the policyholder purchases an insurance policy, it is bargaining for "peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe." *Id.* Thus, insurance companies owe a duty to their policyholders "'to act in good faith when deciding whether to settle' a claim and the insurer 'may be held liable for breach of that duty.'" *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 329 (S.D.N.Y. 2007) (internal quotations removed) (*citing Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (insurance companies have a duty under New York law to act in good faith when deciding to settle and risk being held liable for breach of that duty)); *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 241 (2d Cir. 2002) (Because insurance companies have total control over the defense and settlement of underlying actions against their policyholders, they are required to act in the policyholders' best interests.) (*citing Pavia*, 82 N.Y.2d at 452-453, 626 N.E.2d at 27, 605 N.Y.S.2d at 211). As

8

explained below, the City of Peekskill sufficiently has alleged that, through the Insurance

Companies' bad faith conduct in "investigating" the Underlying Action and failing to defend or

settle the Underlying Action, the Third-Party Defendants have breached their duty of good faith

and fair dealing to the City of Peekskill. This claim is not duplicative of the City of Peekskill's

breach of contract claim, is valid under New York law, and permits the City to seek extra-

contractual damages.

           The Third-Party Defendants assert that because the duty of good faith is implied

in every insurance contract, the City of Peekskill's claim for the Third-Party Defendants' breach

of good faith is entirely duplicative of its breach of contract claim, and thus, cannot be asserted

as a separate cause of action for the Third-Party Defendants' bad faith claims handling.

Westport Brief, at p. 6-10; London Group Brief, at p. 11; Harco Brief, at p. 3. However, in

arguing that the City of Peekskill may not seek recovery for the Third-Party Defendants' breach

of good faith and fair dealing and may only pursue its breach of contract claim, the Third-Party

Defendants gloss over the decisions of New York courts acknowledging claims for bad faith

settlement practices. *Pavia*, 82 N.Y.2d at 453, 626 N.E.2d at 27, 605 N.Y.S.2d at 211; *Taveras*

*v. American Transit Ins. Co.*, No. 24794/10, 33 Misc. 3d 1210(A), 2011 WL 4922215, at *6

(N.Y. Sup. Ct. Kings Cnty. Oct. 17, 2011); *Smith v. General Accident Ins. Co.*, 91 N.Y.2d 648,

697 N.E.2d 168, 674 N.Y.S.2d 267 (1998); *New England*, 295 F.3d at 241. Moreover, one

United States District Court has recognized that the Court of Appeals' decision in *Bi-Economy*

*Market* "certainly [] changed the [legal] landscape" with respect to extra-contractual damages.

*Chernish v. Mass. Mut. Life Ins. Co.*, No. 5:08-CV-0957, 2009 WL 385418, at *4 (N.D.N.Y.

Feb. 10, 2009) (rejecting insurance company's argument that plaintiff could not separately plead

a claim for breach of covenant of good faith and fair dealing where the conduct arises out of the

administration of a contract of insurance).

njdocs-57971.7

Where an insurance company has breached the covenant of good faith and fair dealing, and has acted in bad faith with respect to its policyholder, New York has recognized a claim for extra-contractual damages, which can be maintained together with a separate claim for contractual damages for breach of contract. *See Bi-Economy Mkt.*, 10 N.Y.3d at 191-92, 886 N.E.2d at 129, 856 N.Y.S.2d at 507; *see also Chernish*, 2009 WL 385418 at *4 n.13 ("In any event, *Bi-Economy Market* upheld separate causes of action 'for bad faith claims handling, … and breach of contract."). Accordingly, "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance context, so long as the damages were 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting . . . ."" *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203, 886 N.E.2d 135, 137, 856 N.Y.S.2d 513, 515 (2008).

Here, the City of Peekskill is entitled to defense and indemnity in connection with the Underlying Action. The Third-Party Defendants' refusal to contribute toward a reasonable settlement of the Underlying Action exposes the City of Peekskill to the possibility of increased liability. *Id.* To paraphrase the Court of Appeals in *Bi-Economy Market*, "the very purpose of [general liability policies] would have made [each insurance company] aware that if it breached its obligations under the contract to investigate in good faith and pay covered claims it would have to respond in damages to [the City of Peekskill] for [the increased costs and liabilities of the City of Peekskill in excess of the policy limit]." 10 N.Y. 3d at 195, 886 N.E.2d at 132, 856 N.Y.S.2d at 510; *Chernish*, 2009 WL 385418, at *4. These costs are a foreseeable result of the Third-Party Defendants' bad faith breach of their policies, and as such, the City of Peekskill properly alleged in its First Amended Complaint that the Third-Party Defendants' egregious disregard of their obligations under the policies and the City of Peekskill's interests require the

10

imposition of consequential damages.   Pudell Affidavit, Ex. B ¶¶ 225, 226; Pudell Affidavit, Ex.
C ¶¶ 225, 226.[9]

        The City of Peekskill's claim for breach of the covenant of good faith and fair

dealing is not duplicative of its breach of contract claim, since the City of Peekskill's First

Amended Complaint alleges more than just denial of coverage by the Third-Party Defendants in

breach of the Third-Party Defendants' Policies.   *See O.K. Petroleum Distribution Corp. v.*

*Travelers Indem. Co.*, No. 09 Civ. 10273, 2010 WL 2813804, at \*4 (S.D.N.Y. July 15, 2010).

The Third-Party Defendants' denial of coverage was not only improper, but also unreasonable.

The Third-Party Defendants failed to investigate and settle the Underlying Action in a timely and

fair manner.   Pudell Affidavit, Ex. B ¶ 225; Pudell Affidavit, Ex. C ¶ 225.   Instead, the City

believes that the Third-Party Defendants denied the City of Peekskill coverage based on the size

and type of claim, as well as other external considerations.   *Id.*   The Third-Party Defendants also

misrepresented the Third-Party Defendants' Policies' provisions, coverages, and exclusions.   *Id.*

In doing so, the Third-Party Defendants deliberately or recklessly failed to place the City of

Peekskill's interests on equal footing with its own interests at the expense of the City of

Peekskill's exposure to potential liabilities in excess of the limits of the primary (and possibly

umbrella) policies.   *Id.*   Accordingly, the City of Peekskill has sufficiently alleged that the Third-

Party Defendants breached the covenant of good faith that is separate and distinct from the

Third-Party Defendants' breach of the Third-Party Defendants' Policies.   *O.K. Petroleum*, 2010

WL 2813804 at \*4.

---

[9]     Additionally, the City's claim for attorneys' fees in bringing this action may constitute consequential damages flowing from the Third-Party Defendants' bad faith breach of the Policy.   *See Quick Response Commercial Div., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 1:09-cv-00651, 2009 WL 3334600, at \*2 (N.D.N.Y. Oct. 14, 2009) (J. Sharpe); *Chernish*, 2009 WL 385418, at \*5.

njdocs-57971.7

At the very least, a determination as to whether the City of Peekskill's claim for breach of good and fair dealing is duplicative of their breach of contract claim is premature at this stage of the proceedings. *See Quick Response*, 2009 WL 3334600, at *1 (denying insurance company's motion to dismiss claim for breach of covenant of good faith and fair dealing where proceeding was still in its pleading stages). Nevertheless, even if the Court determines that the City of Peekskill's claim for breach of the covenant of good faith and fair dealing should not constitute a separate cause of action, because the City of Peekskill has demonstrated that its allegations sufficiently state that the Third-Party Defendants breached this duty by acting in bad faith, such allegations should be maintained, as should its claim for consequential damages, and should be incorporated into its breach of contract claim. *See, e.g., Handy & Harman v. Am. Int'l Grp., Inc.*, No. 0115666/2007, 2008 WL 3999964 (N.Y. Sup. Ct. New York Cnty. Aug. 25, 2008); *see also Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876, 2011 WL 743568, at *4 (E.D.N.Y. Feb. 24, 2011); *Chaffee v. Farmers New Century Ins. Co.*, No. 5:04-CV-1493, 2008 WL 4426620, at *5 (N.D.N.Y. Sept. 24, 2008). Accordingly, the City of Peekskill has sufficiently alleged under New York law that the Third-Party Defendants breached the implied covenant of good faith, and its claim should not be dismissed.

## III. THE LONDON GROUP'S STEALTH MOTION ON THE DUTY TO DEFEND AND THE APPLICATION OF DEDUCTIBLES SHOULD BE REJECTED

### A. The London Group's Attempt To "Back Door" – Without Receiving Permission From The Court – Their Motions On The Duty To Defend And The "Number Of Deductibles" Issue Should Be Rejected.

After ad-hominem attacks accusing the City of "improper" conduct and a failure to "disclose" its intention to add several additional facts to the City's yet unanswered complaint, the London Group, without any explanation, attempts to have this Court potentially rule on the "duty to defend" and "number of deductibles." The London Group did not request a pre-motion

conference to make this motion as required by the Individual Rules of Practice of this Court. Rule II.A. The London Group did not request consent of the City of Peekskill to seek such permission from the Court. Rather, in an exhibition of a "nothing to lose" attitude, the London Group invites, although it does not specifically request, the Court to decide now on the meaning of various London and United National Insurance Company policies. The London Group further requests, again without any pre-notice as required by the Court, to have the Court consider the issue of how many deductibles the City of Peekskill is required to pay before the City gets any benefit from the insurance policies the City purchased. The London Group would have the Court order the City to pay multiple, aggregated deductibles – reaching almost $1,000,000 dollars – before the City of Peekskill would be entitled to "Dollar One" of insurance. In essence, the London Group would have their insurance policies be re-written to have a $1,000,000 deductible, leaving the City of Peekskill "bare" or "uninsured" except for the largest of claims.   While these issues are contested and the City of Peekskill will respond to an appropriate motion at the proper time, because the London Group has not met the pre-requisites to even make this motion, its motion should be denied.

> **B.**      **The London Group's Position that They Have No Obligations to the City of Peekskill Under the Policy Until the Underlying Cases are Completely Over is Untenable**

The London Group, without proper notice or adherence to the Court's rules, argues that because their insurance policies only provide for the duty to indemnify the City of Peekskill, "the City's allegations that [the London Group] purportedly failed to defend, reimburse defense costs, investigate or settle the underlying lawsuits is entirely unfounded and its breach of good faith claim should be dismissed." London Group Brief, at p. 14. This argument is not properly before the Court. Nonetheless, despite the London Group's convenient mischaracterization of its policies, the London Group has a duty to advance defense costs to the

13

City of Peekskill as such costs come due.  In fact, the London Group's failure to contemporaneously reimburse the City for these costs serves as one of the bases for the City's claims for breach of contract and breach of the duty of good faith and fair dealing.

In their primary policies, The London Group promises to "indemnify" the City of Peekskill for "all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the name Assured under contract or agreement for . . . 'Ultimate Net Loss' on account of personal injuries . . . arising out of any occurrence happening during the period of insurance."  The London Group policies define "Personal Injuries" as "Bodily Injury, Mental Injury, Mental Anguish . . . False Arrest, False Imprisonment, Detention, Malicious Prosecution . . . Humiliation  . . . Violation of Civil Rights."  Further, the London Group primary policies define "Occurrence" as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury."  Under the policies, "Ultimate Net Loss" means "the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims . . . [including] expenses for . . . lawyers."

It is undisputed that Deskovic has sought from the City of Peekskill damages for "Personal Injuries" as defined in the London Group primary policies.  It cannot be disputed that such "Personal Injuries" were caused by "an accident" or "an event" or "happening" meeting the definition of "occurrence" under the policies.  As such, the London Group has a duty to the City of Peekskill to reimburse the city for "the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims . . . [including] expenses for . . . lawyers."  Interpreting language similar to that in the London Group policies for amounts a policyholder "becomes obligated to pay," New York courts have held that the duty to reimburse defense costs requires contemporaneous advances of legal expenses.  *National Union Fire Ins.*

14

*Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.*, 157 A.D.2d 293, 295-96, 299, 556 N.Y.S.2d

549, 551, 553 (1st Dep't 1990) (Insurance policy required insurance company to reimburse "any

amount which the Insureds are legally obligated to pay for a claim . . . includ[ing] . . . expenses

incurred in the defense of actions."); *Federal Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 35, 792

N.Y.S.2d 397, 398-99 (1st Dep't 2005) (Insurance policy required insurance company to

reimburse "the total amount which any Insured Person becomes legally obligated to pay on

account of each Claim . . . including, but not limited to, . . . Defense Costs."). "The duty to pay

'arises at the time the insured becomes legally obligated to pay.'" *Kozlowski*, 18 A.D.3d at 42,

792 N.Y.S.2d at 403 (internal quotation marks omitted) (citing *Little v. MGIC Indem. Corp.*, 836

F.2d 789, 793 (3d Cir. 1987); *see also Ambassador Group*, 157 A.D.2d at 299, 556 N.Y.S.2d at

553 (*citing Okada v. MGIC Indemnity Corp.*, 823 F.2d 276 (9th Cir. 1987) and *Gon v. First State

Ins.*, 871 F.2d 863 (9th Cir. 1989)). Because "an insured becomes legally obligated to pay legal

expenses as soon as the services are rendered, the insurer [is] required to pay defense expenses as

incurred." *Kozlowski*, 18 A.D.3d at 42, 792 N.Y.S.2d at 403. Thus, based on the language of the

London Group policies, the London Group had (and continues to have) an obligation to

reimburse the City of Peekskill for defense costs as they come due. The London Group cannot,

therefore, hide behind the language of the London Group policies (that they alone drafted),

unfairly and unreasonably interpreting the language in the way that best fits their interests.

### C.   The London Group's Position that Would Aggregate the Amount of Deductibles to be Paid BEFORE Coverage is granted – While Not Before the Court – is Unfair

Without citing any authority, and without requesting the Court's permission to

address the issue, the London Group argues that the London Group's primary insurance policies

are not triggered until the City pays a "covered loss that exceeds the $50,000 SIR in each

Policy." London Group Brief, at p. 14. In the London Group's view, they have no obligation

15

under the London Group policies until after the Underlying Action is settled or litigated, and thus, an action for breach of the duty of good faith and fair dealing cannot be maintained until that time. *Id.* This argument suffers from two fatal flaws. First, as discussed above, the policies require payments to the City of Peekskill contemporaneously with the City's obligations to its defense attorneys. *Ambassador Group*, 157 A.D.2d at 299, 556 N.Y.S.2d at 553; *Kozlowski*, 18 A.D.3d at 42, 792 N.Y.S.2d at 403. As such, the failure of the London Group to make these contemporaneous payments serves as one of the bases for an action for breach of the duty of good faith and fair dealing.

Second, the Third-Party Defendants cannot be permitted to recast their policies, originally sold with $50,000 to $100,000 SIRs, to require an SIR of over $1,000,000 before delivering the benefits for which the City of Peekskill contracted and paid. Although higher deductibles will generally result in lower premiums, the Third-Party Defendants cannot argue that the City of Peekskill paid a premium commensurate with a $1,000,000 deductible. In advocating such an interpretation, the London Group seeks a windfall to the severe financial detriment of the City of Peekskill and its taxpayers. Although this issue is not ripe at this time, the City of Peekskill objects to the London Group's improper effort to stack sixteen years of deductibles before ever even paying the first dollar of reimbursement or indemnity to satisfy their obligations to their policyholder, the City of Peekskill.

## CONCLUSION

For the reasons set forth above, the various motions made by the Third-Party Defendants should be denied and the Third Count of the First Amended Complaint should be permitted to remain.

njdocs-57971.7

Dated:     May 4, 2012

By:     /s/ Steven J. Pudell
        **ANDERSON KILL & OLICK, P.C.**
        William G. Passannante
        Steven J. Pudell
        Vianny M. Pichardo
        1251 Avenue of the Americas
        New York, New York  10020
        Telephone:  (212) 278-1000
        **ATTORNEYS FOR THIRD-PARTY**
        **PLAINTIFF CITY OF PEEKSKILL**

njdocs-57971.7