# ANDERSON KILL & OLICK, P.C.

Attorneys and Counselors at Law

ONE GATEWAY CENTER, SUITE 1510 ■ NEWARK, NJ 07102
TELEPHONE: 973-642-5858 ■ FAX: 973-621-6361
www.andersonkill.com

Steven J. Pudell, Esq.
SPudell@andersonkill.com
973-642-5877

**MEMO ENDORSED**, 2012

By Facsimile (914) 390-4152

Hon. Kenneth M. Karas
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re:   Underlying Actions:
      *Deskovic v. City of Peekskill, et al.*, No. 07-CV-8150 (KMK)(GAY)
      *McGarr v. City of Peekskill, et al.*, No. 07-CV-9488 (KMK)(GAY)

      Third Party Actions:
      *City of Peekskill v. Westport Insurance Company, et al.*

Dear Judge Karas:

We represent Defendant and Third-Party Plaintiff City of Peekskill ("Peekskill" or the "City") in the above-referenced Third-Party Actions. On November 27, 2012, the City requested that a "Rule 26 conference be scheduled as soon as possible." The City further requested that if the Court was not inclined to order a conference at this time – that the Court allow limited discovery to proceed on the issue of which of the City's insurance policies are required to provide defense and indemnity to the City for the Deskovic and McGarr lawsuits. Notwithstanding the fact that the discovery sought by the City was direct and limited only to (i) 18 document requests and (ii) the right to notice limited depositions, the Insurance Companies have branded the discovery "burdensome", "improper"; violative of case law; violative of statute; harassing; and served to needlessly increase the cost of litigation.

New York, NY ■ Newark, NJ ■ Philadelphia, PA ■ Stamford, CT ■ Ventura, CA ■ Washington, DC

**Anderson Kill & Olick, P.C.**

Hon. Kenneth M. Karas
December 6, 2012
Page 2

The discovery sought is proper. The City merely wants to know what positions these Insurance Companies have taken with respect to "trigger" in other insurance coverage law suits or arbitrations regarding "Innocence Claims".[1] The Insurance Companies acknowledge that – even in this case – there is a difference of opinion amongst the Third Party Defendant Insurance Companies about which policies are triggered. Zurich, a third party defendant in this case (and who did not join in the Insurance Companies' December 4, 2012 letter to this Court), has taken a contrary position to all of the other Insurance Company defendants in this case. Zurich "agrees with the City, that, under New York law, multiple policy periods are potentially implicated by the allegations in the Underlying Action." Letter from Molly Horrigan of Zurich to Steven J. Pudell, dated March 20, 2012. The Insurance Companies attempt to explain away the significance of Zurich's interpretation of the insurance policy language (which varies policy to policy) by stating that the difference of opinion is "likely the result of contrasting interpretations of law rather than policy language." To the extent that the City understands the argument, the City believes that it is the policy language itself that is capable of multiple reasonable interpretations that has led to the two opposing camps, the City and Zurich versus the rest of the Insurance Companies. It is for that reason that the City is entitled to know what the Insurance Companies have told other courts about what the policy language means. It is quite likely that the other Insurance

---

[1] Although the City does not know how many "Innocence Claim" insurance coverage litigations in which the insurance companies have engaged, the City suspects that it is an ascertainable number and not overly-burdensome.

**Anderson Kill & Olick, P.C.**

Hon. Kenneth M. Karas
December 6, 2012
Page 3

Companies have agreed with Zurich – when those Insurance Companies were in the same situation that Zurich finds itself here.[2]

The Insurance Companies rely on Champion International Corporation v. Liberty Mutual Insurance Company, 128 F.R.D. 608 (S.D.N.Y) which recognized the relevance of discovery seeking possible prior inconsistent positions that the insurance companies have taken in other cases. Unlike in Champion International, here, the City has narrowly defined what it seeks – namely information regarding the Insurance Companies position on "trigger" in other "Innocence Claims." Additionally, the City has requested information regarding identification of other insurance coverage Innocence Claims, as well as positions that the Insurance Companies have taken with respect to "trigger" in these claims. The Court in Champion International hesitated to allow discovery on "similar claims" to proceed because the definition of "similar claims" was too vague and would entail a massive effort in searching for files of comparable claims. The City's request, however, is limited and targeted. In their letter, the Insurance Companies, in essence, argue that they are permitted interpret their policies differently,

---

[2] Zurich is not the first insurance company to break ranks with other insurance companies. In American Safety Casualty Ins. Co. v. City of Waukegan, No. 11-2775, 11-2789 and 11-2961 (7th Cir.), Scottsdale Insurance Company filed a brief disagreeing regarding "trigger" with not only with another insurance company defendant but its own trade association, the American Insurance Association ("AIA"). See Brief of Cross-Appellee Scottsdale Insurance Company in American Safety Casualty Ins. Co. v. City of Waukegan, No. 11-2775, 11-2789 and 11-2961 (7th Cir.) dated December 27, 2011 at 41-44. The AIA described itself in its amicus brief as a "leading national trade association representing approximately 300 property and casualty insurance companies." See Amicus Curiae Brief of the American Insurance Association in American Safety Casualty Ins. Co. v. City of Waukegan, No. 11-2775, 11-2789 and 11-2961 (7th Cir.), dated November 1, 2011 at 1-2.

**Anderson Kill & Olick, P.C.**

Hon. Kenneth M. Karas
December 6, 2012
Page 4

before different courts, based on circumstantial expediency. The Insurance Companies should not be allowed to do so. At very least, the Insurance Companies should not be permitted to hide that relevant information from the Court and from the City.

The Clerk of the Court is respectfully requested to docket this letter.

So Ordered.
12/10/12

Respectfully submitted,

Steven J. Pudell

cc:     (via email)
        Peter Meisels, Esq. (peter.meisels@wilsonelser.com)
        James Mitchell, Esq. (jmitchell@stillmanfriedman.com)
        Diane Houk, Esq. (dhouk@ecbalaw.com)
        Debra Greenberger, Esq. (dgreenberger@ecbalaw.com)
        Robert Delicate, Esq. (rdelicate@harwoodlloyd.com)
        Vince Gelardi, Esq. (vg@vincentgelardi.com)
        Nick Brustin, Esq. (nick@nsbcivilrights.com)
        Darcy Ibach (dibach@lbbslaw.com)
        Stephanie A. Nashban (nashban@lbbslaw.com)
        Patrick Walsh (pwalsh@hww-law.com)
        Bradley Klein (bklein@hww-law.com)
        Marianne May (Marianne.may@clydeco.us)
        David Dolendi (david.dolendi@sedgwicklaw.com)
        Jessika Moon (jessika.moon@sedgwicklaw.com)
        Catalina Sugayan (catalina.sugayan@sedgwicklaw.com)
        Thomas Martin (tmartin@putneylaw.com)
        Karen Dixon (karen.dixon@mbtlaw.com)
        Matthew B. Anderson (matthew.anderson@mendes.com)
        Michael Buckley (michael.buckley@rivkin.com)
        Anthony Gambardella (anthony.gambardella@rivkin.com)
        Janet Ford (jford@wff-law.com)
        Robert Kelly (rkelly@coughlinduffy.com)
        Christopher O'Leary (coleary@coughlinduffy.com)

No. 11-2775, 11-2789 and 11-2961

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

AMERICAN SAFETY CASUALTY INSURANCE COMPANY, ET AL.,
*Plaintiff/Counter-Defendant-Appellant;*

*and*

SCOTTSDALE INSURANCE COMPANY,
*Plaintiff/Counter-Defendant-Cross-Appellee*

*v.*

CITY OF WAUKEGAN,
*Defendant/Counter-Plaintiff-Appellee, Cross-Appellant*

*v.*

INTERSTATE INDEMNITY COMPANY,
*Counter-Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
NO. 07-CV-01990
THE HONORABLE VIRGINIA M. KENDALL

**BRIEF OF CROSS-APPELLEE SCOTTSDALE INSURANCE COMPANY**

THOMAS H. CROUCH
MEAGHER & GEER, P.L.L.P.
8800 North Gainey Center Drive, Suite 261
Scottsdale, AZ 85258
Telephone:  (480) 607-9719
Fax:        (480) 607-9780
E-Mail:     tcrouch@meagher.com
Attorneys for Cross-Appellee
Scottsdale Insurance Company

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF ISSUES .................................................................................... 1

STATEMENT OF THE CASE ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 5

    1. Scottsdale's Law Enforcement Liability Policies ........................................ 5

    2. The Dominguez lawsuit ................................................................................ 5

    3. The City's claims administrators and insurance brokers ............................. 6

    4. The City's notice to insurers other than Scottsdale ..................................... 6

    5. The City's notice to Scottsdale 28 months later .......................................... 7

    6. Scottsdale reserves rights and commences a declaratory action ................. 7

SUMMARY OF THE ARGUMENT ...................................................................... 8

ARGUMENT ......................................................................................................... 11

    I. The *de novo* standard of review applies. ................................................... 12

    II. The district court correctly ruled that the City's notice was late, thus relieving Scottsdale of any coverage obligations. ...................................... 12

        A. Under Illinois law, notice is a condition precedent to coverage, the breach of which relieves the insurer of its obligations. ..................... 12

        B. As a matter of law, the City's 28-month delay in notifying Scottsdale was a breach of the policy's notice condition. ................... 14

        C. Although a showing of prejudice is not required under Illinois law, Scottsdale was prejudiced where it received notice only a few days before the underlying suit went to trial. .......................................... 17

III.  The City's arguments on appeal are without merit. .............................. 20

   A. Estoppel has no application in this case and Scottsdale is therefore
      not precluded from asserting its late-notice defense. ..................... 20

      1. The City's own conduct in providing grossly late notice to
         Scottsdale renders the estoppel rule inapplicable. ................... 21

      2. *Ehlco* has no application here, because Scottsdale's duty to
         defend was not properly triggered and Scottsdale had no
         opportunity to defend. ............................................................. 22

      3. Scottsdale commenced its action within a reasonable time, and
         is therefore not estopped from asserting defenses. .................. 24

      4. The City's reliance on *Ehlco* is misplaced, because its facts are
         distinguishable. ........................................................................ 26

      5. The fundamental underpinnings for estoppel are not present
         here. .......................................................................................... 29

   B. The City did not present evidence creating a genuine issue as to
      whether Arthur J. Gallagher was Scottsdale's agent. ..................... 31

   C. The City's argument that summary judgment was premature is
      without merit. .................................................................................... 36

   D. The City's argument that its late notice was excusable is without
      merit. ................................................................................................. 38

IV. The district court correctly dismissed the City's Section 155 claim...... 40

V.  Scottsdale disagrees with the position taken by the *amicus* brief regarding
    the trigger of coverage under American Safety's and Interstate
    Indemnity's policies. ............................................................................... 41

CONCLUSION ................................................................................................. 44

CERTIFICATE OF COMPLIANCE WITH RULE 32 ................................. 45

CERTIFICATE OF SERVICE ....................................................................... 46

vexatious or unreasonable conduct by Scottsdale. Thus, the district court did not err in dismissing the Section 155 claim.

### V. Scottsdale disagrees with the position taken by the *amicus* brief regarding the trigger of coverage under American Safety's and Interstate Indemnity's policies.

The American Insurance Association filed an *amicus* brief, addressing only the issue of whether American Safety's and Interstate Indemnity's policies were triggered by Dominguez's exoneration. The *amicus* brief does not address the late-notice issue. Nevertheless, Scottsdale is compelled to briefly respond to the trigger arguments in the *amicus* brief. Scottsdale is so compelled because the *amicus* brief purports to provide an insurance industry perspective, Scottsdale is a member of that industry, and Scottsdale believes the *amicus* brief has incorrectly taken issue with the district court's decision.

The *amicus* brief states that the court incorrectly ruled that policies on the risk at the time of exoneration are triggered. (See *Amicus* Brief, p. 7, stating that the district court ruled that exoneration triggers coverage, "misapplying the applicable policy language") But the *amicus* brief has failed to take into account that the applicable language in American Safety's policy is not standardized language that is widely used in the insurance industry. Moreover, the relevant language in American Safety's policy is materially *unlike* the language that is commonly used in typical insurance policies.

41

The *amicus* brief fails to take into account that the only "trigger" language contained in American Safety's policy *as respects law enforcement coverage* is set forth in a clause entitled "policy period." That provision states: "We will pay only for loss that you [the City] sustain occurring during the policy period shown in the Declarations of this policy." (JA 645) This provision describes what event must occur during the policy period in order to trigger the policy's law enforcement coverage. Under this language, the law enforcement coverage is triggered by the City sustaining "loss" (i.e., becoming liable) during the policy period.

The judgment against the City was predicated on Dominguez's due process/malicious prosecution claim. The City was not subject to liability to Dominguez for due process/malicious prosecution until that cause of action accrued. Prior to accrual, the City could not be liable to Dominguez, and therefore could not be said to have "sustained loss" within the meaning of American Safety's "policy period" provision quoted above. It is quite apparent, under Supreme Court and Seventh Circuit authority, that the cause of action for due process/malicious prosecution accrued when Dominguez was exonerated. That occurred in 2002, during American Safety's policy. Thus, the City sustained loss during American Safety's policy. Consequently, its law enforcement liability coverage was triggered, along with Interstate Indemnity's form-following excess policy.

The *amicus* brief, however, misunderstands the exact policy language at issue. Its brief states that American Safety's package policy includes several coverage parts, "including specified coverage for 'Personal Injury' <u>during the policy period</u> only if it is 'caused by an offense in the course of your 'Law Enforcement Activity'." (*Amicus* Brief p. 3 [emphasis added]) This description of American Safety's policy is simply wrong. The policy's insuring agreement for law enforcement liability coverage <u>does not</u> state that the policy applies to "personal injury <u>during the policy</u>." The *amicus* brief has added the "during the policy" words, where they simply do not exist. (*See* JA 620)

A painstaking review of American Safety's policy will not reveal any language that restricts law enforcement liability coverage to "personal injury during the policy period." Nor will one find any language restricting law enforcement coverage to "offenses committed during the policy period." As noted above, when it comes to law enforcement coverage, the only triggering language is contained in the provision entitled "policy period". And that provision simply requires that the insured – the City of Waukegan – sustain "loss" occurring during the policy period. Here, the City sustained loss when the cause of action upon which the judgment was based – the cause of action for due process/malicious prosecution – accrued. That cause of action accrued upon Dominguez's exoneration in 2002, which was during American Safety's policy.

In short, Scottsdale respectfully submits that the *amicus* brief is mistaken when it contends that the trigger issue has a wide-ranging impact on the insurance community. That would only be true if the policy language at issue were standard language that is found in widely-used insurance policies. But in fact, the relevant policy language at issue here is atypical, and does not readily compare to the language of standardized policies used in the insurance industry. Thus, in the end, this case does not really warrant *amicus* involvement at all. Nor will affirming the district court's decision on the trigger issue have any wide-spread impact on how other, more typical policies are interpreted and applied.

## CONCLUSION

Scottsdale Insurance Company respectfully asks this court to affirm the judgment in its favor.

Respectfully submitted,


/s/ Thomas H. Crouch

THOMAS H. CROUCH #020134
MEAGHER & GEER, P.L.L.P.
8800 North Gainey Center Drive, Suite 261
Scottsdale, AZ 85258
Telephone:   (480) 607-9719
Fax:         (480) 607-9780
E-Mail:      tcrouch@meagher.com

*Attorneys for Cross-Appellant Scottsdale Insurance Company*

44

Nos. 11-2775, 11-2780 and 11-2961

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

AMERICAN SAFETY CASUALTY INSURANCE COMPANY, ET AL.,
*Plaintiff & Counter-Defendant-Appellant,*

v.

CITY OF WAUKEGAN,
*Defendant & Counter-Plaintiff-Appellee*

On Appeal From the United States District Court
for the Northern District of Illinois, No. 07-cv-01990
The Honorable Virginia M. Kendall

## AMICUS CURIAE BRIEF OF THE
## AMERICAN INSURANCE ASSOCIATION

**Submitted in Support of Appellants American Safety Casualty
Insurance Company and Interstate Indemnity Company and Reversal**

Laura A. Foggan
Benjamin C. Eggert
**WILEY REIN LLP**
1776 K Street, N.W.
Washington, DC 20006
TEL: 202.719.7000
FAX: 202.719.7049

*Attorneys for Amicus Curiae
American Insurance
Association*

November 1, 2011

## INTEREST OF THE AMICUS CURIAE AND AUTHORITY TO FILE

The American Insurance Association ("AIA") is a leading national trade association representing approximately 300 property and casualty insurance companies that write a major share of property and casualty insurance, including public entity, public official and law enforcement liability policies, throughout the United States and in Illinois. AIA members collectively underwrite more than $117 billion in premiums each year. AIA members, including companies based in Illinois and many other states, range in size from small companies to the largest insurers with global operations. On issues of importance to the property and casualty insurance industry and marketplace, AIA advocates sound and progressive public policies on behalf of its members in legislative and regulatory forums at the federal and state levels and files *amicus curiae* briefs in significant cases before federal and state courts. AIA members have a strong interest in the public entity and official insurance marketplace and, therefore, in the issues presented in this case. This case presents an issue of substantial importance on which Illinois law is unsettled: whether coverage under policies

providing coverage for wrongful prosecution claims is triggered by the wrongfully accused's exoneration.[1]

## STATEMENT OF THE ISSUE

Whether the remedy of a criminal exoneration triggers coverage under a policy extending coverage for wrongful prosecution, where the accused's arrest, prosecution and conviction took place more than a decade earlier?

## STATEMENT OF THE CASE

This insurance coverage action is a civil appeal from a final judgment of the United States District Court for the Northern District of Illinois granting summary judgment in favor of Appellee City of Waukegan, and against two of its insurers, Appellants American Safety Casualty Insurance Company ("ASCIC") and Interstate Indemnity Company ("Interstate").

ASCIC brought a declaratory judgment action against the City of Waukegan, which asserted counterclaims against ASCIC and cross-claims against a number of other insurers, including Interstate. On March 3, 2011, the district court issued a Memorandum Order that granted summary judgment against ASCIC, and granted in part and denied in part a motion for

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), AIA states that (1) no party counsel authored this brief in whole or in part; (2) no party or party counsel contributed money intended to fund preparing or submitting this brief; and (3) no other person besides AIA, its members, or its counsel contributed money intended to fund preparing or submitting this brief.

2