# ANDERSON KILL & OLICK, P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

MEMO ENDORSED



Stefano V. Calogero, Esq.
spudell@andersonkill.com
973-642-5877

By FEDEX and Fax 914-390-4152                             April 9, 2013

Hon. Kenneth M. Karas, U.S.D.J.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

    Re:  *Deskovic v. City of Peekskill, et al.*, No. 07-CV-8150 (KMK)(GAY) ("*Deskovic*")
           *McGarr v. City of Peekskill, et al.*, No. 07-CV-9488 (KMK)(GAY) ("*McGarr*")

Dear Judge Karas:

    The City of Peekskill (the "City") responds to the March 25, 2013 pre-motion letter of the Insurance Companies (except Zurich American Insurance Company) as follows.

## Introduction

    The Insurance Companies believe that the City, having purchased millions of dollars of non-expiring insurance coverage, is entitled to only a fraction of that coverage. The Court must decide which insurance policies are triggered by the Plaintiffs' allegations. However, before the Court can address that question, the Insurance Companies should "come clean" and provide basic, rudimentary but targeted discovery to the City.

## Mr. Deskovic's Allegations of Injury

    Jeffrey Deskovic was arrested on January 25, 1990, indicted on February 27, 1990, and the jury returned a guilty verdict on December 7, 1990. In the Insurance Companies' brief recitation of facts, Deskovic's story abruptly ends in 1990. The Insurance Companies are well aware, however, that the story continues for another 16 years. On January 18, 1991, the judgment of conviction was entered and Deskovic was sentenced to fifteen years in prison. Mr. Deskovic unsuccessfully filed various appeals and petitions until his exoneration in 2006, when DNA found at the scene was matched to another inmate who ultimately confessed to the crime for which Mr. Deskovic was convicted. Mr. Deskovic seeks damages for the injuries he suffered each and every year from 1990 through 2006, as a result of the City's acts and omissions.

    Mr. Deskovic alleges that the City "affirmatively concealed or otherwise failed to come forward with the exculpatory evidence" during his <u>entire</u> incarceration. Mr.

Hon. Kenneth M. Karas
April 9, 2013
Page 2

Deskovic alleges that, during the entirety of his incarceration, the City knew the "truth about their unconstitutional misconduct" and "failed to come forward." Mr. Deskovic alleges that "in each and every year of the 16 years of wrongful imprisonment[,]" the City "breached their legal and constitutional duties to disclose certain exculpatory evidence and impeachment facts." The Complaint (¶169) alleges that in every year from 1990 to 2006 Mr. Deskovic was "falsely detained," "falsely imprisoned," "embarrassed," and "humiliated," and suffered "mental and emotion distress," "violations of his constitutional rights," "personal injuries," "physical injuries" and "loss of liberty." The Insurance Companies – with the exception of Zurich – contend that all of this happened in 1990. Of course, in reality, it did not. Mr. Deskovic claims that these injuries occurred again and again from 1990 through his release in 2006. Moreover, Count III of the Complaint, which could stand alone, alleges only post-conviction conduct.

## The Insurance Policies

While the insurance policies are not all identical, they all generally cover damages for "Personal Injury." Westport Insurance Company defines "Personal Injury" as "false arrest ... false imprisonment, malicious prosecution, slander, defamation of character, violation of civil rights." London defines "Personal Injury" similarly, but adds, amongst other things, "bodily injury," "mental injury," "mental anguish," "shock," and "humiliation." Harco Insurance Company ("Harco") defines "Personal Injury" as "violations of Civil rights, including . . . the Federal Civil Rights Acts and similar laws." The Insurance Companies believe that the only actions that can trigger coverage occurred in 1990 (and thus trigger only the 1990 year of coverage) and that Deskovic's post-1990 allegations of misconduct do not count. In fact, the insurance policies provide for such coverage. For example, Harco promised to provide coverage to the City if the City became liable to "pay as Damages because of Wrongful Acts during the Policy Period." A "Wrongful Act" is "any actual or alleged act, error or omission, neglect or breach of duty . . . by the Insured while conducting Law Enforcement Activities that results in Personal Injury." "Personal Injury" is "false arrest, detention or imprisonment, or malicious prosecution" or "violation of the Federal Civil Rights Act and similar laws." Mr. Deskovic's allegations fall squarely within Harco's coverage. Mr. Deskovic alleges that the City breached its duties by failing to come forward, for 16 years, with the "truth" and by violating Mr. Deskovic's civil rights during Harco's policy periods.

## The Applicable Law

New York courts already have recognized that all of the insurance policies from the time of arrest (here, 1990) through ultimate exoneration (here, 2006) may be triggered where there is a continuous injury such as false imprisonment. *National Cas. Ins. Co. v. City of Mount Vernon*, 128 A.D.2d 332, 336-38 (2d Dep't 1987) (holding an insurance company liable for defense and indemnity under a policy in effect at the end of underlying claimant's incarceration, despite that the imprisonment was continued

from the previous policy period and the "causative" event of his arrest pre-dated the policy). In other words, under *Mount Vernon*, multiple policies must respond for damages for the same type of underlying allegations at issue here, such as false imprisonment, civil rights violations, and post-conviction misconduct. *Mount Vernon*, 128 A.D.2d at 336; *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1203 (2d Cir. 1995) (noting that *Mount Vernon* "sensibly held that each day of incarceration was compensable and that the insurer was liable for the days falling within its policy period."). Similarly, in *North River v. Dutchess County*, 872 F. Supp. 1262 (S.D.N.Y. 1995), the North River policy was incepted after the underlying plaintiff was prosecuted and arrested. In denying North River's motion that its policy was not triggered, the court specifically held open the possibility of multiple or continuous triggers for these types of allegations, recognizing that New York courts view whether a "single date of occurrence can be assigned to a series of events or whether they continue as their consequences cause additional effects [as] a pragmatic one" (emphasis added) as a question that requires consideration of all relevant circumstances. *Id.* at 1263. Indeed, *Dutchess County* noted that certain post-arrest facts may lead to a trigger of coverage for policies that were in force after an arrest, i.e., when "post arrest facts may lead to alleged failure to release a prisoner" or whether the prisoner was improperly held even after a proper arrest and prosecution. *Id.* at 1264. In *Dutchess County*, these post-arrest facts were yet unknown. Here, post-arrest facts are known and exist in the Underlying Actions, and therefore call for multiple policies to provide coverage to the City.

## Discovery is Necessary

The Insurance Companies, in essence, argue that they are permitted to interpret their policies differently (to their own advantage), before different courts, based on circumstantial expediency. The Insurance Companies should not be allowed to do so. The City merely wants to know through discovery what positions these Insurance Companies have taken with respect to "trigger" in other insurance coverage lawsuits or arbitrations regarding "Innocence Claims." The Insurance Companies acknowledge that – even in this case – they disagree about which policies are triggered. Zurich (who did not join in the March 25, 2013 letter to this Court), "agrees with the City, that, under New York law, multiple policy periods are potentially implicated by the allegations in the Underlying Action." Letter from M. Horrigan of Zurich to S. Pudell, dated March 20, 2012. The City is entitled to know what the Insurance Companies have told other courts the policy language means. Other Insurance Companies may have agreed with Zurich when those Insurance Companies were in the same situation in which Zurich finds itself here. If an insurance policy, or provision of an insurance policy, is subject to multiple reasonable interpretations, the Court would interpret such provisions in favor of coverage. An insurance company's statement as to the meaning of its policy language or whether such language has a special meaning by "course of dealing," "in the industry" or through "industry practice" is relevant and discoverable.

Hon. Kenneth M. Karas
April 9, 2013
Page 4

>The Clerk of the Court
>is respectfully requested
>to docket this letter.
>
>So Ordered.
>
>[signature]
>4/17/13

Respectfully,

*Steven J. Pudell (AMP)*

Steven J. Pudell
William G. Passannante

cc: James Mitchell (jmitchell@stillmanfriedman.com) (by email)
Diane Houk (dhouk@ecbalaw.com) (by email)
Debra Greenberger (dgreenberger@ecbalaw.com) (by email)
Robert Delicate (rdelicate@harwoodlloyd.com) (by email)
Vince Gelardi (vg@vincentgelardi.com) (by email)
Nick Brustin (nick@nsbcivilrights.com) (by email)
Darcy Ibach (dibach@lbbslaw.com) (by email)
Stephanie A. Nashban (nashban@lbbslaw.com) (by email)
Patrick Walsh (pwalsh@hww-law.com) (by email)
Bradley Klein (bklein@hww-law.com) (by email)
Marianne May (Marianne.may@clydeco.us) (by email)
David Dolendi (david.dolendi@sedgwicklaw.com) (by email)
Jessika Moon (jessika.moon@sedgwicklaw.com) (by email)
Catalina Sugayan (catalina.sugayan@sedgwicklaw.com) (by email)
Thomas Martin (tmartin@putneylaw.com) (by email)
Karen Dixon (karen.dixon@mbtlaw.com) (by email)
Matthew B. Anderson (matthew.anderson@mendes.com) (by email)
Michael Buckley (michael.buckley@rivkin.com) (by email)
Janet Ford (jford@wff-law.com) (by email)
Robert Kelly (rkelly@coughlinduffy.com) (by email)
Christopher Dean O'Leary (coleary@coughlinduffy.com) (by email)

The Clerk of the Court
is respectfully requested
to docket this letter.

So Ordered.