UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY DESKOVIC

Plaintiff,

-against-

CITY OF PEEKSKILL, PUTNAM
COUNTY, WESTCHESTER COUNTY,
DAVID LEVINE, THOMAS MCINTYRE,
WALTER BROVARSKI, EUGENE
TUMOLO, JOHN AND JANE DOE
SUPERVISORS, DANIEL STEPHENS,
LOUIS ROH, MILLARD HYLAND, PETER
INSERO, and LEGAL AID  SOCIETY OF
WESTCHESTER COUNTY

Defendants.

No. 7:07-cv-8150 (KMK) (GAY)

**ECF Case**

---

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS DANIEL STEPHENS' AND PUTNAM COUNTY'S
## MOTION IN LIMINE

---

HARWOOD LLOYD, LLC
350 5th Avenue, 59th Floor, Empire
State Building
New York, New York 10118
(201)-359-3530
*Attorneys for Defendants Daniel
Stephens and Putnam County*

STEPHEN WELLINGHORST
Of Counsel and On the Brief

2751691_1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................... 1

STATEMENT OF FACTS ...................................................................... 3

ARGUMENT ................................................................................ 7

I.   DEFENDANTS DANIEL STEPHENS AND THE COUNTY OF PUTNAM
     SHOULD BE PERMITTED TO SETOFF ALL PRIOR SETTLEMENTS
     AGAINST ANY POTENTIAL RECOVERY BY THE PLAINTIFF PURSUANT
     TO THE EQUITABLE SHARES OF ALL THE RELEASED TORTFEASORS'
     COMPARATIVE LIABILITY FOUND AT TRIAL .................................... 7

     a.   Plaintiff asserts and pleads a single indivisible injury .............................. 7

     b.   Defendants Daniel Stephens and the County of Putnam are entitled to setoffs
          pursuant to New York General Obligations Law § 15-108 ........................ 9

     c.   Even if New York General Obligations Law § 15-108 was inapplicable,
          Defendants Daniel Stephens and the County of Putnam are still entitled to setoffs
          under the federal proportionate share rule ……………………………….... 10

     d.   Since Defendants Daniel Stephens and the County of Putnam are entitled to set
          off relief, they should be permitted to present evidence as to the liability of the
          settling tortfeasors at trial so that a credit can be calculated properly ……….. 11

II.  THE ISSUE OF PUNITIVE DAMAGES SHOULD BE BIFURCATED ................ 12

III. ANY EVIDENCE OR TESTIMONY   RELATING TO ANY ASSAULT OR
     INJURIES SUFFERED BY THE PLAINTIFF WHILE IN PRISON SHOULD BE
     BARRED ……………………………………………………………… 13

IV.  PLAINTIFF MUST NOT BE PERMITTED TO SUGGEST THAT DANIEL
     STEPHENS LOST OR DESTROYED THE POLYGRAPH RESULTS AND
     MATERIALS ……………………………………………………………… 15

CONCLUSION ……………………………………………………..… 16

i

**TABLE OF AUTHORITIES**

**Cases**

Banks ex rel. Banks v. Yokemick, 177 F.Supp.2d 239 (S.D.N.Y. 2001) ……………..…… 10-12

Black v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107 (2d Cir. 2004) ………. 14

D'Elia v. 58-35 Utopia Parkway Corp.,843 N.Y.S.2d 339  (2d. Dept. 2007) …………….. 9

Dobson v. Camden, 725 F.2d 1003 (5th  Cir. 1984) …………………………....………. 7, 11

Gierlinger v. Gleason, 160 F.3d 858 (2d Cir. 1998) …………………………………….. 14

Gonzalez v. Rakkas, No. 93-CV-3229 (JS), 1995 U.S. Dist. LEXIS 22343
(E.D.N.Y. July 25, 1995) .........................................…………………………………….  13

Gravatt v. City of New York, 73 F.Supp.2d 438, 441 (S.D.N.Y. 1999) ............................  11, 12

Hernandez v. Wells, No. 01-CV-4376, 2003 WL 22771982 (S.D.N.Y. Nov. 24, 2003) …. 14

Hibma v. Odegaard, 769 F.2d 1147 (7th Cir.  1985) …………………………………….  15

Hidalgo v. Kikendall, No. 08-CV-7536, 2009 WL 2176334 (S.D.N.Y. July 22, 2009) ….. 14

Higazy v. Templeton, 505 F.3d 161 (2d Cir. 2007) ………………………………………... 14

In re Sept. 11 Litig., 280 F.Supp. 2d 279 (S.D.N.Y. 2003) …………………………….. 15

Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) ………………………………. 14

Kush v. City of Buffalo, 449 N.E.2d 725 (N.Y. 1983) …………………………………….. 15

Lockard v. Missouri Pacific R. Co., 894 F.2d 299  (8th. Cir 1990) ……………………… 8

Martinez v. California, 444 U.S. 277 (1980) …………………………………………….. 15

Mason v. City of New York, 949 F.Supp. 1068 (S.D.N.Y 1996) ……………….................  7, 9

Mazyck v. Long Island R. Co. (LIRR), 896 F.Supp. 1330 (E.D.N.Y. 1995) ……………. 8, 9

Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276 (2d Cir. 1996) …………………………. 11

Roma v. Buffalo Gen. Hosp., 481 N.Y.S.2d 811 (3d Dep't 1984) ………………………… 7

ii

Sanchez v. State, 784 N.E.2d 675, 678 (N.Y. 2002) ……………………………………….. 15

Simpson v. Pitts. Corning Corp., 901 F.2d 277 (2d Cir. 1990) ………………………….. 12

Slater v Mersereau, 64 N.Y. 138  (1876) ………………………………………………… 9

Smith v. Lighting Bolt Prods., Inc., 861 F.2d 363 (2d Cir. 1988) ………………………... 12, 13

Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999) ……………………………… 14

United States v. Alcan Alum. Corp., 990 F.2d 711 (2d Cir. 1993) ………………………. 7

Vasbinder v. Ambach, 926 F.2d 1333 (2d Cir. 1991) ……………………………............. 12, 13

Warner v. Orange County Dep't of Probation, 115 F.3d 1068  (2d Cir. 1997) …………... 14

Williams v. Smith, No. 02-CV-4558, 2009 WL 2431948 (S.D.N.Y. Aug. 10, 2009) ……. 14

Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) ………………………………………… 14

**Statutes**

New York General Obligations Law § 15-108 ……………………………….. 1, 9-11

42. U.S.C. §1983 ……………………………………………………… 2, 6-7, 9-11, 13-15

**Rules**

Federal Rule of Civil Procedure 42(b) ……………………………………… 12

Federal Rule of Evidence 402 ……………………………………………… 13, 15

Federal Rule of Evidence 403 ……………………………………………… 14-16

**Treatise**

Restatement (Second) of Torts §433A (1965) ………………………………… 8, 14

## PRELIMINARY STATEMENT

Defendants Daniel Stephens ("Stephens") and the County of Putnam ("Putnam") respectfully submit this memorandum of law in support of their motion *in limine*.

Stephens and Putnam must be permitted to defend this action by apportioning the fault of the settling parties because plaintiff suffered one indivisible injury and they are entitled to setoffs for any liability attributed to the settling parties. Such a finding is imperative because a determination by the Court at this time will define how this matter will be tried and will assist counsel in preparing evidence for trial. Stephens and Putnam must be permitted to apportion liability to all the settling and non-settling defendants and credit prior settlements because they all contributed to the single indivisible injury: plaintiff's sixteen years of incarceration and associated damages.

Regardless of whether the court applies the state setoff law under <u>N.Y. G.O.L.</u> § 15-108 or the proportionate share rule under federal law, and the Second Circuit has approved both, Stephens and Putnam are entitled to credit the prior settlements against any potential recovery by the plaintiff pursuant to the equitable shares of the released tortfeasors' comparative fault found at trial, because the same injury is at issue. Here, the plaintiff brought civil rights claims collectively against the Peekskill Defendants, Westchester Legal Aid, the medical examiner, Stephens, and Putnam alleging the same injury:  the sixteen year incarceration of the plaintiff for a rape and murder he did not commit.

Further, Stephens respectfully requests a bifurcation of plaintiff's punitive claim from the rest of his underlying actions. A bifurcated trial is necessary for plaintiff's punitive damages claim because Stephens' wealth should not be used by the plaintiff to induce the jury to find malice on the part of Stephens, thereby entitling the plaintiff to punitive damages. Without a

1

bifurcated trial, the jury would be inherently prejudiced by simultaneously receiving evidence relative to the underlying cause of action and the demand for punitive damages. As such, the bifurcated trial procedure should be applied.

Additionally, the plaintiff must be barred from introducing any evidence related to any assaults or injuries suffered while in prison. To establish liability under §1983 for any attacks and injuries suffered in prison, a named defendant would have to be found personally involved. Further, the named defendants would have to be a proximate cause of any attacks or injuries suffered by the plaintiff in prison. "But for" causation is not sufficient if a superseding act breaks the chain of causation. An intentional or criminal act is the type of superseding cause that severs the liability of the original tortfeasor. Furthermore, unless the superseding intentional act was reasonably foreseeable, intentional misconduct will sever the chain of causation.

Accordingly, any assault or injury suffered at the hands of a prison guard or inmate would be an intentional or criminal act that was not reasonably foreseeable  and which severs the chain of causation related to any of the named defendants. As such, no joint and several liability can apply and any evidence or testimony related to the same should be barred at trial.

Finally, plaintiff must also be barred from suggesting that Stephens lost or destroyed any documents or materials related to the polygraph results. Stephens turned all of his documents over to the proper authorities and those same documents were marked as exhibits during the underlying suppression hearing. Any destruction of evidence, loss of materials, or any other mishandling of documents occurred after Stephens had turned everything over to the prosecutor's office. As such, pursuant to the Federal Rules of Evidence, Plaintiff must not be permitted to attempt to blame Stephens for the disappearance of any polygraph results or materials at trial.

## STATEMENT OF FACTS

The facts of this case have been summarized by the court on at least three prior occasions. (Aug. 2009; No. 238; No. 505.)[1] For the purposes of this motion *in limine*, Defendants Daniel Stephens ("Stephens") and the County of Putnam ("Putnam") will rely upon those previous statements of facts summarized below.

A fifteen-year-old classmate of plaintiff, A.C., was raped and murdered on November 15, 1989. (No. 505, p. 2.) At the time of A.C.'s death, plaintiff was a sixteen-year-old Peekskill High School sophomore. (Aug. 2009, p. 2.) Two weeks later, Peekskill police began focusing their investigation on the plaintiff, as he seemed "extremely distraught" at A.C.'s wake and funeral, and "appeared to have become infatuated" with A.C. (No. 505, p. 2.) On December 12, 1989 officers of the Peekskill Police Department, David Levine and Thomas McIntyre, approached plaintiff as he walked to school, and asked him to come to the police station and speak about A.C. (No. 238, p. 4.) Plaintiff agreed and was brought to the police station by the officers where he was subsequently questioned without the presence of his mother or counsel. (Id.) At this meeting, the Peekskill officers allegedly showed the plaintiff photographs of the deceased and of the crimes scenes, "sharing with him details of the crime and the investigation that had not been made public," including their theory that A.C. had been romantically involved with a classmate, Freddy Claxton. (Id. at 5.) Plaintiff denied any involvement. (Id.)

Following this interrogation, the plaintiff's mother learned of the investigation and made

---

[1] "**Aug. 2009**" references <u>Deskovic v. City of Peekskill</u>, No. 07-CV-8150, 2009 WL 2475001 (S.D.N.Y. Aug. 13, 2009); "**No. 238**" references Judge Karas' September 22, 2009 Opinion and Order (ECF Doc. No. 238); "**No. 505**" references Judge Karas' September 25, 2012 Opinion and Order (ECF Doc. No. 505); "**Med. Stip.**" references October 5, 2011 stipulation discontinuing with prejudice plaintiff's action against settling defendants Westchester County, Louis Roh, and Millard Hyland; "**Legal Stip.**" references December 14, 2010 stipulation discontinuing with prejudice plaintiff's actions against settling defendants The Legal Aid Society of Westchester County and Peter Insero; and "**Peekskill Stip.**" references September 18, 2013 stipulation discontinuing with prejudice plaintiff's actions against settling defendants City of Peekskill, David Levine, Thomas McIntyre, and Eugene Tumolo. The relevant excerpts of which are annexed to the Declaration of Stephen Wellinghorst.

3

it clear that she did not want the Peekskill officers to contact her son. (Id.) She also hired Lou Ecker to represent her son. (Id.) Ecker only represented the plaintiff for a short time, but he informed the Peekskill officers that the plaintiff should not be interrogated outside the presence of counsel. (Id.) Notwithstanding the clear prohibition of Ecker, Peekskill officers again contacted the plaintiff. (Id. at 6.) Despite initially stating that he should not speak to any officers outside the presence of counsel, the Peekskill officers encouraged the plaintiff to waive his right to counsel. (Id.)  Thereafter, the officers interrogated the Plaintiff on numerous occasions, again without the presence of plaintiff's mother or counsel. (Id.) During these interrogations, the officers provided the plaintiff with more non-public details and theories concerning A.C.'s death and allegedly "encouraged and coerced [plaintiff] to incorporate those details into his own statements of the crime." (Id.)

In mid-January 1990, and after multiple meetings with the plaintiff, the officers twice sought permission from the District Attorney's office to make an arrest, but were told their evidence was insufficient to support an arrest. (No. 505, p. 2.) Peekskill officers then met with the plaintiff and convinced him to take a polygraph exam. (Id.) On January 25, 1990, a school day, plaintiff arrived at the Peekskill police department at the officers' request. (Id. at 3.) Plaintiff's mother was not advised of this meeting, or of any polygraph exam, and counsel was not present. (Id.) Plaintiff's request to bring a friend to accompany him was quickly refused. (Id.) The Peekskill officers then drove the plaintiff to Daniel Stephens' polygraph office in Brewster, New York. (Id.)

The polygraph exam was roughly six to eight hours in length and the plaintiff was hooked up to the polygraph machine for the entire exam. (Id. at 4.) Stephens conducted the exam by employing the "Arther method" and, according to the plaintiff, questioned him in a hostile

4

and aggressive manner. (Id.) The Peekskill officers monitored the examination from an adjacent room. (Id.) No recording was made of the polygraph examination. Stephens made contemporaneous, handwritten notes during the exam, but those have never been produced. (Id. at 12.)Following the exam, Stephens reported that the plaintiff had failed the exam but said that he made a statement that the offender did not ejaculate.  Although the plaintiff has vehemently denied making the statement, Peekskill officer Thomas McIntyre testified that he "vividly" remembered Deskovic's examination and was "shocked" by the statements regarding ejaculation. (Id. at 10 - 11.)

Following the polygraph exam, Officer McIntyre interrogated the plaintiff for two more hours outside the presence of Stephens. (Id. at 5). The plaintiff alleges McIntyre threatened him intimating physical harm and promised him leniency if he confessed. (Id.) After those two hours of interrogation, he eventually admitted the crime. (Id.) The plaintiff was then arrested for murder and brought back to the Peekskill police department. (Id.)

Prior to the plaintiff's January 25, 1990 confession, vaginal swabs from the victim's body were sent to an FBI laboratory to definitively determine whether the plaintiff was the perpetrator. (Aug. 2009, p. 5.) The DNA results were returned days after the plaintiff's indictment and conclusively excluded the plaintiff as the source of semen found in the victim's body. (Id.) In addition, microscopic analysis of the hairs found on the victim's body excluded the plaintiff as the source. (Id.) The hair analysis showed that at least one of the hairs found on the victim "was consistent with 'negroid-type' hair, typically shed by an African American individual." (Id.)

During trial, plaintiff alleges that Westchester medical examiner Louis Roh concocted a story to circumvent the exculpatory DNA evidence. (Id.) He allegedly falsely testified that the victim had been sexually active on multiple occasions prior to her rape and death, and that during

5

the autopsy he had observed scarring on the victim's hymen that proved this fact. (<u>Id.</u>) Roh had

no scientific basis for this conclusion. (<u>Id.</u>; No. 238, p. 8.)

Following the arrest, plaintiff was assigned legal counsel from Westchester Legal Aid.

(No. 238, p. 7.) From the date of plaintiff's indictment and throughout trial, plaintiff was

represented by Peter Insero, an attorney with Legal Aid. (No. 238, p.8.) According to the

plaintiff, Insero never investigated the source of the semen, even when the prosecution attributed

the semen to Freddy Claxton, the possible love interest of the victim and initial suspect of the

Peekskill police department. (<u>Id.</u> at 9.) Further, Insero allegedly failed to investigate the source of

the hair found on the victim, even though the prosecution argued it came from the medical

examiners or Claxton. (<u>Id.</u>; Aug. 2009, p. 6.) In fact, Legal Aid had a direct and unwaiveable

conflict with representing Deskovic because they also represented Claxton. (No. 238, p. 9.) The

plaintiff also accused Insero of failing to investigate how or why the plaintiff falsely confessed,

and Insero never offered any explanation about this at trial. (<u>Id.</u>) Insero also failed to raise the

issue of plaintiff's interrogation outside the presence of counsel and never moved to suppress the

coerced confession. (<u>Id.</u>) Insero was also accused of failing to prepare and conduct even

minimally adequate cross-examinations of witnesses at trial and never investigated an alibi

defense that Deskovic could prove. (<u>Id.</u>) Insero was also accused of excessive drinking, including

drinking during work hours while representing the plaintiff. (<u>Id.</u>)

After sixteen years in prison, the plaintiff's conviction was vacated and he was released.

(Aug. 2009, p. 6.) Plaintiff has since filed this §1983 civil rights suit against the Peekskill

Defendants, Westchester Legal Aid and medical examiners, and Stephens and Putnam

collectively to recover compensation for his arrest, conviction, and 16-year imprisonment. (<u>Id.</u> at

1.)

6

As this matter approaches trial, Stephens and Putnam are now the sole defendants due to plaintiff's settlements with Westchester County, Louis Roh, Millard Hyland, Westchester County Legal Aid, Peter Insero, City of Peekskill, David Levine, Thomas McIntyre, and Eugene Tumolo. (Med. Stip.; Legal Stip.; Peekskill Stip.)

## LEGAL ARGUMENT

I.      **DEFENDANTS DANIEL STEPHENS AND THE COUNTY OF PUTNAM SHOULD BE PERMITTED TO SETOFF ALL PRIOR SETTLEMENTS AGAINST ANY POTENTIAL RECOVERY BY THE PLAINTIFF PURSUANT TO THE EQUITABLE SHARES OF ALL THE RELEASED TORTFEASORS' COMPARATIVE LIABILITY FOUND AT TRIAL.**

   a.  **Plaintiff asserts and pleads a single indivisible injury.**

Any potential liability attributed to Defendants Daniel Stephens ("Stephens") and the County of Putnam ("Putnam") should also be attributable to the same indivisible injury caused by the settling tortfeasors: David Levine, Thomas McIntyre, Eugene Tumolo, and the City of Peekskill ("Peekskill Defendants"); Peter Insero and the Legal Aid Society of Westchester County ("Legal Aid"); and Louis Roh, Millard Hyland, and Westchester County ("medical examiners"). The single indivisible injury is the plaintiff's sixteen year incarceration and the damages associated with it. As more fully discussed below, for any setoff rule to apply, the settlement must be predicated on the tortfeasors' liability for damages attributable to the same injury. Dobson v. Camden, 725 F.2d 1003, 1005 (5th Cir. 1984); Roma v. Buffalo Gen. Hosp., 481 N.Y.S.2d 811, 812 (3d Dep't 1984) (state setoff laws); and Mason v. City of New York, 949 F.Supp. 1068, 1076 (S.D.N.Y 1996) (citing United States v. Alcan Alum. Corp., 990 F.2d 711, 722 (2d Cir. 1993) (federal setoff laws)).

Here, the plaintiff brought a collective civil rights suit under §1983 against all of the above-named defendants. This suit was brought because the plaintiff suffered through a wrongful

7

arrest, conviction, and 16 year incarceration due to the combined actions of numerous parties. The indivisible nature of the injury suffered is no more clearly evidenced than in the plaintiff's Complaint which names each of the above defendants and asserts the same injury in each count against each defendant.  See Plaintiff's Third Amended Complaint, ¶ 201 and the last paragraph of each Count thereafter, "as a direct and proximate result of defendants' actions Mr. Deskovic was wrongfully convicted and imprisoned for sixteen years." (Plaintiff's Third Amended Complaint ¶¶ 213, 230, 240, 245, 247, 253, 270, 302-305)

"The law is clear that where there is but one indivisible injury caused by the joint or concurrent acts of two [or more] tortfeasors, each tortfeasor is jointly and severally liable for the entire amount of damages." Mazyck v. Long Island R. Co. (LIRR), 896 F.Supp. 1330, 1333 (E.D.N.Y. 1995) (citing Lockard v. Missouri Pacific R. Co., 894 F.2d 299, 305 (8th. Cir 1990); Restatement (Second) of Torts §433A (1965)). Further, "[w]here two or more causes combine to produce ... a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." Mazyck, 896 F.Supp. at 1333 (quoting Restatement (Second) of Torts § 433A cmt. on subsection (2), at 440 (1965). In Mazyck, an off-duty police officer employed by the Long Island Railroad Company ("LIRR") was assaulted on a car operated by the LIRR. Id. at 1331. The Mazyck court found joint and several liability between the attackers and the LIRR because the injuries caused by the intentional tortfeasors could not be distinguished, in any quantifiable terms, from the injuries caused by the negligence of the LIRR. Id. at 1333. Further, LIRR's argument that they did not act jointly or in concert with the attackers was unpersuasive to the court because joint and several liability may still be found "in the instance of certain injuries

8

which, because of their nature, are incapable of any reasonable or practicable division or allocation among multiple tort-feasors." Id. at 1334. See also D'Elia v. 58-35 Utopia Parkway Corp.,843 N.Y.S.2d 339, 342 (2d. Dept. 2007) (co-defendants found jointly and severally liable because there was no evidence at trial that either of the defendants' blows caused plaintiff's most significant injury); Slater v Mersereau, 64 N.Y. 138, 147 (1876) (although contractor and subcontractor acted independently of each other, damage from rainwater was a single inseparable injury)[2];

The facts detailed above describe a continuum of activity by multiple tortfeasors which are all substantial factors in causing the same harm.  However, all but two of the tortfeasors have settled and satisfied the plaintiff for their respective roles.  Stephens and Putnam therefore should be permitted a set off from the released tortfeasors because any injury found to have been caused by Stephens and Putnam is also attributable to the Peekskill Defendants, and Westchester County Legal Aid and the medical examiners.

**b. Defendants Daniel Stephens and the County of Putnam are entitled to setoffs pursuant to New York General Obligations Law § 15-108.**

The Southern District of New York has previously found that non-settling tortfeasors were entitled to setoffs pursuant to G.O.L.§ 15-108 in a §1983 action. Mason v. City of New York, 949 F.Supp. 1068, 1078 (S.D.N.Y 1996). In Mason, bounty hunters operating through a bail bonds firm and coordinating with state officials, apprehended the wrong woman, and caused

---

[2] In the September 22, 2009 opinion in this matter, this Court held that the Peekskill Defendants were not entitled to file a Third Party Complaint for contribution against attorneys Stephen Orlikoff and Marcia G. Shein because the injuries allegedly caused by the law firm were different. ECF Doc. No. 238, p. 22. However, that matter involved a contribution claim in which the Peekskill Defendants were attempting to sue Orlikoff and Shein as third party defendants. Id. at 2-3. Following the conviction, Orlikoff and Shein were retained by the plaintiff to pursue post-conviction relief. Id. at 10. They filed a petition for a writ of habeas corpus that was ultimately time barred. Id. Even though it was held that the loss of a "legal right" was not the same injury as those alleged against the Peekskill Defendants, that holding was in the context of a contribution claim made against a non-party. Id. at 22. Here, the released tortfeasors have all been named in the plaintiff's Complaint seeking compensation for the same injury and have all paid settlements in connection to the same alleged injury.

9

her to be confined and taken against her will to Alabama where she was eventually released. Id. at 1070. Defendants were found liable for damages totaling $210,000.00. Id. at 1071. Prior to trial, the City of New York, one of the original defendants, reached a settlement with the plaintiff for $145,000.00. Id. The court specifically declined to address the scenario where a non-settling tortfeasor would be entitled to a total credit that would allow the non-settler to deflect liability altogether because that scenario was not at issue. Id. Instead, in assessing setoffs for the settling joint tortfeasor, the court applied G.O.L.§ 15-108 and did not find a conflict with §1983 policies because the plaintiff would be made whole and the non-settling defendants would still be obligated to pay a portion of the total damages. Id. at 1078.

Therefore, Stephens and Putnam should be permitted to present evidence of the settling tortfeasors' wrongdoings to the jury under G.O.L.§ 15-108 so that liability may be apportioned between all tortfeasors and a credit can be issued based on each defendants' comparative fault.

### c. Even if New York General Obligations Law § 15-108 was inapplicable, Defendants Daniel Stephens and the County of Putnam are still entitled to setoffs under the federal proportionate share rule.

Should the Court find G.O.L.§ 15-108 inapplicable, Stephens and Putnam are still entitled to credit the prior settlements against any potential recovery by the plaintiff pursuant to the equitable shares of all released tortfeasors' comparative fault found at trial under the federal proportionate share rule. Banks ex rel. Banks v. Yokemick, 177 F.Supp.2d 239, 259 (S.D.N.Y. 2001). In Banks, the City of New York and nineteen (19) employees of the New York City Police Department were accused of unlawful detention and excessive force under §1983 when a suspect was chased, and then struck in the head with a police radio, culminating in the suspect's death. Banks, 177 F.Supp.2d at 243. Prior to trial, all defendants, except the officer accused of striking the suspect, settled with the plaintiff for $750,001, and the claims against those

defendants were dismissed. Id. At trial, the jury awarded plaintiff $605,001 and the non-settling defendant filed post-trial motions, which included a petition to set off the prior settlements pursuant to G.O.L.§ 15-108. Id. Rather than apply a setoff pursuant to state law, the Banks Court found G.O.L.§ 15-108 to be inconsistent with the federal statute because New York setoff law would have allowed the non-settling wrongdoer full credit for the prior settlements, effectively relieving him from any obligation to compensate his victim. Id. at 261. Instead, the Court crafted a remedy pursuant to federal law and found that the proportionate share rule applied. Id. at 266.

As such, even if G.O.L.§ 15-108 does not apply, Stephens and Putnam should be permitted to proceed under the federal proportionate share rule, which would allow Stephens and Putnam to credit the prior settlements against any potential recovery by the plaintiff pursuant to the equitable shares of the released tortfeasors' comparative fault found at trial.

### d. Since Defendants Daniel Stephens and the County of Putnam are entitled to set off relief, they should be permitted to present evidence as to the liability of the settling tortfeasors at trial so that a credit can be calculated properly.

Stephens and Putnam should be permitted to present a defense that allocates liability between all the tortfeasors so that the Court may then assess the proper setoff. The issue of setoff is an affirmative defense. Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1282 (2d Cir. 1996). Non-settling tortfeasors have the burden of proving the liability of settling parties. Gravatt v. City of New York, 73 F.Supp.2d 438, 441 (S.D.N.Y. 1999). "Under New York law, when a defendant argues that other parties share liability for a tort, the defendant has the burden of proving the parties' individual degrees of fault." Id.; see also Dobson v. Camden, 705 F.2d 759, 771 (5th Circ. 1983) ("Dobson I") rev'd on other grounds, 725 F.2d 1003 (5th Cir. 1984) ("Dobson II") ("party claiming a reduction in judgment has the burden of proving that another party, though joined as a defendant, shares the blame for having caused the injury. Absent proof

11

one way or the other, we would allow no reduction.")

If a non-settling party fails to establish the comparative shares of liability at trial, that party's claims for setoff will be denied. <u>Banks</u>**,** 177 F.Supp.2d at 265. In <u>Banks</u>, even if the court had accepted the non-settling tortfeasor's substantive arguments that he was entitled to a full setoff under <u>G.O.L.</u> § 15-108, the request was still procedurally deficient as the non-settling party has an obligation to establish the comparative shares of responsibility at trial. <u>Id.</u>

Here, Defendants Stephens and Putnam must be permitted to establish the fault of the settling co-defendants because a failure to do so would preclude any entitled setoffs. <u>See Gravatt</u>, 73 F.Supp.2d at 441 (holding that because defendant had "failed to meet the burden by failing to request an allocation of fault at trial" it was not entitled to a reduction of the judgment based on the plaintiff's settlement with the other defendants).  Therefore, any efforts by the plaintiff to preclude evidence as to the wrongdoing of any of the settling tortfeasors would be improper and should be denied.

## II.    THE ISSUE OF PUNITIVE DAMAGES SHOULD BE BIFURCATED.

The defendants request that the trial be bifurcated so that the issue of punitive damages be reserved until after a finding on liability. Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure the Court may order bifurcation of one or more separate issues in order to avoid prejudice.  The Second Circuit has emphasized that it is often preferable to bifurcate and delay trial as to the amount of a punitive damages award until the issues of liability and compensation have been tried and resolved.  <u>Vasbinder v. Ambach</u>, 926 F.2d 1333, 1344 (2d Cir. 1991); <u>Simpson v. Pitts. Corning Corp.</u>, 901 F.2d 277, 283 (2d Cir. 1990); <u>Smith v. Lighting Bolt Prods., Inc.</u>, 861 F.2d 363, 374 (2d Cir. 1988).  This method is preferred because, although punitive damages depends on both the nature of the defendant's conduct and the defendant's

12

financial situation or ability to pay, the presentation of evidence regarding a defendant's financial situation is not desirable during the liability phase of the trial.  See Vasbinder, 926 F.2d at 1344; Smith, 861 F.2d at 373-374.

Once a liability finding has been made, at that point, the individual defendant can put in evidence of his financial condition.  Overall, when evaluating the amount of or request for punitive damages, "a court should consider both the nature of the defendants' conduct and the defendants' financial status."  Gonzalez v. Rakkas, No. 93-CV-3229 (JS), 1995 U.S. Dist. LEXIS 22343, at *22-23 (E.D.N.Y. July 25, 1995).  As such, Defendants respectfully request that the defendant be permitted to submit evidence pertaining to his financial net worth only after a finding of liability.

## III.  ANY EVIDENCE OR TESTIMONY  RELATING TO ANY ASSAULT OR INJURIES SUFFERED BY THE PLAINTIFF WHILE IN PRISON SHOULD BE BARRED.

The named defendants are not jointly and severally liable with any prison official or inmate who may have assaulted or injured the plaintiff while in prison and therefore cannot be held responsible for any such injuries. In fact, Your Honor has already held that there was no legal basis for imposing liability under §1983 on any of the named defendants for a prison guard's alleged violations of the plaintiff's rights.[3] Pursuant to Federal Rule of Evidence 402, "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, the court may "exclude

---

[3] See ECF Doc. 240 filed on September 22, 2009. On Defendant prison guard Alan Tweed's motion to sever and dismiss plaintiff's claims for unreasonable searches and wanton infliction of pain, Your Honor found that severance was appropriate because plaintiff's claims against Tweed did not meet either of the two threshold requirements for joinder listed in Rule 20(a)(2): plaintiff had no right to relief "against defendants jointly and severally" "with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences." Id. at p. 8. Further, Your Honor found that plaintiff's claims against the prison guard did not share questions of law or fact in common with his claims against the remaining defendants, per Rule 20(a)(2)(B). Id. at p. 9.

13

2751691_1

relevant evidence if its probative value is substantially outweighed" by "unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

To establish liability under §1983, a defendant must be personally involved in any alleged attacks or injuries sustained in prison. See Black v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) ("[I]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 1983."; Hidalgo v. Kikendall, No. 08-CV-7536, 2009 WL 2176334, at *3 (S.D.N.Y. July 22, 2009) ("An individual defendant is not liable under §1983 absent personal involvement.")

Moreover, in a §1983 case, a "plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998); see also Williams v. Smith, No. 02-CV-4558, 2009 WL 2431948, at *6 (S.D.N.Y. Aug. 10, 2009) ("A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprive the plaintiff of his rights.") Further, "tort defendants, including those sued under 1983, are responsible for the natural consequences of [their] actions." Kerman v. City of New York, 374 F.3d 93, 126 (2d Cir. 2004) (quoting Warner v. Orange County Dep't of Probation, 115 F.3d 1068, 1071 (2d Cir. 1997). Even if a 1983 defendant's "initial act is the 'but for' cause of some ultimate harm[, he] is not legally liable for the harm if an intervening act is a 'superseding cause' that breaks the legal chain of proximate cause." Higazy v. Templeton, 505 F.3d 161, 177 (2d Cir. 2007) (quoting Zahrey v. Coffey, 221 F.3d 342, 351 n. 7 (2d Cir. 2000) (citing Restatement (Second) of Torts § 440 (1965)). Consequently, "an intervening exercise of independent judgment breaks the chain of causation." Hernandez v. Wells, No. 01-CV-4376, 2003 WL 22771982, at *10 (S.D.N.Y. Nov. 24, 2003) (citing Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)).

14

"Generally, an intervening intentional or criminal act" is a type of superseding cause that "severs the liability of the original tortfeasor." In re Sept. 11 Litig., 280 F.Supp. 2d 279, 302 (S.D.N.Y. 2003) (citing Kush v. City of Buffalo, 449 N.E.2d 725, 729 (N.Y. 1983)). Furthermore, unless the superseding intention act was reasonably foreseeable, intentional misconduct will sever the chain of causation. See Martinez v. California, 444 U.S. 277, 285 (1980) (holding that intentional criminal conduct was "too remote a consequence of the [defendants'] action to hold them responsible" under §1983). Similarly, proximate cause was not found in a §1983 case because a sexual assault was not a reasonably foreseeable or natural consequence of defendants' conduct and the plaintiff's additional damages were the result of the intervening acts of others. Hibma v. Odegaard, 769 F.2d 1147, 1156 (7th Cir. 1985). In fact, the Department of Corrections owes a duty of care to protect inmates from any reasonably foreseeable harms. Sanchez v. State, 784 N.E.2d 675, 678 (N.Y. 2002).

Here, any assault and resulting injury of the plaintiff in prison would be an intervening intentional or criminal act that was not reasonably foreseeable and which would sever any liability to the named defendants. As such, no joint and several liability could exist, and the plaintiff should be barred from introducing any evidence or testimony relating to the same.

## IV.   PLAINTIFF MUST NOT BE PERMITTED TO SUGGEST THAT DANIEL STEPHENS LOST OR DESTROYED THE POLYGRAPH RESULTS AND MATERIALS.

Any suggestion or allusion that Daniel Stephens lost or destroyed the polygraph results or materials is pure speculation by the plaintiff, and therefore must be barred from the trial. Pursuant to Federal Rule of Evidence 402, "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, the court may "exclude relevant evidence if its probative value is substantially outweighed" by "unfair prejudice, confusing the issues, [or] misleading the jury." Id. at R. 403.

15

2751691_1

Here, Stephens properly turned over all of his materials to the Westchester County Prosecutor's Office. See Exhibit I: Huntley Hearing transcript excerpts, pg. 228-29; 231-34; 283; 328-29. At the suppression hearing, the polygraph results and associated materials were marked as the People's exhibits. Id. Specifically, "People's 60" was identified in the hearing as the four polygraph charts produced on January 25, 1990, showing the results of the seven different polygraph tests performed by Stephens on that date. Id. at 328. Any destruction of evidence, loss of materials, or any other mishandling of documents occurred after Stephens had turned everything over to the proper authorities. As such, pursuant to the Federal Rules of Evidence, Plaintiff must not be permitted to attempt to blame Stephens for the disappearance of any polygraph results or materials at trial.

## **CONCLUSION**

Based upon the foregoing it is respectfully requested that the court grant Daniel Stephens' and the County of Putnam's motion *in limine* for the above requested relief.


Dated: New York, New York                     YOURS, etc.,
       April 14, 2014                              HARWOOD LLOYD, LLC

                                        By:  /s/ STEPHEN WELLINGHORST

                                        Stephen Wellinghorst (SW-2998)
                                        *Attorneys for Defendant Daniel Stephens and Putnam County*
                                        350 Fifth Avenue, 59th Floor
                                        Empire State Building
                                        New York, New York 10118
                                        (201) 359-3530
                                        swellinghorst@harwoodlloyd.com

16