Stephen Wellinghorst (SW-2998)
HARWOOD LLOYD, LLC
*Attorneys for Defendants Daniel Stephens and Putnam County*
350 5th Avenue, 59th Floor, Empire State Building
New York, New York 10118
(201)-359-3530

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY DESKOVIC<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF PEEKSKILL, PUTNAM COUNTY, WESTCHESTER COUNTY, DAVID LEVINE, THOMAS MCINTYRE, WALTER BROVARSKI, EUGENE TUMOLO, JOHN AND JANE DOE SUPERVISORS, DANIEL STEPHENS, LOUIS ROH, MILLARD HYLAND, PETER INSERO, and LEGAL AID SOCIETY OF WESTCHESTER COUNTY<br><br>Defendants. | No. 7:07-cv-8150 (KMK)<br><br>**ECF Case** |

# MEMORANDUM OF LAW
# IN OPPOSITION TO PLAINTIFF'S
# MOTION IN LIMINE

HARWOOD LLOYD, LLC
350 5th Avenue, 59th Floor, Empire
State Building
New York, New York 10118
(201)-359-3530
*Attorneys for Defendants Daniel
Stephens and Putnam County*

STEPHEN WELLINGHORST
Of Counsel and On the Brief

i

**TABLE OF CONTENTS**

A. Exclude Evidence of Third Party Misconduct ……………………………………… 1

B. Exclude PPD Interrogation Tapes and Police Reports ……………………………….. 3

C. Exclude Evidence of Defendant Daniel Stephens' Character ……………………… 5

D. Exclude References to McIntyre's Medical Condition ………………………………. 6

E. Exclude References to Arguments or Altercations between Plaintiff and His Family ……………………………………………………………………… 7

F. Exclude Proposed Defense Experts as Untimely ……………………………………. 7

G. Admissibility of the New York Times Clip ……………………………………….. 10

H. Adverse Witnesses ……………………………………………………………….. 11

I. Plaintiff's Proposed Arguments Regarding Damages ……………………………… 11

**CONCLUSION** ……………………………………………………………………..…. 12

# TABLE OF AUTHORITIES

**Cases**

Boeing Airplane Co. v. O'Malley, 329 F.2d 585, 599 (8th Cir. 1964) ………………………. 10

Caruolo v. A C & S, Inc., No. 93 Civ. 3752, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999) …. 12

Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003 (2d Cir. 1995) …………………… 12

Epstein v. Kalvin-Miller Int'l, Inc., 121 F. Supp. 2d 742 (S.D.N.Y. 2000) ………………….. 6

Fiacco v. City of Rensselaer, 783 F.2d 319 (2d Cir. 1986) ……………………………………. 3

Gerber v. Computer Assocs. Int'l, Inc., 303 F.3d 126 (2d Cir. 2002) ……………………….. 4

Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529 (E.D.N.Y. 2011) …………………………... 3

LaVigna v. State Farm Mut. Auto Ins. Co., 736 F.Supp.2d 504 (N.D.N.Y. 2010) …………… 8-9

Lightfoot v. Union Carbide Corp., 110 F.3d 898 (2d Cir. 1997) …………………………...... 11

Lore v. City of Syracuse, 2005 WL 3095506 (N.D.N.Y. 2005) ……………………………… 9

Mahoney v. Keyspan Corp., 2007 WL 1651853 (E.D.N.Y.) …………………………………. 10

Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ………………………. 12

Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005) …………………………………… 4

Okraynets v. Metro. Transp. Auth., 555 F. Supp. 2d 420 (S.D.N.Y. 2008) …………………… 11

Optigen, LLC v. Int'l Genetics, Inc., 877 F.Supp.2d 33 (N.D.N.Y. 2012) …………………… 8

Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955 (2nd Cir. 1997) ….......... 8

Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932 (10th Cir. 1994) ……………............. 6

United States v. Crown, No. 99 Cr. 1044, 2000 WL 709003 (S.D.N.Y. May 31, 2000) ……... 6

U.S. v. Leggett, 312 F.2d 566, 572 (4th Cir. 1962) …………………………………………… 10

United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) …………………………………. 5

Whitehead v. Food Max of Mississippi, Inc., 163 F.3d 265 (5th Cir. 1998) …………………... 11

**Statutes**

New York General Obligations Law § 15-108 ………………………………….. 2

**Rules**

Federal Rule of Civil Procedure 26 ……………………………………………… 8, 10

Federal Rule of Civil Procedure 37 ……………………………………………… 8

Federal Rule of Evidence 106 …………………………………………………… 4-5

Federal Rule of Evidence 401 …………………………………………………… 7

Federal Rule of Evidence 402 …………………………………………………… 1-3, 5-7, 9, 11

Federal Rule of Evidence 403 …………………………………………………… 1-3, 5-7, 9-11

Federal Rule of Evidence 404 …………………………………………………… 5

Federal Rule of Evidence 608 …………………………………………………… 5

### A. Exclude Evidence of Third Party Misconduct

Plaintiff's entire argument is predicated on the supposition that Defendants' proof of third-party misconduct is intended to sever Stephens and Putnam from the chain of causation. Plaintiff's fundamental supposition is wrong.[1] Rather, Daniel Stephens ("Stephens") and the County of Putnam ("Putnam") assert that they must be permitted to prove third-party misconduct to effectively apportion the fault of the settling parties who contributed to plaintiff's indivisible injury: sixteen (16) years of imprisonment. Defendants are thereafter entitled to setoffs for any liability attributed to the settling parties for their apportioned liability. In further response to Plaintiff's Motion In Limine, Defendants restate and incorporate herein their arguments and authorities from Defendants' Motion In Limine, Argument "I".

The Defendants' ability to prove the released tortfeasors' misconduct is not only required for setoff purposes, but it will also prevent the plaintiff from confusing the issues, misleading the jury, or unnecessarily wasting the Court's and the jury's time. See Fed. R. Evid. 402, 403. The plaintiff's pretrial incarceration and subsequent imprisonment was not the result of a single defendant. The misconduct of the released parties is weaved inextricably into the narrative of the case. As the plaintiff has alleged throughout the Third Amended Complaint and documented during the course of this litigation, the actions of the Peekskill Police Department ("PPD"), Westchester Legal Aid and medical examiner fell grossly short of any acceptable standard of conduct, violated the plaintiff's constitution rights, and contributed significantly to the same injury. Additionally, the plaintiff has already secured substantial sums in settlement from each of the above referenced parties.

---

[1] Plaintiff's error is belied by his failure to cite a single Second Circuit case that supports his position that the actions of the released third party tortfeasors should be completely barred from trial.

1

The plaintiff should not be permitted to both obtain settlements from all other tortfeasors and then completely ignore the actions of those released tortfeasors that also caused his injury. Such a strategy abuses the settlement process and will mislead the jury. If defendants are not permitted to apportion and setoff the liability of released tortfeasors, accused parties generally would be forced into early settlement regardless of their percentage of fault or the merits of the case because the risk of being the last defendant standing would be too great. That last defendant's right to contribution from those settling parties, of course, is no longer possible under these circumstances. Such a policy would prejudice the defendants at trial and would allow plaintiffs to collect several times for the same injury.

Instead, allowing Stephens and Putnam to prove the released tortfeasors' fault at trial would allow the jury to apportion liability so that proper setoffs could be applied. As detailed in Defendant's Motion in Limine on this issue, this result is mandated by either §15-108 of the New York Obligations Law or federal case law precedent. It would also allow the jury to understand how Daniel Stephens' conduct fits into the series of events that led to the conviction: what led Deskovic to Stephens, what the impact of plaintiff's polygraph exam was, and the significance of the "ejaculation" statement in the state's prosecution strategy. Although the other tortfeasors' actions may not sever any liability found on the part of Stephens, they certainly contributed to the plaintiff's injury. Defendant's evidence is not that of an intervening cause, it is evidence of concurrent causes and therefore is admissible. As such, excluding the actions of any of the released tortfeasors would mislead and confuse the jury into thinking that the polygraph exam was the only factor in plaintiff's incarceration. <u>See</u> Fed. R. Evid. 402, 403. Overall, this evidence ultimately would save the court's time, it would prevent the jury from being misled, and it would avoid a substantial prejudice to Stephens and Putnam. <u>Id.</u>

As the plaintiff cites in his papers regarding 1983 claims, the district court's "broad discretion . . . under Rule 403's probative-prejudice balancing . . . should ask whether the evidence's proper value is more than matched by the possibility that it will divert the jury from the facts which should control their verdict." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 537 (E.D.N.Y. 2011)(citing Fiacco v. City of Rensselaer, 783 F.2d 319, 327-28 (2d Cir. 1986). The plaintiff should not be permitted to exclude crucial facts which are critical to the jury's understanding of this case and the roles of each tortfeasor.

B. Exclude PPD Interrogation Tapes and Police Reports

The rules of evidence preclude the plaintiff's request "to have its cake and eat it too." Plaintiff's suggestion that he call the PPD officers as witnesses and then limit evidence on the records of their investigation should not be allowed. As stated above, the jury needs to understand the full context of this case, including the events which led the plaintiff to Stephens' office on January 25, 1990. The Plaintiff's state of mind on the morning of January 25 is defined by his prior interactions with the PPD as detailed in the reports and tapes. Any exclusion of the PPD's actions would thoroughly confuse and mislead the jury and prejudice Stephens' ability to present a defense. See Fed. R. Evid. 402, 403. Plaintiff has consistently alleged that the PPD interrogated the plaintiff on a number of occasions prior to the polygraph exam. See Plaintiff's Motion In Limine, page 8. The plaintiff has also consistently alleged that the PPD were selectively recording interrogations and feeding the plaintiff confidential information. Id.; See also Plaintiff's Third Amended Complaint ¶¶ 194-201. Plaintiff also states that Stephens had no involvement with the plaintiff prior to the polygraph exam, and in fact, Stephens did not even know which suspect was being brought to his office that day. See Plaintiff's Motion In Limine, page 8-9.

3

The nature, scope, and behavior of the PPD reflected in the recordings and police reports are fundamental to understanding the PPD's actions in their entirety, and are crucial to understanding how and why the plaintiff gave a false confession. If the PPD was feeding confidential information to the plaintiff, then that information would have an enormous impact on any polygraph exam performed by Stephens. Should the jury find that the plaintiff incorporated intimate details of the case into his narrative, as the plaintiff has consistently alleged, the jury could also find that Stephens acted reasonably when he determined that the plaintiff failed the polygraph exams and sought to obtain a confession.

Similarly, evidence that the PPD was selectively recording interrogations lends credibility to the plaintiff's prior allegations that the plaintiff was being fed confidential information. The evidence also helps prove that the PPD was operating in a coercive or unconstitutional manner. Since the actions of the PPD culminated in a false confession, the full narrative is critical to understand whether Stephens acted reasonably during the polygraph exam, and whether he acted with any malice. Moreover, as argued before, the conduct of the PPD officers is central to the defendants' ability to prove that PPD's fault contributed to the same injury to plaintiff.

Additionally, the cases cited by the plaintiff are easily distinguishable from this matter. See Nimely v. City of New York, 414 F.3d 381, 398 (2d Cir. 2005) (district court should have excluded testimony of an expert witness who was testifying to the credibility of a crucial fact witness under the guise of an expert opinion); Gerber v. Computer Assocs. Int'l, Inc., 303 F.3d 126, 136-37 (2d Cir. 2002) (district court correctly permitted general details of non-compete clauses and correctly excluded substantive details of other transactions because the non-compete clauses were the only probative portion of each transaction). Further, R. 106 is inapplicable

because the lack of a full statement is the relevant evidence, and plaintiff has been developing that theory for years. Moreover, any prejudice to the plaintiff can be cured by his own testimony. See United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) (the rule "allows the introduction even of hearsay statements if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion). Of course, defendants will simply be setting forth evidence championed by the plaintiff since the inception of this litigation.

As such, excluding the PPD tapes and police reports would not only confuse and mislead the jury, but also irreversibly prejudice Stephens and Putnam. See Fed. R. Evid. 402, 403.

**C. Exclude Evidence of Defendant Daniel Stephens' Character**

Defendants agree that pursuant to Federal Rules of Evidence 404 and 608, Stephens character for truthfulness is inadmissible so long as that trait is not attacked. However, evidence of Stephen's professional competency and state of mind does not constitute character evidence and is not barred by either rule. See Fed. R. Evid. 404, 608. Specifically, defendants seek to introduce testimony of Stephens' professionalism and the level of experience on which he based his course of conduct on January 25. As evidence of Stephen's professionalism, we intend to introduce letters of commendation issued by the police departments for Stephens' prior and subsequent work. The purpose of this evidence is not to show any propensity to act in accordance with any character trait, but rather that Stephens was a qualified investigator whose training, techniques, and procedures had been achieving successful results for years and formulates the basis for his belief that his conduct was reasonable. See Fed. R. Evid. 404.

Further, this evidence would directly address the state of mind element of plaintiff's malicious prosecution claim. Since Stephens had only received positive feedback for his work,

5

he had no reason to believe his technique or the Arther method was deficient. He was simply performing the technique in which he was trained and that he had executed countless times before without issue. Stephens' professional history should not be confused with character evidence. Accordingly, such evidence is admissible.

### D. Exclude References to McIntyre's Medical Condition

Defendants would only inquire about Detective McIntyre's medical condition if he is unable to recall specific testimony or relevant events. Any potential sympathy would be minimal since both parties will be addressing McIntyre's role in the plaintiff's incarceration. See Fed. R. Evid. 402, 403. Any sympathy felt for a medical condition will be greatly outweighed when McIntyre's gross misconduct is put on display. Id. Further, McIntyre has already settled his claims, further reducing the importance of any perceived sympathy. See Epstein v. Kalvin-Miller Int'l, Inc., 121 F. Supp. 2d 742, 746 (S.D.N.Y. 2000) (medical condition involved a paraplegic plaintiff whose disability status had already been stipulated to before trial); United States v. Crown, No. 99 Cr. 1044, 2000 WL 709003, at *3 (S.D.N.Y. May 31, 2000) (defendant with AIDs in an immigration case controlled by a statute without an intent element barred from introducing a necessity defense). Plaintiff is correct that the Tenth Circuit has previously limited evidence related to a plaintiff's medical condition under Rule 403 relating to epilepsy and seizures caused by a fall. Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 940 (10th Cir. 1994). In that same case, the Tenth Circuit did permit questions as to whether the fall affected the plaintiff's memory. Id. Again, sympathy was more of an issue because the Tenth Circuit was dealing with a plaintiff, and that plaintiff had already improperly revealed that he had suffered a heart attack. Id.

Further, as the plaintiff has noted, this Court ruled on McIntyre's condition in 2011. See Plaintiff's Motion In Limine, page 17. It is now three years later, and neither party has any idea as to how much McIntyre's health has deteriorated or how much medication he is now on. It would be premature to bar any reference to his condition without first determining his present state. As such, if McIntyre's condition now prevents him from adequately testifying at trial, the parties should be permitted to address it. See Fed. R. Evid. 402, 403.

**E. Exclude References to Arguments or Altercations between Plaintiff and His Family**

The central focus of plaintiff's case is the polygraph and the way it was conducted. Plaintiff's interaction with his family is part of the actual narrative of the polygraph exam. See Stephens polygraph notes, page 2. Since all of the plaintiff's responses were used to formulate the polygraph results, all aspects of the exam are particularly relevant. See Fed. R. Evid. 401, 402; see also Plaintiff's Polygraph Expert Report from Charles R. Honts (describing how polygraph tests are administered: once all phases of questioning are complete, the results are evaluated and determinations are made).

Moreover, the plaintiff will likely be portrayed at trial as a fragile and troubled child who was alienated from his family and susceptible to interrogation techniques. See Plaintiff's Proposed Expert Report from Saul M. Kassim, Ph.D (opining that the plaintiff was vulnerable suspect). Likewise, any interaction between the plaintiff and his family will be a crucial component of any psychological report filed in this matter. Thus, any disputes or lack of relationship with the family unit would not just be relevant, but highly probative at trial. See Fed. R. Evid. 402, 403.

**F. Exclude Proposed Defense Experts as Untimely**

7

In the absence of a specific date for expert disclosures set forth in a scheduling order issued by the Court, Defendant acknowledges the default deadline is set forth in Federal Rule of Civil Procedure 26(a)(2)(D)(i). It should be noted that, because the January 14th pre-trial conference did not set a specific deadline for expert reports, but did set a trial date of June 30th, the defendants had only sixty-five (65) days to obtain and serve expert reports under the applicable rule. See January 14, 2014 Scheduling Order (Elec. Doc. 639). The Defendants were diligent in putting together its expert team and disclosed names eighty-five (85) days before the recently set trial date. Reports were provided as they became available and the disclosure is now complete more than sixty (60) days before trial. Although there is adequate time before trial to conduct oral discovery, Plaintiff seeks to preclude three of the seven experts. The Plaintiff is asking for the ultimate sanction.

In analyzing whether preclusion of expert testimony is an appropriate sanction, [under Rule 37], courts must consider the factors set forth in Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955 (2nd Cir. 1997). These factors are: "1) the party's explanation for the failure to comply with the discovery order[2]; 2) the importance of the testimony of the precluded witness; 3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and 4) the possibility of a continuance." Id. at 961.

In this case, the testimony of the three experts sought to be excluded is critical to Stephens' defense of Plaintiff's claims. Preclusion of expert testimony is a harsh remedy because of its obvious effect of depriving the court and finder of fact of otherwise potentially relevant information to be used in deciding the issues in the case. Optigen, LLC v. Int'l Genetics, Inc., 877 F.Supp.2d 33, 49 (N.D.N.Y. 2012), *citing* LaVigna v. State Farm Mut. Auto Ins. Co., 736

---

[2] Or in this case, the federal rule.

F.Supp.2d 504, 511 (N.D.N.Y. 2010). Without these expert witnesses, the jury could not possibly understand the contributing liability associated with each settling tortfeasor as it related to the plaintiff's incarceration. As such, any possible surprise or prejudice to the plaintiff would be greatly outweighed by the prejudice that would be suffered by Stephens and Putnam.

Moreover, the touchstone for determining whether to exclude an untimely expert report is whether the party opposing their admission is prejudiced. <u>Lore v. City of Syracuse</u>, 2005 WL 3095506 (N.D.N.Y. 2005). Plaintiff certainly cannot be prejudiced by Defendants' experts' reports and anticipated testimony. Notably, Plaintiff is not challenging Defendants' four "rebuttal" experts and anticipated receiving their reports within this time frame. However, the three (3) challenged experts' reports and anticipated opinions and testimony track the same theories Plaintiff outlines in his Third Amended Complaint relative to: the PPD investigation and interrogation; Legal Aid's representation of the plaintiff at his criminal trial; and the medical examiner's autopsy report and subsequent testimony. There is virtually nothing in the three expert reports that the Plaintiff did not specifically plead in this Third Amended Complaint. Accordingly, there would be nothing in the defense expert reports that could surprise or prejudice Plaintiff. <u>See</u> Fed. R. Evid. 402, 403.

The ninety (90) day deadline notwithstanding, Plaintiff is hard-pressed to suggest he will be unfairly prejudiced by Defendants' delayed expert disclosures. Presumably, since Plaintiff had the burden of proof on his Third Amended Complaint, he in all likelihood consulted similar experts to support his claims against the PPD, Legal Aid, and the medical examiner. Can the Plaintiff credibly assert that he now needs to find new experts to take a position contrary to his own Complaint?

Even where the failure to disclose is neither "justified" or "harmless," the Second Circuit has viewed the imposition of sanctions as discretionary and district courts have generally not ordered preclusion. Mahoney v. Keyspan Corp., 2007 WL 1651853 (E.D.N.Y.) (Court allowed defendant's expert disclosure one and one-half years after the plaintiff served his expert report and the discovery deadline, additionally the Court extended the deadline and there was sufficient time before trial for the plaintiff to depose the expert). In this case, the delayed disclosure is harmless.

As the plaintiff notes, under R. 26(a)(2)(D)(i), an order by the court could properly extend any deadlines required in this matter. See Plaintiff's Motion In Limine, page 21, footnote 15. Similarly, these defendants would have no objection to adjourning the June 30th trial date so that the plaintiff could take as much time as they needed to review the defense expert reports illustrating the misconduct of the released tortfeasors. Just a one month adjournment would place all expert reports outside of the ninety (90) day window. The prejudice between a one month trial delay and excluding crucial expert witnesses is not comparable. See Fed. R. Evid. 403.

**G. Admissibility of the New York Times Clip**

Introducing the November 25, 2007 clip would be improper bolstering as the plaintiff will be testifying as to any and all difficulties adjusting to non-incarcerated life. Boeing Airplane Co. v. O'Malley, 329 F.2d 585, 599 (8th Cir. 1964) ("generally, evidence is not admissible to sustain the credibility of an unimpeached witness"); U.S. v. Leggett, 312 F.2d 566, 572 (4th Cir. 1962) (mere contradiction on the facts in issue does not justify corroborative evidence bearing on the credibility of the witness). Further, the plaintiff will also be providing expert testimony to

help the jury quantify any damages owed to the plaintiff. The prejudice of any such evidence would greatly outweigh any probative value it may have. See Fed. R. Evid. 402, 403.

### H. Adverse Witnesses

Defendants do not object to plaintiff's request to treat released defendants as hostile witness at trial.

### I. Plaintiff's Proposed Arguments Regarding Damages

While district courts may give counsel wide latitude in forming their arguments to the jury, there is a line where judgment can become sympathy, and jurors are invited to put themselves in the plaintiff's position while determining damages. Whitehead v. Food Max of Mississippi, Inc., 163 F.3d 265, 278 (5th Cir. 1998). Clearly, counsel may not ask the jurors to put themselves in the plaintiff's shoes when calculating damages, as such would be a violation of the "Golden Rule." Okraynets v. Metro. Transp. Auth., 555 F. Supp. 2d 420, 431 (S.D.N.Y. 2008). This rule prohibits counsel from "telling the jurors, either directly or by implication, that they should put themselves in plaintiff's place and render such a verdict as they would wish to receive." Id.

Although plaintiff's does not propose a direct violation of the "Golden Rule," asking the jury "to imagine what amount of damages plaintiff would have traded for one day in prison, one month, or one year" would violate the rule by implication. In not so many words, plaintiff wants to ask the jury what they would like to receive if they were in the same position.

Additionally, plaintiff is correct that the Second Circuit has specifically rejected a per se rule prohibiting counsel from suggesting specific amounts during closing arguments. Lightfoot v. Union Carbride Corp., 110 F.3d 898, 912-13 (2d Cir. 1997). However, in that very same opinion, the Second Circuit stated that a trial judge "may either prohibit counsel from mentioning specific

11

figures or impose reasonable limitations." Id. The Second Circuit also included a parenthetical in their opinion "encouraging trial judges to prohibit counsel from suggesting specific monetary awards for pain and suffering." Id. (citing Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996)); See also Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("a jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel").

While plaintiff may be able to cite to Second Circuit opinions refusing to overturn the discretion of trial judges with regards to references of specific damages, the fact remains that specifying damages for the jury to award is disfavored in the Second Circuit. Caruolo v. A C & S, Inc., No. 93 Civ. 3752, 1999 WL 147740, at *16 (S.D.N.Y. Mar. 18, 1999). Since the plaintiff here is overwhelmingly sympathetic, and because Stephens and Putnam are the last non-settling defendants, the risk for an unduly prejudicial effect upon the jury is enormous. Accordingly, plaintiff should not be permitted to offer specific damages or unit of time calculations to the jury.

## Conclusion

Based upon the foregoing it is respectfully requested that the court grant Daniel Stephens' and the County of Putnam's motion *in limine* and deny the plaintiff's motion *in limine*.

Dated: New York, New York
April 28, 2014

YOURS, etc.,

HARWOOD LLOYD, LLC

By: /s/ STEPHEN WELLINGHORST

Stephen Wellinghorst (SW-2998)
*Attorneys for Defendant Daniel Stephens and Putnam County*
350 Fifth Avenue, 59th Floor
Empire State Building
New York, New York 10118
(201) 359-3530
swellinghorst@harwoodlloyd.com

Stephen Wellinghorst (SW-2998)
HARWOOD LLOYD, LLC
*Attorneys for Defendants Daniel Stephens and Putnam County*
350 5th Avenue, 59th Floor, Empire State Building
New York, New York 10118
(201)-359-3530

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY DESKOVIC<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF PEEKSKILL, PUTNAM COUNTY, WESTCHESTER COUNTY, DAVID LEVINE, THOMAS MCINTYRE, WALTER BROVARSKI, EUGENE TUMOLO, JOHN AND JANE DOE SUPERVISORS, DANIEL STEPHENS, LOUIS ROH, MILLARD HYLAND, PETER INSERO, and LEGAL AID SOCIETY OF WESTCHESTER COUNTY<br><br>Defendants. | No. 7:07-cv-8150 (KMK) (GAY)<br><br>**ECF Case**<br><br>**DECLARATION OF STEPHEN WELLINGHORST IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE** |

STEPHEN WELLINGHORST, an attorney duly admitted to practice law in the Southern District of New York hereby affirms the following under the penalties of perjury:

1. I am a partner in the law firm of Harwood Lloyd, LLC, and attorney for the Defendants, Daniel Stephens and Putnam County. I submit this Declaration in opposition to plaintiff's motion *in limine*.

2. Annexed hereto are the following exhibits:

    A. Excerpts from plaintiff's Third Amended Complaint;

    B. Excerpts from Daniel Stephens' polygraph notes;

    C. Excerpts from plaintiff's polygraph expert report prepared by Charles R. Honts;

14

D. Excerpts from plaintiff's confession expert report prepared by Saul M. Kassin;

E. Judge Karas' January 16, 2014 Scheduling Order (ECF Doc. No. 639);

Dated: New York, New York
April 28, 2014

        YOURS, etc.,

        HARWOOD LLOYD, LLC

By:   /s/ STEPHEN WELLINGHORST

Stephen Wellinghorst (SW-2998)
*Attorneys for Defendants Daniel Stephens and Putnam County*
350 5th Avenue, 59th Floor,
Empire State Building
New York, New York 10118
(201) 359-3530
swellinghorst@harwoodlloyd.com

TO:

Nick Brustin
nick@nsbcivilrights.com
Neufeld, Scheck and Brustin LLP
99 Hudson St.
New York, New York 10013

Farhang Heydari
farhang@nsbcivilrights.com
Neufeld Scheck & Brustin, LLP
99 Hudson St., Eighth Floor
New York, NY 10013

Anna Benvenutti Hoffmann
anna@nsbcivilrights.com
Neufeld, Scheck and Brustin LLP
99 Hudson St.
New York, New York 10013