UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY DESKOVIC,

    Plaintiff,

v.

CITY OF PEEKSKILL, PUTNAM COUNTY,
WESTCHESTER COUNTY, DAVID LEVINE,
THOMAS MCINTYRE, WALTER
BROVARSKI, EUGENE TUMOLO, JOHN
AND JANE DOE SUPERVISORS, DANIEL
STEPHENS, LOUIS ROH, MILLARD
HYLAND, PETER INSERO, and LEGAL AID
SOCIETY OF WESTCHESTER COUNTY,

    Defendants.

No. 07-CV-8150 (KMK)

---

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S OMNIBUS MOTION *IN LIMINE***

**TABLE OF CONTENTS**

**ARGUMENT** ................................................................................................................................ 1

    A.  THE COURT SHOULD EXCLUDE EVIDENCE OF THIRD-PARTY MISCONDUCT ........................ 1

    B.  THE COURT SHOULD EXCLUDE THE PPD INTERROGATION TAPES AND POLICE REPORTS ... 3

    C.  THE COURT SHOULD EXCLUDE EVIDENCE OF STEPHENS'S CHARACTER ............................. 5

    D.  THE COURT SHOULD EXCLUDE REFERENCES TO MCINTYRE'S MEDICAL CONDITION ......... 7

    E.  THE COURT SHOULD EXCLUDE REFERENCES TO ARGUMENTS OR ALTERCATIONS BETWEEN PLAINTIFF AND HIS FAMILY ................................................................................................. 7

    F.  THE COURT SHOULD EXCLUDE PROPOSED DEFENSE EXPERTS AS UNTIMELY ..................... 8

    G.  THE COURT SHOULD HOLD THE NEW YORK TIMES CLIP TO BE ADMISSIBLE .................... 11

    H.  THE PARTIES HAVE AGREED REGARDING ADVERSE WITNESSES ...................................... 12

    I.  THE COURT SHOULD PERMIT PLAINTIFF'S PROPOSED ARGUMENTS REGARDING DAMAGES ............................................................................................... 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007) .................................................................................. 3

*Barnwell v. Barber-Colman Co.*, 953 F.2d 637, 1992 WL 6013 (4th Cir. 1992) ......................... 13

*Bastys v. Rothschild*, 154 F. App'x 260 (2d Cir. 2005) ............................................................... 10

*Caruolo v. A C & S, Inc.*, No. 93 Civ. 3752, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999) ......... 14

*Caruolo v. John Crane, Inc.*, 226 F.3d 46 (2d Cir. 2000) ............................................................. 14

*Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir. 1989) ..................................................... 13

*Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003 (2d Cir. 1995) ..................................... 13

*Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256 (1979) ..................................... 2

*Edwards v. City of New York*, No. 08 Civ. 2199, 2011 WL 2748665

   (E.D.N.Y. July 13, 2011) ........................................................................................................ 14

*Gonzalez v. Ercole*, No. 08 Civ. 403, 2011 WL 5924443 (S.D.N.Y. Sept. 22, 2011) .................. 11

*Hamilton v. Garlock, Inc.*, 96 F. Supp. 2d 352 (S.D.N.Y. 2000) ................................................. 14

*Kanani v. Phillips*, No. 03 Civ. 2534, 2004 WL 2296128 (S.D.N.Y. Oct.13, 2004) ................... 11

*Mahoney v. Keyspan Corp.*, No. 06 Civ. 0554, 2007 WL 1651853 (E.D.N.Y. 2007) ................. 10

*Manganiello v. Agostini*, No. 07 Civ. 3644, 2009 WL 151724 (S.D.N.Y. Jan. 21, 2009) ............. 1

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) .................................................... 2

*Manning v. Lunda Const. Co.*, 953 F.2d 1090 (8th Cir. 1992) ..................................................... 13

*Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457 (S.D.N.Y. 2003) ......................... 13

*McDonald v. United Airlines, Inc.*, 365 F.2d 593 (10th Cir. 1966) .............................................. 13

*Mileski v. Long Island R.R. Co.*, 499 F.2d 1169 (2d Cir. 1974) ................................................... 13

*Morris v. Hockemeier*, No. 05 Civ. 0362, 2007 WL 1040670 (W.D. Mo. Apr. 3, 2007) .............. 5

*Murphy v. Nat'l R.R. Passenger Corp.*, 547 F.2d 816 (4th Cir. 1977) ......................................... 13

*Nieves v. Fischer,* No. 03 Civ. 9803, 2004 WL 2997860 (S.D.N.Y. Dec. 28, 2004) ................... 11

*Ochoa v. Breslin*, 798 F. Supp. 2d 495 (S.D.N.Y. 2011) ............................................................. 11

*Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420 (S.D.N.Y. 2008) ................................. 13

*Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253 (2d Cir. 1999) .............................................. 12

*Sinkov v. Americor, Inc.*, 419 F. App'x 86 (2d Cir. 2011) .............................................................. 9

*Stanczyk v. City of New York*, No. 11 Civ. 0249, 2013 WL 3208073
   (E.D.N.Y. June 24, 2013) ....................................................................................................... 14

*United States v. Awkard*, 597 F.2d 667 (9th Cir. 1979) ............................................................... 12

*United States v. Castro*, 813 F.2d 571 (2d Cir. 1987) ................................................................... 4

*United States v. Gonzales–Benitez,* 537 F.2d 1051 (9th Cir.1976) ............................................... 5

*United States v. Irving*, No. CR.07-107, 2008 WL 163653 (D.D.C. Jan. 18, 2008) ..................... 5

*United States v. Johnson*, 507 F.3d 793 (2d Cir. 2007) ................................................................ 4

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) .................................................................. 1

*United States v. Nazzaro*, 889 F.2d 1158 (1st Cir. 1989) ............................................................. 6

*United States v. Richter*, 826 F.2d 206 (2d Cir. 1987) ................................................................ 12

*United States v. Spriggs*, 996 F.2d 320 (D.C. Cir. 1993) ............................................................ 12

*United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997) ...................................................... 6

*United States v. Williams*, 585 F.3d 703 (2d Cir. 2009) ............................................................... 3

*Waldron v. Hardwick*, 406 F.2d 86 (7th Cir. 1969) .................................................................... 13

*White v. McKinley*, 605 F.3d 525 (8th Cir. 2010) ......................................................................... 2

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004) ........................................................... 9

*Wolak v. Spucci*, 217 F.3d 157 (2d Cir. 2000) ............................................................................ 10

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 8

Fed. R. Evid. 401 ............................................................................................................................ 1

Fed. R. Evid. 402 ............................................................................................................................ 1

Fed. R. Evid. 403 ....................................................................................................................... 7, 8

Fed. R. Evid. 404 ............................................................................................................................ 5

Fed. R. Evid. 608 ...................................................................................................................... 5, 11

FED. R. EVID. 803 ......................................................................................................................... 11

**Other Authorities**

Restatement (Second) of Torts ........................................................................................................ 2

## ARGUMENT[1]

### A. *The Court Should Exclude Evidence of Third-Party Misconduct*

To be relevant, evidence must tend to prove a fact that "is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). Defendants concede that evidence of misconduct by third parties—including Plaintiff's criminal counsel, the district attorneys, the Westchester medical examiners, and the Peekskill Police Department ("PPD")—would not "sever Stephens and Putnam from the chain of causation." D.E. 694 at 1. In other words, Defendants concede that, so long as Plaintiff proves that Stephens fabricated evidence, conspired to coerce Plaintiff's confession, and/or maliciously prosecuted Plaintiff, the fact that third parties may have *also* engaged in misconduct is no defense. *See* D.E. 691 at 2–8. Thus, whether or not third parties engaged in misconduct is not "of consequence in determining the action"—that is, it is not relevant, Fed. R. Evid. 401, and thus not admissible, Fed. R. Evid. 402.

Despite this concession, Defendants make two arguments for why evidence of third-party misconduct should not only be admitted, but should be permitted to predominate at trial. *See* D.E. 699 at 5 (Plaintiff anticipates affirmative case will take 6 to 8 trial days; Defendants estimate their defense case will take 12 to 16.). Neither has merit.

First, Defendants claim such evidence is necessary to permit the jury "to effectively apportion the fault of the settling parties." D.E. 694 at 1. But as explained in Plaintiff's opposition to Defendants' motion *in limine*, Defendants are not entitled to have the jury limit their liability by apportioning fault. *See* D.E. 695 at 1–14; *see also Manganiello v. Agostini*, No. 07 Civ. 3644, 2009 WL 151724, at *1–3 (S.D.N.Y. Jan. 21, 2009) (holding, in § 1983 malicious

---

[1] Given that this omnibus motion addresses nine separate topics, Plaintiff respectfully requests leave to exceed the Court's usual ten-page limit on reply memoranda.

prosecution case, it was error to submit verdict form to jury that implicitly invited them to apportion liability among defendants, and that each defendant is responsible for the entire damage award: "If the tortfeasors are jointly and severally liable, one tortfeasor is not relieved from liability simply because the other tortfeasor also committed liability-causing actions, nor are the damages against either tortfeasor diminished to his or her proportion of fault." (citing *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260 n.8 (1979))), *aff'd sub nom Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010).[2]

Second, Defendants claim that this three weeks' worth of evidence should be admitted as background for Plaintiff's claims against Stephens: "The misconduct of the released parties is weaved inextricably into the narrative of the case." D.E. 694 at 1. That is not true; Stephens's involvement in coercing Mr. Deskovic's confession on January 25, 1990, and fabricating the "ejaculation statement" can easily be understood without presenting to the jury everything else that happened before and after in the investigation and prosecution. *See, e.g.*, *White v. McKinley*, 605 F.3d 525, 537–38 (8th Cir. 2010) (holding, in § 1983 wrongful conviction case, trial court properly excluded defendant's proffered evidence about "the entirety of the investigation" which was not relevant to the question for the jury: whether defendant violated plaintiff's civil rights). What's more, the parties have already entered into a two-and-a-half page stipulation to provide

---

[2] Citing no law, Defendants also make a policy argument that if the Court does not permit the jury to apportion liability in this case "accused parties generally would be forced into early settlement regardless of their percentage of fault or the merits of the case because the risk of being the last defendant standing would be too great." D.E. 694 at 2. Even if the Court could ignore the law based on such considerations, Defendants' argument makes no sense. "[U]nder traditional tort law, a plaintiff obtaining a judgment against more than one concurrent tortfeasor may satisfy it against any one of them." *Edmonds*, 443 U.S. at 260 n.8 (citing *Restatement (Second) of Torts* § 886 & 886A). As Defendants admit, there is no right to bring a contribution claim under § 1983. *See* D.E. 697 at 1. Thus *whether or not* any concurrent tortfeasors settle, every § 1983 defendant always bears the risk that he may be held liable for the full measure of plaintiff's damages.

2

the jury with relevant background. *See* D.E. 699 at 5–7. Thus, to the limited extent that any such context is needed, the jury will already have it. *See, e.g.*, *United States v. Williams*, 585 F.3d 703, 708 (2d Cir. 2009) (holding district court erred in admitting evidence as background where its omission "would not have left any gaps in the Government's case, nor have left the jury wondering about missing pieces of the story" and the evidence likely confused the jury).

More importantly, Defendants' motion makes clear that their "context" argument is just a backdoor way of arguing for apportionment or a defense based on third-party misconduct[3]—precisely what they cannot do under the law. Plaintiff has a high burden at this trial: he must prove that Stephens fabricated evidence and/or conspired to coerce Mr. Deskovic's confession. Evidence that others engaged in misconduct, too, is simply not relevant to these questions; it neither makes it more likely, nor less likely, that Stephens engaged in misconduct. As Defendants have not articulated any permissible basis for the introduction of this evidence, let alone one that could justify the confusion, waste of time, and prejudice its admission would cause, it should be excluded. *See Arlio v. Lively*, 474 F.3d 46, 52–53 (2d Cir. 2007) (ordering new trial where court abused its discretion by admitting evidence that was not relevant to a material fact—"one that would affect the outcome of the suit under the governing law"—but was prejudicial and confusing) (internal citation omitted).

### B. *The Court Should Exclude the PPD Interrogation Tapes and Police Reports*

To the extent that facts regarding the PPD's investigation prior to January 25, beyond those to which the parties have stipulated for background purposes, are relevant to the upcoming trial, Plaintiff moves to exclude two particular categories of materials—(1) tapes of the PPD's

---

[3] *See, e.g.,* D.E. 694 at 2 ("The plaintiff should not be permitted to both obtain settlements from all other tortfeasors and then completely ignore the actions of those released tortfeasors that also caused his injury. . . . [E]xcluding the actions of any of the released tortfeasors would mislead and confuse the jury into thinking that the polygraph exam was the only factor in plaintiff's incarceration.").

interrogation of Plaintiff in the weeks prior to the January 25 interrogation, and (2) PPD police reports, including reports of the taped interrogations. Although some of the events and information may be discussed at the upcoming trial, the tapes and reports themselves should be deemed inadmissible.

In his opening memorandum, Plaintiff detailed the incomplete and prejudicial nature of the PPD interrogation tapes. *See* D.E. 691 at 10–14 (citing Federal Rule of Evidence 106; *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987); *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007)). In response, Defendants reprise their arguments that misconduct by Peekskill is relevant for apportionment or background, which fail for the reasons stated above. Next, Defendants make the odd assertion that, if the jury finds that Mr. Deskovic learned information about the crime from the PPD and incorporated those details into his statements to Stephens, "the jury could also find that Stephens acted reasonably when he determined that the plaintiff failed the polygraph exams and sought to obtain a confession." D.E. 694 at 8. There is zero evidence in the record—not from Stephens, not from Defendants' polygraph expert—that Mr. Deskovic's regurgitation of details learned from the PPD would give Stephens a basis to find Mr. Deskovic failed the polygraph. And even if there were, the parties have already stipulated that, during their earlier interviews, "the Peekskill police showed Mr. Deskovic crime scene photos and otherwise provided him information about the crime." D.E. 699 at 5–6. Defendants hardly need the tapes to prove that.

The point is that Defendants have offered no reason why admission of the *tapes* themselves is not grossly more prejudicial than probative. To the limited extent that any of the prior interrogations need be discussed, evidence should be elicited through the testimony of the participants: the PPD witnesses and Mr. Deskovic. *See United States v. Gonzales–Benitez*, 537

4

F.2d 1051, 1054 (9th Cir. 1976) (noting that conversation participants may testify as to a conversation's content even if tape itself is inadmissible). This would eliminate the collateral issue of the incompleteness of the tapes as well as undue prejudice to either side.

### C. *The Court Should Exclude Evidence of Stephens's Character*

Defendants concede that, even if Plaintiff contradicts Stephens's account of what happened during the polygraph interrogation and argues that Stephens is misremembering or lying, that does not permit Defendants to introduce evidence of Stephens's good character. *See* D.E. 694 at 5; *see also* D.E. 691 at 14–16. Defendants argue, however, that they may introduce evidence of Stephens's "professionalism" in the form of "letters of commendation issued by the police departments for Stephens' prior and subsequent work." D.E. 694 at 5. Defendants claim that this is not propensity evidence, but rather shows that "Stephens was a qualified investigator whose training, techniques, and procedures had been achieving successful results for years," which gave him a "basis for his belief that his conduct was reasonable." *Id.* at 5.[4]

Defendants' argument makes no sense. First, commendation letters are quintessential character evidence routinely excluded by courts when character is not at issue. *See, e.g.*, *United States v. Irving*, No. CR.07-107, 2008 WL 163653, at *1 (D.D.C. Jan. 18, 2008) (granting motion *in limine* to exclude "awards and commendations" under Rule 404); *Morris v. Hockemeier*, No. 05 Civ. 0362, 2007 WL 1040670, at *3 (W.D. Mo. Apr. 3, 2007) (excluding police officer's "awards and commendations" under Rules 404 and 608).

Second, even if one accepts Defendants' transparent attempt to tie these commendations to Stephens's professionalism and experience, and not his good character, these traits have

---

[4] Defendants do not actually cite the particular letters that they seeks to admit. Without this information, Plaintiff reserves the right to object to each individual letter based on facts unique to that letter. For example, Plaintiff reserves the right to object to such letters as hearsay. *See, e.g.*, *United States v. Barry,* 814 F.2d 1400, 1404 (9th Cir. 1987) (letters of commendation concerning defendant, a naval police lieutenant, properly excludable on hearsay grounds).

5

nothing to do with Plaintiff's claims in this trial, making the letters irrelevant. Plaintiff agrees that Stephens was a well-trained, experienced, professional; the point is that he *intentionally* fabricated and conspired to coerce a confession, not that he did so from lack of training or experience. *See, e.g.*, *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (excluding officer's commendations under Rules 404 and 405 because "'dedication, aggressiveness and assertiveness' in investigating drug dealing and carjacking is neither 'pertinent' to nor an 'essential element' of his supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged"); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) ("Assuming, without deciding, that these [commendations] can be considered 'character evidence' at all, the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the crimes of which Nazzaro stood accused.").

Defendants' final argument—that "[s]ince Stephens had only received positive feedback for his work, he had no reason to believe his technique or the Arther method was deficient," D.E. 694 at 5–6—is a non sequitur. For one thing, Stephens was trained in and employed both the Backster method and the Arther method, and the commendation letters do not indicate which method was employed in any particular case. But more importantly, Plaintiff's claim is not that the Arther method was ineffective at obtaining confessions; quite the contrary. The evidence is that the Arther method is a powerful interrogation tool, but completely unreliable at truth detection. Letters commending Stephens for his success in obtaining confessions during

6

polygraph examinations support Plaintiff's case—by providing evidence of a motive to obtain a confession—rather than Defendants.[5]

### D. *The Court Should Exclude References to McIntyre's Medical Condition*

Plaintiff's opening brief explained why the Court should exclude any reference to former-defendant McIntrye's medical condition in front of the jury as unduly prejudicial. *See* D.E. 691 at 16–18. In response, Defendants present absolutely no factual or legal basis for admitting evidence of medical conditions as a basis for a fuzzy memory, only speculation. *See* D.E. 694 at 6–7. McIntyre's medical condition should be excluded as more prejudicial than probative. Fed. R. Evid. 403.

### E. *The Court Should Exclude References to Arguments or Altercations between Plaintiff and His Family*

In his opening brief, Plaintiff detailed a number of specific questions he was asked at his deposition about physical altercations he had with his family members, and explained why this evidence is more prejudicial than probative. *See* D.E. 691 at 18–19. Defendants oppose Plaintiff's motion to exclude reference to arguments or altercations between Mr. Deskovic and his family or between other family members for two equally confusing reasons.

First, they suggest that because Stephens asked about Plaintiff's family during the polygraph, any evidence regarding Plaintiff's interactions with his family is relevant. D.E. 694 at 7. But Defendants do not even attempt to explain why evidence about these altercations specifically is relevant to the issues for the jury, let alone more probative than prejudicial.

Second, Defendants suggest that because Plaintiff "will likely be portrayed at trial as a fragile and troubled child who was alienated from his family and susceptible to interrogation

---

[5] Indeed, Plaintiff may offer some of the letters commending Stephens for obtaining confessions during polygraph examinations as evidence of Stephens's motive to obtain a confession from Mr. Deskovic. Defendants have not sought to preclude Plaintiff from using any of these letters.

7

techniques," "*any* interaction" between Plaintiff and his family will be crucial. *See* D.E. 694 at 7. But whether or not Plaintiff, his sibling, and his mother ever fought in their family home has no bearing on whether Stephens fabricated the ejaculation statement, or whether the circumstances of the polygraph interrogation overbore the will of Jeff Deskovic at age 16. Although there are numerous factors that go into determining whether a confession is coerced, routine family squabbles are simply not one of them.

Moreover, to the extent that these arguments are minimally probative, they are certainly far more prejudicial. As the deposition transcripts make clear, such questions could only be meant to improperly malign Plaintiff. *See* Fed. R. Evid. 403. The Court should exercise its inherent power to control these proceedings by excluding evidence of, or reference to, arguments or altercations between Plaintiff and his family.

F.  *The Court Should Exclude Proposed Defense Experts as Untimely*

Plaintiff next moved for the Court to exclude three proposed defense experts as untimely Federal Rule of Civil Procedure 26(a)(2)(D)(i), which requires the submission of full expert reports "at least 90 days before the date set for trial." In opposing this motion, Defendants admit, as they must, that they violated this deadline, but argue that their violation should be forgiven because Defendants were "diligent" in their efforts and because "Plaintiff certainly cannot be prejudiced." D.E. 694 at 8, 9.[6]

Defendants' diligence argument borders on frivolous. This case is nearly seven years old. Plaintiff first served expert reports from his liability experts, Charles Honts and Saul Kassin, nearly three years ago, in July and September 2011, respectively. At that time, as Defendants'

---

[6] Two of the experts—Paul Schechtman (legal expert) and Dr. Charles Catanese (forensic pathologist)—relate only to issues of third-party misconduct; the same is true of portions of Larry Danaher's police practices report. Thus if the Court decides that such evidence is not admissible at this trial, the entirety of Mr. Schechtman and Dr. Catanese's testimony, and those portions of Mr. Danaher's testimony, are irrelevant and may be excluded on that basis as well.

8

counsel will concede, there was an agreement that the only additional expert reports that would be produced would be (1) rebuttal reports to Plaintiff's experts and (2) reports from both sides' damages experts. Consistent with this agreement, at the January 16, 2014 scheduling conference, Defendants represented that the only expert reports they would serve would be in rebuttal to Plaintiff's liability and damages experts.

In addition, Defendants have known, since September 2013, *at the latest*, that Stephens and Putnam County were the only remaining defendants. *See* D.E. 623 (9/4/13 Nick Brustin letter to the Court, copying all counsel, discussing Plaintiff's settlement with the Peekskill defendants and requesting a trial date against Stephens and Putnam County). By October 2013, Defendants knew that they would be going to trial on either April 28 or June 23, 2014. *See* 10/31/13 Minute Entry for 10/23/13 Court Proceedings. Defendants are fortunate that the trial was scheduled for June 30, for this date gave them eight full months before trial (October 31, 2013 to June 30, 2014) and five full months to comply with the expert discovery deadlines. Nevertheless, it was not until April 4, 2014, that Defendants first identified their six proposed experts, including the three—forensic pathologist, a legal expert, and a police practices expert—who were not responsive to any of Plaintiff's experts.[7] Plaintiff did not receive these expert reports until April 24, only sixty-eight days before trial. This is not diligence by any stretch of the imagination. *See, e.g.*, *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004)

---

[7] In their recent reply filing, D.E. 697, Defendants point to one case, *Sinkov v. Americor, Inc.*, 419 F. App'x 86 (2d Cir. 2011), as an example of a trial court permitting apportionment of fault at trial in a § 1983 case. As explained in Plaintiff's proposed surreply, *Sinkov* does not support Defendants' request for apportionment here. But given that counsel for Defendants, James Randazzo, represented the two Putnam County employee defendants at the district court in *Sinkov*, that case does show that Defendants must have been aware that apportionment/setoff were potential issues in this case years ago. In fact, the *Sinkov* settlement and apportionment actually occurred while this case was ongoing. Defendants thus have absolutely no excuse for their delay in obtaining experts related to third-party misconduct.

9

(upholding exclusion of experts where "the district court provided [plaintiff] ample opportunity to identify experts and submit expert reports in a timely fashion, . . . [but plaintiff] did not avail herself of these opportunities and instead, chose to identify experts one at a time, in a manner that appeared intended to delay completion of the pre-trial process").

Defendants' second point, that Plaintiff has not been prejudiced, is equally absurd. Plaintiff certainly did make numerous *allegations* against defendants that have now settled, but Plaintiff settled these claims long ago, some as far back at 2010. Plaintiff has not been litigating or preparing for these issues for years. The prejudice that Plaintiff will suffer if these experts are permitted to testify is particularly clear if the Court considers Plaintiff's task in securing rebuttal experts. Because some of these former defendants, including Louis Roh and Peter Insero, have been out of this case for years, Plaintiff will be forced to start from scratch in finding and preparing an expert to respond to Defendants.[8] Exclusion of experts is proper where, "[b]ecause the disclosure came so late, [the opposing party] would have been hard pressed to depose [the opponent's] expert and to find one of their own." *Wolak v. Spucci,* 217 F.3d 157, 159 (2d Cir. 2000); *see also Bastys v. Rothschild*, 154 F. App'x 260, 263 (2d Cir. 2005) (noting opponent's failure to retain own expert, as a result of untimely expert disclosure, as a reason to support exclusion of that expert witness).

---

[8] Defendants cite a single case, *Mahoney v. Keyspan Corp.*, No. 06 Civ. 0554, 2007 WL 1651853 (E.D.N.Y. 2007), in support of their argument that their late experts should be permitted. But *Mahoney* could not be more different from this case and actually makes quite clear the severe prejudice that would result in this case if Defendants' experts are admitted: (1) *Mahoney* involved one late expert; this case involves three. (2) The *Mahoney* expert report was disclosed more than three months before the final pre-trial conference; Defendants here disclosed their experts only 68 days before trial. (3) The *Mahoney* plaintiff had *already retained its own expert* at the time of disclosure; Plaintiff in this case would need to find, hire, and bring up to speed three different responsive experts.

The Court should enforce the clear deadlines set by the Federal Rules and should exclude Defendants' police practices, forensic pathologist, and legal malpractice lawyers as untimely.

## G. *The Court Should Hold the New York Times Clip to be Admissible*

Plaintiff should be permitted to play the 2007 *New York Times* clip for the jury because the video captures Mr. Deskovic's "then-existing state of mind . . . or emotional, sensory, or physical condition." Fed. R. Evid. 803(3).[9] The clip would assist the jury by providing a contemporaneous description by Mr. Deskovic, in his own words, of his struggles to adjust to life after release from wrongful incarceration.

Defendants' only argument against the clip's admissibility is that the clip will somehow improperly bolster Plaintiff's own testimony regarding "any and all difficulties adjusting to non-incarcerated life." D.E. 694 at 10. First, the clip is not bolstering evidence at all, it is independent evidence of Mr. Deskovic's state of mind right after his release—a period of time for which he is entitled to damages. But even it if were bolstering, that would not be a basis to exclude it. As courts in this district have repeatedly made clear, although "the practice of *bolstering* is prohibited in various states, including New York, it is not forbidden by the Federal Rules of Evidence." *E.g.*, *Ochoa v. Breslin*, 798 F. Supp. 2d 495, 505-06 (S.D.N.Y. 2011) (emphasis added) (citing *Nieves v. Fischer,* No. 03 Civ. 9803, 2004 WL 2997860, at *7 (S.D.N.Y. Dec. 28, 2004); *see also Gonzalez v. Ercole*, No. 08 Civ. 403, 2011 WL 5924443, at *17 (S.D.N.Y. Sept. 22, 2011) (same) *R&R adopted*, 2011 WL 5924431 (S.D.N.Y. Nov. 28, 2011); *Kanani v. Phillips*, No. 03 Civ. 2534, 2004 WL 2296128, at *21 (S.D.N.Y. Oct.13, 2004) (same, collecting cases). Although the Federal Rules of Evidence prohibit specific species of bolstering, such as admitting good character evidence before character is attacked, *see* Fed. R. Evid. 608; *see, e.g.*,

---

[9] Indeed, Defendants do not argue that the clip does not qualify as a present-sense impression. *See* D.E. 694 at 10–11.

11

*United States v. Spriggs*, 996 F.2d 320, 323 (D.C. Cir. 1993) (making such an argument); *United States v. Awkard*, 597 F.2d 667, 670 (9th Cir. 1979) (same), Defendants make absolutely no suggestion that the clip violates any of these specific rules.

The clip is clear relevant and powerful evidence of Plaintiff's damages. It will assist the trier of fact in attempting to understand and quantify a situation that most of us could not otherwise imagine. The Court should admit the clip.

**H.** *The Parties Have Agreed Regarding Adverse Witnesses*

The Parties agree that Plaintiff may treat any witness who was a former defendant as an adverse or hostile witness under Federal Rule of Evidence 611(c). *See* D.E. 691 at 22–23; D.E. 694 at 11.

**I.** *The Court Should Permit Plaintiff's Proposed Arguments Regarding Damages*

Plaintiff's final motion *in limine* expressed counsel's intention: (1) "to request that the jury award a specific, total dollar amount for pain and suffering damages and for economic harm;" and (2) "to suggest unit-of-time metrics for the jury to calculate damages; "[f]or example, [to] ask the jury to imagine what amount of damages Plaintiff would have traded for one day in prison, one month, and one year [of wrongful incarceration]."[10]

Defendants concede that the rule in the Second Circuit is that counsel are afforded wide latitude in formulating their arguments to the jury. *See* D.E. 694 at 11; *see also Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253, 271 (2d Cir. 1999); *United States v. Richter*, 826 F.2d 206, 209 (2d Cir. 1987). Defendants also concede both that Plaintiff does "not propose a direct violation of the 'Golden Rule,'" and that the Second Circuit has "specifically rejected a per se rule

---

[10] Plaintiff also requested "[a]t a minimum, . . . [to] ask the jury to award separate amounts for *past* pain and suffering, and *future* pain and suffering." *See* D.E. 691 at 24. Defendants do not respond to this request. *See* D.E. 694 at 11–12.

12

prohibiting counsel from suggesting specific amounts during closing arguments." D.E. 694 at 11. Nevertheless, Defendants request that the Court bar Plaintiff from making any argument to the jury suggesting specific dollar amounts or unit-of-time metrics.

Defendants' brief cites *no* authority for excluding unit of time arguments, and does not respond to the myriad cases, cited in Plaintiff's motion, sustaining such arguments. *See* D.E. 691 at 27 (citing *Manning v. Lunda Const. Co.*, 953 F.2d 1090, 1093 (8th Cir. 1992); *Barnwell v. Barber-Colman Co.*, 953 F.2d 637, 1992 WL 6013, at *2 (4th Cir. 1992); *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 377 (5th Cir. 1989) (citing *Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1174 (2d Cir. 1974)); *Murphy v. Nat'l R.R. Passenger Corp.*, 547 F.2d 816, 818 (4th Cir. 1977); *Waldron v. Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969); *McDonald v. United Airlines, Inc.*, 365 F.2d 593, 595 (10th Cir. 1966)). Nor can Defendants respond to the fact that courts in this circuit have specifically approved of arguments asking the jury to "imagine" what the plaintiff experienced, because such remarks "invite[] the jury to focus on the gravity of plaintiff's injuries, but d[o] not tell the jurors directly or implicitly that they should award plaintiff the sum of damages that they themselves would desire if they found themselves 'in the plaintiff's shoes.'" *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 431–32 (S.D.N.Y. 2008)[11]; *see also Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 465 (S.D.N.Y. 2003).

Defendants do more to oppose Plaintiff's request to argue that the jury award a specific, total dollar amount for pain and suffering damages. Although there is language from the Second Circuit noting that specifying damages may be "disfavored," *see Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), district courts in this Circuit have continued to permit such arguments. *See, e.g.*, *Stanczyk v. City of New York*, No. 11 Civ. 0249, 2013 WL

---

[11] Indeed *Okraynets*, which supports Plaintiff's "imagine" request, is the only case cited by Defendants in their explanation of the "Golden Rule." *See* D.E. 694 at 11.

3208073, at *5 (E.D.N.Y. June 24, 2013); *Edwards v. City of New York*, No. 08 Civ. 2199, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011); *Hamilton v. Garlock, Inc.*, 96 F. Supp. 2d 352, 356 (S.D.N.Y. 2000); *Caruolo v. A C & S, Inc.*, No. 93 Civ. 3752, 1999 WL 147740, at *16 (S.D.N.Y. Mar. 18, 1999), *aff'd in relevant part sub nom. Caruolo v. John Crane, Inc.*, 226 F.3d 46, 57 (2d Cir. 2000). This has become the common-place approach because courts are able to avoid any undue prejudice by instructing the jury that counsel's arguments are not evidence, and that any damages verdict must be based on evidence. *See, e.g.*, *Hamilton*, 96 F. Supp. 2d at 356 (noting that "instruction was given to the jury in keeping with the Second Circuit's more recent pronouncements on the subject"); *Caruolo*, 1999 WL 147740, at * 16 ("In this case, the jury was cautioned that the numbers suggested were simply that, a suggestion, which it was free to disregard."). Plaintiff's counsel seeks permission from the Court to make the requested damages arguments to the jury.

Dated: May 8, 2014						Respectfully submitted,

								/s/ Anna Benvenutti Hoffmann
								Nick Brustin
								Anna Benvenutti Hoffmann
								Emma Freudenberger
								Aaron Scherzer
								Farhang Heydari
								Neufeld Scheck & Brustin, LLP
								99 Hudson St, 8th Floor
								New York, NY 10013
								Tel: (212) 965-9081
								Fax: (212) 965-9084

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and accurate copy of *Plaintiff's Reply Memorandum in Support of Plaintiff's Omnibus Motion in Limine* was served via ECF on May 8, 2014 upon all parties of record.

                /s/ Farhang Heydari
                Farhang Heydari
                *Attorney for Plaintiff*
                *Jeffrey Deskovic*