# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
:
**JEFFREY DESKOVIC,**                            :
                                                 :
    **Plaintiff,**                              :
                                                 :
       **v.**                               :
                                                 :
**CITY OF PEEKSKILL, PUTNAM COUNTY,**            :
**WESTCHESTER COUNTY, DAVID LEVINE,**    :     **No. 07-CV-8150 (KMK)**
**THOMAS MCINTYRE, WALTER**                      :
**BROVARSKI, EUGENE TUMOLO, JOHN**               :
**AND JANE DOE SUPERVISORS, DANIEL**             :
**STEPHENS, LOUIS ROH, MILLARD**                 :
**HYLAND, PETER INSERO, and LEGAL AID**          :
**SOCIETY OF WESTCHESTER COUNTY**                :
                                                 :
    **Defendants.**                            :
                                                 :
_____  :

## AMENDED

## JOINT PRE-TRIAL ORDER

1

I.  **Names, Addresses, and Contact Information of Trial Counsel**

    A.  **Plaintiff's Counsel**

        Nick Brustin
        Anna Benvenutti Hoffmann
        Emma Freudenberger
        Farhang Heydari

        Neufeld Scheck & Brustin, LLP
        99 Hudson Street, 8th Floor
        New York, NY 10013
        nick@nsbcivilrights.com
        anna@nsbcivilrights.com
        emma@nsbcivilrights.com
        farhang@nsbcivilrights.com
        (o) (212) 965-9081
        (f) (212) 965-9084

    B.  **Counsel for Defendant Daniel Stephens & Putnam County**

        Stephen Wellinghorst
        Michael Chipko

        Harwood Lloyd, LLC
        350 Fifth Avenue, 59th Floor
        New York, NY 10118
        swellinghorst@harwoodlloyd.com
        mchipko@harwoodlloyd.com
        (o) (212) 268-5I36
        (f) (212) 324-1198

        James Randazzo

        Gaines, Novick, Ponzini, Cossu & Venditti, LLP
        11 Martine Avenue, 8th Floor
        White Plains, New York 10606
        jrandazzo@gainesllp.com
        (o) (914)288-9595
        (f) (914)288-0850

## II.    Subject Matter Jurisdiction

Both Parties agree that this Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiff's claims arising under 42 U.S.C. § 1983, and has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367(a).

## III.    Summary of Claims & Defenses

### A.    Plaintiff Jeffrey Deskovic's Claims (Third Amended Complaint [Dkt. No. 268])

*The following claims by Plaintiff Jeffrey Deskovic remain to be tried:*

(1)    42 U.S.C. § 1983 claim for deprivation of liberty without due process of law and denial of a fair trial as a result of fabrication of evidence, against Defendant Daniel Stephens (Count II)

(2)    42 U.S.C. § 1983 claim for malicious prosecution, against Defendant Daniel Stephens (Count IV)

(3)    42 U.S.C. § 1983 claim for civil rights conspiracy, against Defendant Daniel Stephens (Count IX)

(4)    State law malicious prosecution, against Defendant Daniel Stephens (Count XII)

(5)    State law respondeat superior claim, against Putnam County (Count XVI)

*The following claims by Plaintiff have been dismissed and will not be tried:*

(1)    42 U.S.C. § 1983 claim for violation of Mr. Deskovic's right against self-incrimination and to a fair trial (Count I)

(2)    42 U.S.C. § 1983 violation of rights of access to courts and executive clemency (Count III)

(3)    42 U.S.C. § 1983 claim for conduct that shocks the conscience (Count V)

(4)    42 U.S.C. § 1983 claim for supervisory liability against PPD Supervisors (Count VI)

(5)    42 U.S.C. § 1983 claim for supervisory liability against Chief Medical Examiner Hyland (Count VII)

(6)    42 U.S.C. § 1983 claim for failure to Intercede (Count VIII)

(7)    42 U.S.C. § 1983 claim against the City of Peekskill (Count X)

(8)    42 U.S.C. § 1983 claim against Westchester County (Count XI)

(9)    State law claim for intentional or reckless infliction of emotional distress (Count XIII)

(10)    State law claim for negligent infliction of emotional distress (Count XIV)

(11)    State law respondeat superior claim against the City of Peekskill (Count XV)

(12)    State law respondeat Superior claim against Westchester County (Count XVII)

(13)    State law claim for legal malpractice against Peter Insero (Count XVIII)

(14)    State law respondeat superior claim against the Legal Aid Society of Westchester County (Count XIX)

**B.      Defendants' Defenses** (March 29, 2010 Stipulation and Order [Dkt. No. 275]

*The following defenses by Defendants Daniel Stephens and Putnam County remain to be tried:*

> (1) Right to setoff prior settlements under 42 U.S.C. § 1983 and § 1988.
> (2) Right to setoff prior settlements under New York General Obligations Law § 15-108.
> (3) Plaintiff's fabrication of evidence claim is barred by the statute of limitations.
> (4) Daniel Stephens is entitled to qualified immunity.
> (6) Plaintiff fails to establish a claim against Daniel Stephens under 42 U.S.C. § 1983.
> (7) To the extent Plaintiff suffered any constitutional violations, such violations were caused by third parties and not Daniel Stephens or Putnam County.

*The following defenses by Defendants have been dismissed and will not be tried:*

> (1) Failure to state a claim against all named defendants upon which relief can be granted.
> (2) Plaintiff was contributorily negligent.
> (3) Plaintiff caused or contributed to culpable conduct.
> (4) Assumption of risk.
> (5) Failure to mitigate.
> (6) All risks were obvious, apparent and readily assumed by Plaintiff.
> (7) Failure to join necessary parties.
> (8) Plaintiff's non-economic damages are barred by applicable law.
> (9) Defendants are entitled to contribution under C.P.L.R. Article 14.
> (10) Defendants are entitled to limit liability under C.P.L.R. Article 16.
> (11) Defendants are entitled to absolute immunity.
> (12) Plaintiff's claims are barred by res judicata/collateral estoppel.
> (13) Plaintiff has failed to pursue administrative or state remedies.
> (14) Plaintiff's damages were caused or contributed by professional malpractice of the attorneys representing Plaintiff for possible *habeas corpus* petition.
> (15) Plaintiff failed to comply with requirements of General Municipal Law 50-e et seq.

IV.     **Jury Trial Statement**

Plaintiff has demanded a jury trial and tentatively anticipates that Plaintiff's case will take 4 to 6 trial days.

Defendants have demanded a jury trial and tentatively anticipate the Defendants' case will take 4 to 6 trial days.

V.      **Trial By Magistrate Judge**

The Parties do not consent to trial of this case by a magistrate judge.

VI.     **Stipulations of Fact**

A.      **Opening Statement of Background Facts, to Be Read to the Jury by the Court Prior to Counsel's Opening Statements.**[1]

I will now read you a statement of facts that has been stipulated to by both sides. A stipulation is an agreement between the Parties that you *must* accept as true. This particular stipulation is meant to provide you with background regarding the events that will be at issue in this trial.

On the afternoon of Wednesday, November 15, 1989, Angela Correa,[2] a fifteen-year-old sophomore at Peekskill High School, left her home alone after school. Sometime after 3:30 p.m., Ms. Correa was raped and murdered. Semen was found inside her body.

Ms. Correa's partially clothed body was found two days later, on the morning of Friday November 17, 1989. Peekskill Police, including Detectives Thomas McIntyre and David Levine, were assigned to investigate the rape and murder.

When, less than two weeks after the body was found, the Peekskill Police had failed to develop evidence linking the crime to any suspect, they focused their attention on Plaintiff Jeffrey Deskovic. Mr. Deskovic was a barely 16-year-old classmate of Angela Correa who had never before had any involvement in the criminal justice system. Mr. Deskovic came to police attention because he had seemed overly distraught at Ms. Correa's wake. In addition, the Peekskill Police obtained a criminal profile of the perpetrator, and Mr. Deskovic matched at least some of the characteristics: he was a white teenager, who knew the victim, was less than 5'10" tall, was unsure around females, dressed casually, and did not have a car.

Over the next two months, the Peekskill police interviewed Mr. Deskovic on at least four occasions, for many hours. Because Mr. Deskovic had no involvement in the crime, he did not

---

[1] This stipulation was agreed to by the parties in the original JPTO. *See* Dkt. No. 699.

[2] Subject to the Court's approval, the Parties have agreed to use Ms. Correa's full name at the trial.

have any actual knowledge of details of the crime. During these interviews, the Peekskill police showed Mr. Deskovic crime scene photos and otherwise provided him information about the crime. No witnesses or forensic evidence linked Mr. Deskovic to the crime.

On January 11, 1990, the Peekskill police sent samples from Jeffrey Deskovic and from the victim's rape kit to the FBI lab for DNA testing to determine if Mr. Deskovic was the source of the semen found in the victim. The Peekskill Police expected this testing to incriminate or exonerate Mr. Deskovic, but the results would not come back for several weeks.

At this time, the Peekskill police sought to arrest Mr. Deskovic based on their unreasonable belief that Mr. Deskovic had committed the crime. The district attorney assigned to the case, however, advised them that they could not make an arrest.

On January 25, 1990, the Peekskill police took Jeffrey Deskovic 40 minutes away to the Brewster, New York office of Putnam County Sheriff's Department Investigator Daniel Stephens for a polygraph examination and interrogation. The parties dispute what occurred during the time that Mr. Deskovic was in Mr. Stephens's office in Brewster.

However, it is not disputed that, at the end of that day, Jeffrey Deskovic made false admissions to Detective McIntyre in Stephens's office concerning the rape and murder of Angela Correa. Jeffrey Deskovic was immediately arrested at Stephens's office, and was indicted on February 1, 1990.

On March 2, 1990, the police and prosecutor, George Bolen, learned that the FBI's DNA testing had excluded Deskovic as the source of the semen found in Ms. Correa's body.

Jeffrey Deskovic was tried in November and December 1990. No eyewitnesses or forensic evidence linked Mr. Deskovic to the crime. Evidence offered to link Mr. Deskovic to the rape and murder included statements attributed to him, including the false admissions made to Detective McIntyre in Mr. Stephens's office on January 25, 1990. At trial, the prosecutor tried to explain why Mr. Deskovic's semen was not at the scene, arguing to the jury that Ms. Correa had sex with a consensual partner, who ejaculated, and was then raped and murdered by Mr. Deskovic, who did not ejaculate. We now know that this was false, and that at the time of the attack, Ms. Correa was a virgin.

On December 7, 1990, Jeffrey Deskovic was convicted of rape and murder and sentenced to 15 years to life.

In 2006, sixteen years after Mr. Deskovic wrongful arrest, additional DNA testing was conducted on the semen samples obtained from Angela Correa's body. The results of this testing were compared against the FBI's Combined DNA Index System, which contains individual DNA profiles of convicted offenders from across the country. That search yielded a match with the DNA profile of Steven Cunningham, who at the time was serving a life sentence for sexually assaulting and murdering another Peekskill woman three years after Ms. Correa's murder.

In the presence of his lawyer, Cunningham confessed to raping and murdering Angela Correa. He testified in court under oath that he had acted alone and that he had never met nor had any contact with Mr. Deskovic.

On the day of Ms. Correa's murder, Steven Cunningham, a 30-year-old African American stranger, was using crack/cocaine in the woods. He violently attacked Ms. Correa in the woods behind the school, raped her, and strangled her to death. During the rape, Cunningham ejaculated inside Ms. Correa.

On September 20, 2006, based on a joint application by Mr. Deskovic and the Westchester County District Attorney, Mr. Deskovic's conviction was vacated on the ground of actual innocence. Jeffrey Deskovic was released from prison that same day, after being wrongfully imprisoned for over 16 years.

The parties in this case, both Plaintiff and Defendants, agree that Cunningham was in fact the person who raped and murdered Angela Correa on November 15, 1989, and that Mr. Deskovic had no involvement in these crimes. In other words, it is undisputed that Mr. Deskovic is actually innocent of the rape and murder of Angela Correa and had no knowledge of by whom or how those crimes were committed.


### B. Stipulation Regarding Prior Settlements, to Be Read to the Jury By the Court Prior to Opening Statements[3]

Plaintiff Jeffrey Deskovic originally filed this suit against several defendants, including some of the Peekskill police officers who will testify during this trial. Those other defendants are no longer part of this case because they have settled.

You should not concern yourself with the identity of the settling defendants, nor should you concern yourself with the amount of any settlements, or speculate as to the meaning of these settlements.

Your role is to evaluate the liability of Defendants Daniel Stephens and Putnam County without regard to the settlement of any former defendants. Should you find that Mr. Deskovic has proven one or more of his claims against Defendant Stephens and/or Putnam County, you should determine the total amount of damages that Mr. Deskovic has suffered, without regard to any prior settlements.

It will be my role to address the impact of prior settlements, so you should not decrease or increase your damages calculations in any way based on prior settlements.

---

[3] The Parties submitted this stipulation to the Court by letter on June 10, 2014. *See* Dkt. No. 712.

C.      **Stipulation Regarding Psychiatric Testimony**[4]

*The parties agree that if the parties' respective psychiatric experts were to testify, their testimony would establish the following*:

Mr. Deskovic suffers Posttraumatic Stress Disorder with Dissociative Symptoms.  He also suffers from Unspecified Depressive Disorder. These disorders relate to the circumstances surrounding his arrest in 1990 and his subsequent incarceration.

Following his arrest in 1991, then sixteen-year-old Mr. Deskovic attempted suicide multiple times on account of anxiety and depression related to his upcoming trial.

During his incarceration, Mr. Deskovic suffered extreme and repeated trauma.  He feared being attacked, was assaulted on more than one occasion, and witnessed other inmates being assaulted, among other harms. After his exoneration in 2006, Mr. Deskovic experienced difficulty adjusting to life outside of the community. He experienced anxiety, panic attacks, depressed mood, avoidance of stimuli that reminded him of prison experiences, avoidance of police, intrusive thoughts, disturbed sleep and nightmares, detachment from others, distrust of others, derealization, depersonalization, social skills deficits, loneliness, and occasional suicidal ideas. Having adapted to the controlled environment of prison, he often feels that the world around him is moving at a faster pace than he is.

Mr. Deskovic has tried to use his personal trauma in positive ways to help others, through education and advocacy work around the criminal justice system.  But since his release, Mr. Deskovic has felt socially stunted.  Although he does well in front of audiences professionally, he has difficulty being assertive in social situations and communicating his romantic interests towards women.  He has had difficulty forming friendships, because he feels like a teenager mentally.  He also feels there is a stigma attached to him due to his time in prison, which he views as an obstacle to developing relationships with others.  As a result, he struggles with loneliness and depression.

Mr. Deskovic's inability to connect emotionally with others makes him feel as if he is still imprisoned. He feels that his identity has been defined by his prison experience.  Thinking about the sixteen years he spent in prison makes him feel disoriented, sad and frustrated.  He has attempted to cope with these feelings through his advocacy work; obtaining a master's degree in criminal justice and using his story to advocate for change in the criminal justice system.  He finds this work cathartic.

Mr. Deskovic experienced panic attacks once every three days after his release from prison; he currently experiences panic attacks once every six or seven days. Due to his prison experience, where violence would often occur in large informal gatherings and in unorganized crowded prison areas, it is difficult to be in unorganized crowds today.

Mr. Deskovic has received psychotherapy for his symptoms, which has been partially helpful.  However, his ongoing suspicion and distrust of others appears to interfere with his continued

---

[4] The Parties submitted this stipulation to the Court by letter on June 10, 2014. *See* Dkt. No. 712.

psychotherapy, as he views therapists as being unrealistic in efforts to have him view his real circumstances differently. Mr. Deskovic's advocacy activities appear to have provided a significant contribution to his overall improvement, as his ability to interact with others and his decreased awareness of psychological stressors during those times has provided some relief.

While psychotherapy has been helpful in reducing some of Mr. Deskovic's symptoms, there is likely a limit to which psychotherapy can completely address his impaired social development that would have naturally developed during the normal course of transitioning from adolescence into adulthood.  Although he has done everything he can to cope with the trauma he has endured, his prognosis for recovery is guarded.

### D.      Stipulation Regarding the Testimony of Peter Insero[5]

Peter Insero was Jeffrey Deskovic's attorney in the 1990 criminal trial where Mr. Deskovic was convicted for the rape and murder of Angela Correa. Mr. Insero is also a former defendant in this case. Mr. Deskovic sued Mr. Insero for, among other things, his ineffective preparation for and presentation at Mr. Deskovic's criminal trial. Mr. Insero has settled those claims and is no longer a defendant.

The parties agree that if Mr. Insero were called to testify he would testify as to the following:

In 1990, Mr. Deskovic told Mr. Insero that he wanted to testify in his own defense.  Mr. Insero encouraged Mr. Deskovic not to take the stand for several reasons: First, Mr. Insero felt that a Westchester County jury would not believe 16-year-old Jeff's allegations of police misconduct absent direct proof. Second, Mr. Insero felt that emotionally fragile, 16-year-old Jeff "was not on the same intellectual level as [District Attorney] Bolen," and might not "withstand" "a grueling cross-examination of a very experienced prosecutor." Finally, Mr. Insero had never, in his career, put a defendant on the stand against District Attorney Bolen, even clients who were telling the truth.

At Mr. Insero's direction, Mr. Deskovic ultimately agreed not to testify.

Mr. Insero also made a decision not to challenge the Peekskill police officers or Mr. Stephens on feeding facts, coercing a confession, or fabricating evidence, including the ejaculation statement, for similar reasons.

Mr. Insero does not even recall if he ever asked Mr. Deskovic about any of the facts that were allegedly fed to him or fabricated, including the ejaculation statement.

Mr. Insero thinks he recalls that Mr. Stephens alleged at trial that on January 25, 1990 Mr. Deskovic said "I don't know if [the killer] ejaculated," and also thinks he recalls that statement was an important part of the case.

---

[5] This is a new stipulation agreed to by the Parties.

Mr. Insero does not recall whether he ever asked Mr. Deskovic whether Mr. Deskovic made the ejaculation statement or whether the ejaculation statement was fabricated.

Mr. Insero does recall Mr. Deskovic telling him that during the January 25, 1990 interrogation that Mr. Deskovic feared for his safety, and has some recollection that Mr. Deskovic told him that Detective McIntyre said something about having "one more bullet in the gun."

During his closing remarks in the criminal trial, Mr. Insero never argued that any of the non-public facts were fed to Jeff by the police or that any of the evidence was fabricated, including the ejaculation statement.


**VII.    Stipulations of Law**

    **A.    Section 1983 Claims:**

Plaintiff contends that the jury does not need to be charged regarding the generic elements of a claim under 42 U.S.C. § 1983. Plaintiff contends that such a charge would be unnecessarily confusing and duplicative of the elements of Plaintiff's particular § 1983 claims (such as fabrication of evidence). Defendants consent to this request.

Should the Court decide to charge the jury on the elements of a § 1983 claim, the Parties stipulate that at all relevant times, Defendant Stephens acted under color of state law, and that therefore this element has been met.

    **B.    Plaintiff's Fabrication Claim**

The Parties stipulate that the following element of Plaintiff's § 1983 claim for fabrication of evidence has been met:

- The ejaculation statement was forwarded to the prosecutors.

    **C.    Plaintiff's State Law Malicious Prosecution Claim**

The Parties stipulate that the following element of Plaintiff's state law claim for malicious prosecution has been met:

- The criminal proceedings against Mr. Deskovic terminated in his favor.

    **D.    Plaintiff's State Law Respondeat Superior**

The Parties stipulate that at all relevant times, Defendant Stephens was acting within the course and scope of his employment with Putnam County. Therefore, if Defendant Stephens is found liable on Plaintiff's malicious prosecution claim, then the Parties agree that Defendant Putnam County is liable under respondeat superior.

E.      **Plaintiff's Federal Law Malicious Prosecution Claim**

The Parties stipulate that if the jury finds Defendant Stephens liable for malicious prosecution under state law, then Defendant Stephens is also liable for malicious prosecution under federal law.

**VIII.  <u>Witnesses</u>**

A.      **Plaintiff's Witness List:**[6]

1.      Jeffrey Deskovic
2.      Daniel Stephens
3.      Thomas McIntyre (by deposition)
4.      David Levine (by deposition)
5.      Eugene Tumolo
6.      George Bolen (by deposition)
7.      Peter Insero (by stipulation)
8.      Dr. Charles Honts

9.      Janet Fortier[7]
10.     Richard Blassberg
11.     Nina Morrison
12.     Shelley Alkins
13.     William Lopez
14.     Eric Glissen
15.     Carol Hillman
16.     Richard Scorzelli
17.     Sean Bush
18.     Falon Davis
19.     Kevin Barrett
20.     Michael T. Roberts
21.     Rebecca Greer Hart
22.     Jeff Gray

B.      **Defendants' Witness List:**

1.  Daniel Stephens
2.  Jeffrey Deskovic
3.  George Bolen  (by deposition)
4.  Thomas McIntyre (by deposition)
5.  David Levine (by deposition)

---

[6] Depending on the Court's rulings regarding the pending motions *in limine*, Plaintiff reserves the right to designate additional witnesses.

[7] Plaintiff does not intend to call all of these damages witnesses to testify at trial. Plaintiff is in the process of narrowing this list and will notify Defendants and the Court as soon as possible.

      6.  Eugene Tumolo
      7.  Peter Insero (by stipulated testimony)

## IX.   Deposition Designations

**A.**    **Plaintiff's Designations:** Plaintiff designates the following deposition testimony, subject to redaction and additional designations pending rulings on *in limine* motions and objections.

- **Thomas McIntyre (Medically Unable to Testify)**

  September 11, 2009 Deposition
  30:8–11, 49:18–51:10, 50:18–51:10, 74:14–18, 95:23–96:5, 104:22–105:11, 133:12–16, 135:25–136:6,

  March 23, 2011 Deposition
  138:21–139:4,

  June 15, 2011 Deposition
  167:22–168:4, 168:20–24, 169:22–170:8, 170:9–17, 171:25–173:4, 173:10–21, 183:17–25, 223:15–224:3,

  June 17, 2011 Deposition
  313:11–18, 319:5–18, 319:19–320:8, 320:9–17, 320:9–321:4, 321:16–18, 321:23–322:5, 323:5–12, 323:13–21, 326:20–327:9, 339:8–16, 341:8–11, 341:24–342:8, 342:11–22, 343:19–344:9, 351:4–23, 352:22–353:10, 376:8–15, 380:16–19, 381:24–382:11, 383:5–10, 384:5–11, 392:5–15, 393:3–19,

  June 20, 2011 Deposition
  517:25–518:14, 522:9–23,

  June 22, 2011 Deposition
  549:20–550:11, 552:4–8, 560:9–19, 561:22–564:2, 564:3–9, 564:16–25, 565:2–12, 565:7–566:23, 565:20–566:18, 583:21-584:16, 585:8–19, 588:11–18, 589:2–590:2, 591:21–593:2, 593:3–593:13

- **David Levine (Unavailable, Out of the District)**

  August 8, 2009 Deposition
  7:22–9:20, 13:16–22, 44:21–45:13, 46:15–20, 51:13–17, 125:22–126:18, 143:23–144:5, 146:13–25, 170:4–9,

January 12, 2010 Deposition
439:3-442:16, 445:2-448:3, 453:16-455:7, 458:13-460:22,

August 3, 2010 Deposition
564:8–17, 621:3–623:24, 821:9–822:14, 827:17–829:16, 846:22–848:23

- **George Bolen (Unavailable, Out of the District)**

    July 30, 2010 Deposition
    274:17–275:5, 274: 12–16,

    January 18, 2011 Deposition
    320:13–16, 340:1–24, 421:17–423:10, 427:11–21, 440:5–23, 449:22–
    450:11, 452:5–11, 453:13–15, 453:24–457:23, 458:24–459:4, 467:16–
    468:13, 472:20–473:5, 493:8–494:4, 543:20–544:2,

    March 3, 2011 Deposition
    701:1–11, 850:16–851:15

B. **Defendants' Designations:** Depending on the Court's rulings regarding the
pending motions *in limine*, Defendant reserves the right to designate additional
deposition testimony.[8]

- **Thomas McIntyre (Medically Unable to Testify)**

    September 11, 2009 Deposition
    12:20-13:25, 27:17-32:4. 33:13-36:8, 38:9-39:3, 41:16-42:8, 49:4-51:10,
    61:8-22, 70:22-73:19, 74:6-18, 104:22-105:16, 125:16-126:9, 133:12-16,
    135:25-136:15, 144:24-145:18

    March 23, 2011 Deposition
    12:22-13:25, 53:16-54:10, 73:23-74:13, 76:21-77:14, 83:7-25

    June 15, 2011 Deposition
    163:21-25, 165:4-20, 172:21-173:15, 225:13-21, 226:11-17, 234:20-235:8,
    266:7-268:20

    June 17, 2011 Deposition
    311:11-315:7, 316:3-317:3, 318:2-320:14, 322:11 – 323:21, 343:19-
    344:25, 353:17-354:12, 387:21-389:23, 397:16-22

    June 20, 2011 Deposition
    515:17-518:6

---

[8] The parties agree that further designations shall be permitted.

<u>June 22, 2011 Deposition</u>
558:22-570:11, 583:21-593:13

- **David Levine (Unavailable, Out of the District)**

  <u>August 8, 2009 Deposition</u>
  7:22–9:20, 13:16–22, 44:21–45:13, 46:15–20, 51:13–17, 125:22–126:18, 143:23–144:5, 146:13–25, 170:4–9

  <u>January 12, 2010 Deposition</u>
  439:3-442:16, 445:2-448:3, 453:16-455:7, 458:13-460:22

  <u>August 3, 2010 Deposition</u>
  564:8–17, 621:3–623:24, 821:9–822:14, 827:17–829:16, 846:22–848:23

- **George Bolen (Unavailable, Out of the District)**

  <u>July 30, 2010 Deposition</u>
  274:17–275:5

  <u>January 18, 2011 Deposition</u>
  320:14–16, 340:1–24, 421:17–423:10, 423:21–424:13, 425:1–426:25, 427:1–432:23, 433:18–434:16, 437:13–439:23, 440:5–441-24, 446:5-21, 449:22–450:11, 452:4–453:15, 453:24–457:23, 458:24–459:4, 460:11-24, 463:2–468:13, 471:23–474:22, 493:7–494:4, 512:24-513:1, 514:7-514:19, 515:9-515:16, 543:20–544:6; 556:5–18

  <u>March 3, 2011 Deposition</u>
  701:1–11, 833:5–834:6, 835:2–14, 840:21–841:14, 844:22–851:15, 852:21-855:11, 944:5-945:23, 947:10-950:2, 951:20-23, 955:1–4, 955:21-957:9

## X.    <u>Exhibit Lists</u>

### A.    **Plaintiff's Exhibits**[9]

---

[9] Depending on the Court's rulings regarding the pending motions *in limine*, Plaintiff reserves the right to designate additional exhibits. Furthermore, Plaintiff does not waive objections to any exhibits on this list and reserves the right to offer any exhibit listed on Defendants' exhibit list.

| Ex # | Description | Stipulated | Defense Objections [10] | Evid. |
|---|---|---|---|---|
| \* Denotes no party objects on grounds of authenticity | | | | |
| \*\* Denotes no party objects on any grounds | | | | |
| P1. | ADA Handwritten Notes regarding evidence to arrest Jeffrey Deskovic | * | FRE 401/402, 403, 802 | |
| P2. | 1/11/90 Letter from Tumolo to FBI | * | | |
| P3. | 1/25/90 Arrest Report | * | | |
| P4. | Putnam Report From Stephens to James Engle re Richard Harrington Polygraph Examination | * | FRE 401/402, 403 | |
| P5. | 1/14/91 Memo from Bolen to Putnam | * | FRE 401/402, 403 | |
| P6. | 2/6/90 Memo from Tumolo to Putnam | * | FRE 401/402, 403 | |
| P7. | Putnam County Rules & Regulation Articles of Administration | * | FRE 401/402, 403 | |
| P8. | Stephens' Polygraph Training Certificates | * | FRE 401/402, 403 | |
| P9. | Stephens' Performance Evaluations from Putnam County | * | FRE 401/402, 403 | |
| P10. | Selected Letters from Stephens' Personnel File | * | FRE 401/402, 403 | |
| P11. | Selected Letters re Stephens Outside Employment | * | FRE 401/402, 403 | |
| P12. | 11/4/77 Letter re Stephens' Tactical Team Request | * | FRE 401/402, 403 | |
| P13. | 11/2/77 Letter re Stephens' SWAT Team Request | * | FRE 401/402, 403 | |
| P14. | 1/14/91 Memo Bolen to Putnam | * | FRE 401/402, 403 | |
| P15. | Deskovic Polygraph Reports | * | FRE 401/402, 403; MIL re: Destruction of Evidence | |
| P16. | 3/9/90 Westchester County Medical Attending Progress Notes re Deskovic | * | FRE 401/402, 403, 802 | |
| P17. | 3/14/90 Westchester County Medical Nurse's Report re Deskovic | * | FRE 401/402, 403, 802 | |
| P18. | 11/15/89 Felony Complaint | * | | |
| P19. | 2/1/90 Grand Jury Cert. of Indictment | * | | |

[10] Defendants reserve the right to raise additional objections to any item on this list and Defendants reserve the right to make additional objections to any specific designations made pursuant to any transcripts listed.

| P20. | 3/22/90 Hearing Transcript | * | | |
| P21. | 3/26/90 FBI Report to Tumolo | ** | | |
| P22. | 9/5/90 Excerpts from Stephens' Test. | * | FRE 401/402, 403 | |
| P23. | Excerpts of McIntyre's Trial Test. | * | FRE 401/402, 403 | |
| P24. | 10/23/90 Excerpts of McIntyre's Suppression Hearing Test. | * | FRE 401/402, 403 | |
| P25. | 11/20/90 Bolen's Opening Statement | * | FRE 401/402, 403 | |
| P26. | 11/20/90 Excerpts from Hearing Transcript | * | FRE 401/402, 403 | |
| P27. | 11/20/90 Hearing Transcript Cover Page | * | FRE 401/402, 403 | |
| P28. | 11/29/90 Excerpts of Stephens' Test. | * | FRE 401/402, 403 | |
| P29. | 12/3/90 Bolen's Summation | * | FRE 401/402, 403 | |
| P30. | 12/7/90 Hearing Transcript | * | FRE 401/402, 403 | |
| P31. | 8/8/06 Letter from D.A. DiFiore to Frederick Drummond re IP's CODIS request | ** | | |
| P32. | 9/11/06 CODIS Printout | ** | | |
| P33. | 9/13/06 CODIS Letter | ** | | |
| P34. | 9/20/06 Order Vacating Conviction | ** | | |
| P35. | 9/21/06 Cunningham's Rap Sheet | ** | | |
| P36. | 10/25/06 Order Dismissing Indictment | ** | | |
| P37. | Certificate of Incarceration | ** | | |
| P38. | Criminal Trial Transcript from 3/8/1990 (Westchester 30b6 Dep. Ex. 38) | * | FRE 401/402, 403, 802 | |
| P39. | 12/09/09 Putnam's Resp. to RTA | * | FRE 401/402, 403 | |
| P40. | 1/18/07 Department of Laboratories and Research PCR DNA Report | * | | |
| P41. | 7/25/08 Putnam's Resp. to ROG | * | FRE 401/402, 403 | |
| P42. | 7/25/08 Putnam's Resp. to RFP | * | FRE 401/402, 403 | |
| P43. | 7/25/08 Stephens' Resp. to RFP | * | FRE 401/402, 403 | |
| P44. | 7/25/08 Stephens' Resp. to ROG | * | FRE 401/402, 403 | |
| P45. | 10/19/09 Putnam's 2nd Resp. to RFP | * | FRE 401/402, 403 | |
| P46. | 10/19/09 Putnam's 2nd Resp. to ROG | * | FRE 401/402, 403 | |
| P47. | 10/19/09 Stephens' Resp. to 2nd RFP | * | FRE 401/402, 403 | |

| P48. | 10/19/09 Stephens' Resp. to 2nd ROG | * | FRE 401/402, 403 | |
|---|---|---|---|---|
| P49. | 03/01/10 Putnam's Resp. to 3rd ROG | * | FRE 401/402, 403 | |
| P50. | 3/01/10 Stephens' Resp. to 3rd ROG | * | FRE 401/402, 403 | |
| P51. | 12/09/09 Stephens' Resp. to RTA (Stephens Dep. Exhibit 51) | * | FRE 401/402, 403 | |
| P52. | Stephens' Handwritten Notes from Deskovic Polygraph (Stephens Dep. Exhibit 52) | * | | |
| P53. | Stephens' File from Putnam County (Stephens Dep. Exhibit 53) | * | FRE 401/402, 403 | |
| P54. | Stephens' Additional Handwritten Notes from Deskovic Polygraph (Stephens Dep. Exhibit 54) | * | | |
| P55. | Expert Declaration from Dr. Charles Honts | * | FRE 401/402, 403, 702, 703, *Daubert* | |
| P56. | CV from Dr. Charles Honts | * | FRE 401/402, 403, 702, 703, *Daubert* | |
| P57. | Journal of Polygraph Science dated July – August, 1976 | * | FRE 401/402, 403 | |
| P58. | Article Analyzing the Polygraph Examination of Yuri Nosenko, dated March 1979 | * | FRE 401/402, 403 | |
| P59. | Article concerning the Jack Ruby's Polygraph Test, dated March 1979 | * | FRE 401/402, 403 | |
| P60. | Honts & Handler 2013 Case Study | * | FRE 401/402, 403 | |
| P61. | Danbury Police Reports concerning Polygraph Examination of Richard Harrington | * | FRE 401/402, 403 | |
| P62. | Sterling Polygraph Records | * | FRE 401/402, 403 | |
| P63. | Selected Photographs of Daniel Stephens (Production Pending as of 6/20/14) | * | FRE 401/402, 403 | |
| P64. | CV from Dr. Kevin J. Barrett | * | FRE 401/402, 403,  MIL re: prison injuries | |
| P65. | News articles re Deskovic's John Jay Graduation | * | FRE 401/402, 403, 802 | |

| P66. | 11/25/07 New York Times Clip | * | FRE 401/402, 403, 802 | |
| P67. | Selected Photos of Deskovic | * | FRE 401/402, 403 | |
| P68. | Excerpts of Deskovic's Prison File | * | FRE 401/402, 403, MIL re: prison injuries | |
| P69. | Excerpts of Deskovic's Prison Medical File | * | FRE 401/402, 403, MIL re: prison injuries | |
| P70. | Selected News Articles regarding Deskovic | * | FRE 401/402, 403, 802 | |
| P71. | Selected Letters to and from Deskovic | | FRE 401/402, 403, MIL re: prison injuries | |
| P72. | McIntyre Testimony at Suppression Hearing | * | FRE 401/402, 403 | |
| P73. | McIntyre Testimony at Criminal Trial | * | FRE 401/402, 403 | |
| P74 – P119. | Plaintiff's Exhibits 74 – 119 Intentionally Left Blank | | | |
| P120. | 3/29/90 Hearing Transcript (Bolen Dep. Exhibit 120) | * | FRE 401/402, 403 | |
| P121. | 3/15/90 Excerpts of Hearing Transcript (Bolen Dep. Exhibit 121) | * | FRE 401/402, 403 | |
| P122. | Notice that Deskovic's statement will be offered as evidence during criminal trial (Bolen Dep. Exhibit 122) | ** | | |
| P123. | D.A. Pirro's Memo to Richard Weill from 8/3/1994 (Bolen Dep. Exhibit 123) | * | FRE 401/402, 403 | |
| P134. | Selected Crime Scene Photo (McIntyre Dep. Exhibit 134) | * | FRE 401/402, 403 | |
| P135. | Selected Autopsy Photo (McIntyre Dep. Exhibit 135) | * | FRE 401/402, 403 | |
| P136. | Selected Crime Scene Photo (McIntyre Dep. Exhibit 136) | * | FRE 401/402, 403 | |
| P137. | Selected Crime Scene Photo and Excerpts of Astrologo Testimony (McIntyre Dep. Exhibit 137) | * | FRE 401/402, 403 | |
| P138. | Selected Crime Scene Photo (McIntyre Dep. Exhibit 138) | * | FRE 401/402, 403 | |
| P139. | Selected Crime Scene Photo (McIntyre Dep. Exhibit 139) | * | FRE 401/402, 403 | |

**B.      Defendants' Exhibits**[11]

---

[11] Depending on the Court's rulings regarding the pending motions *in limine*, Defendants reserve the right to designate additional exhibits. Furthermore, Defendant does not waive objections to any exhibits on this list and reserves the right to offer any exhibit listed on Plaintiff's exhibit list.

| Ex # | Description | Stipulated | Plaintiff's Objections | Evid. |
|------|-------------|------------|------------------------|-------|
| \* Denotes no party objects on grounds of authenticity | | | | |
| \*\* Denotes no party objects on any grounds | | | | |
| D1. | Daniels Stephens' Arther examination procedure form and notes (CITY 108-117, CITY 119-120, WC 87-88) | \* | FRE 401/402, 403, 802,MIL re: Plaintiff's Family | |
| D2. | Letters to Daniel Stephens from outside departments (Plaintiff's ex. 53 in opposition to Stephens' Motion Summary Judgment – PUTN 59,60, 62,65-67,70). | \* | FRE 401/402, 403, 404, 602, 608, 802, MIL re: Stephens Character | |
| D3. | Jeffrey Deskovic's high school transcripts. | \* | FRE 401/402, 403, 404, 608, 802 | |
| D4. | Complaint Follow-Up signed by Thomas McIntyre on January 25, 1990. (Plaintiff's ex. 1 in opposition to Stephens' Motion Summary Judgment – CITY 132-133) | \* | FRE 401/402, 403 | |
| D5. | Peekskill Police Department arrest report of Jeffrey Deskovic dated January 25, 1990. (Plaintiff's ex. 1 in opposition to Stephens' Motion Summary Judgment – CITY 459 and 462) | \* | FRE 401/402, 403 | |
| D6. | Felony Complaint signed by Thomas McIntyre on January 25, 1990. | \* | FRE 401/402, 403 | |
| D7. | Notice of Intent to Offer Evidence, served on Peter Insero by Prosecutor George Bolen, indicating intent to use statements made by Jeffrey Deskovic on January 25, 1990 (Plaintiff's ex. 48 in opposition to Stephens' Motion Summary Judgment – COUNTY 3558-3561). | \*\* | | |
| D8. | Excerpt from March 22, 1990 hearing transcripts (1 and 4:6-11) (Plaintiff's ex. 39 in opposition to Stephens' Motion Summary Judgment). | \* | [12] FRE 401/402, 403, 802, MIL re: 3rd Parties, MIL re: PPD | |

---

[12] Plaintiff objects to certain portions of this transcript but finds others unobjectionable. Plaintiff reserves the right to make specific objections to any particular designations that Defendants provide.

| | | | | |
|---|---|---|---|---|
| D9. | Letter to Peter Insero from Jeffrey Deskovic dated January 25, 1990 (Plaintiff's ex. 82 in opposition to the Peekskill Police Officer's Motion Summary Judgment). | * | FRE 401/402, 403, 502, 802, MIL re: 3rd Parties | |
| D10. | Excerpts from Daniel Stephens testimony at Huntley Hearing (228:9-229:1; 231:2-233:19, 234:15-235:2; 328:6-20) | * | FRE 401/402, 403, 802, MIL re: 3rd Parties, MIL re: PPD | |
| D11-D40. | Exhibits D11 – D40 Intentionally Left Blank | | | |

## XI.   **Verdict Statement**

The Parties consent to a less than unanimous verdict under the circumstances outlined to the Court in the Parties' June 18, 2014 confidential letter.


Date:   June 20, 2014
        New York, NY

                                        Respectfully submitted,

                                        _____/s/ Nick Brustin_____
                                        Nick Brustin
                                        Anna Benvenutti Hoffman
                                        Emma Freudenberger
                                        Aaron Scherzer
                                        Farhang Heydari
                                        NEUFELD SCHECK & BRUSTIN, LLP
                                        99 Hudson Street, 8th Floor
                                        New York, New York 10013
                                        Telephone: (212) 965-9081
                                        Facsimile: (212) 865-9084
                                        *Attorneys for Plaintiff*

                                        _____/s/ Stephen Wellinghorst_____
                                        Stephen Wellinghorst
                                        Michael Chipko
                                        HARWOOD LLOYD, LLC
                                        350 Fifth Avenue, 59th Floor
                                        New York, NY 10118
                                        Telephone: (212) 268-5I36
                                        Facsimile: (212) 324-1198

James Randazzo
GAINES, NOVICK, PONZINI, COSSU &
VENDITTI, LLP
11 Martine Avenue, 8th Floor
White Plains, New York 10606
Telephone: (914)288-9595
Facsimile: (914)288-0850
*Attorneys for Defendants*